| | |
|---|---|
| In re: | (Chapter 11) |
| PREMIER KINGS, INC., *et al.*,[1] | Case No. 23-02871 (TOM) |
| Debtors. | Joint Administration Requested |

**MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF ALL OR SUBSTANTIALLY ALL THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) APPROVING BID PROTECTIONS FOR STALKING HORSE BIDDERS; (III) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (IV) SCHEDULING AN AUCTION FOR, AND HEARING TO APPROVE, THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (V) APPROVING THE FORM AND MANNER OF SALE NOTICE; AND (VI) GRANTING RELATED RELIEF**

Premier Kings, Inc., and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (each, a "Debtor" and, collectively, the "Debtors"), by their undersigned proposed counsel, pursuant to Sections 105(a), 363, and 365 of Title 11 of the United States Code (11 U.S.C. §§ 101, *et seq*.) (the "Bankruptcy Code") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby move the Court (the "Bidding Procedures Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Bidding Procedures Order"):

    (i)    authorizing and approving certain proposed bidding and sale procedures, substantially in the form of those attached as Exhibit 1 to the Bidding Procedures Order (the "Bidding Procedures"), for the sale of all or substantially all of the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers, are: Premier Kings, Inc. (3932); Premier Kings of Georgia, Inc. (9797); and Premier Kings of North Alabama, LLC (9282). The Debtors' address is 7078 Peachtree Industrial Blvd., Suite #800, Peachtree Corners, GA 30071. The Debtors have filed a motion for joint administration with the Court.

Debtors' assets (the "Purchased Assets") free and clear of all liens, claims, encumbrances, and interests (the "Sale");

(ii)     authorizing and approving certain proposed bid protections (the "Bid Protections") for the Stalking Horse Bidders (defined below);

(iii)    authorizing and approving procedures for assumption and assignment of the leases proposed to be assumed and assigned ("Proposed Assumed Leases") and the determination of amounts necessary to cure any arrearages thereunder (the "Cure Costs"), and approving the form and manner of notice of assumption and/or assignment (the "Cure Notice");

(iv)    scheduling (a) an auction for the sale of the Purchased Assets (as further described below, the "Auction"), and (b) a hearing to consider the approval of the sale of the Purchased Assets to the Stalking Horse Bidders or, in the event of an Auction, to the Successful Bidder(s) (defined below), as well as to resolve any objections to the assumption and assignment of the Proposed Leases (the "Sale Hearing");

(v)     approving the form and manner of the notice of Sale (the "Sale Notice"); and

(vi)    granting related relief.

In support of the Motion, the Debtors rely upon and hereby incorporate by reference the *Declaration of David Baker in Support of First-Day Motions* [Doc. No. 20] (the "Baker Declaration").[2]  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Bidding Procedures Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

2.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory predicates for the relief requested in this Bidding Procedures Motion are Sections 105(a), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 6006.

---

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Baker Declaration.

# BACKGROUND

4.      On October 25, 2023 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors continue to manage and operate their businesses as a debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      No official committee of unsecured creditors has been appointed yet.

7.      No request for a trustee or examiner has been made in these chapter 11 cases.

8.      Further information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the Baker Declaration.

## I.      Overview of the Debtors' Businesses.

9.      The individual Debtors are Premier Kings, Inc. ("PK Inc."), Premier Kings of Georgia, Inc. ("PKGA Inc."), and Premier Kings of North Alabama, LLC ("PKAL LLC and, together with PK, Inc., and PKGA Inc. "PK").  PK was founded in 2009 by Manraj "Patrick" Sidhu ("Mr. Sidhu") for the purpose of owning and operating Burger King restaurants (each, a "Restaurant" or a "Store" and, together, the "Restaurants" or "Stores") as a franchisee pursuant to franchise agreements with Burger King Corporate, Inc. ("BKCI").  Beginning with six (6) Restaurants in or around Birmingham, Alabama in early 2010, the Debtors later added 34 locations to the portfolio throughout Alabama, Georgia, and Tennessee over the course of 2014. The Debtors opened an eighth (8) store in September of 2015 and expanded to 32 stores in Huntsville, Alabama and 22 in Birmingham, Alabama. PK continued to grow between 2015 and 2021, opening 115 additional locations in Tennessee, Florida, and South Carolina.  The Debtors do not own any real

65533/0001-46246868v7

property, but instead lease the premises where the Restaurants are located.  Some of the lessors are affiliates of the Debtors.

10.     As of the Petition Date, the Debtors operated 172 Restaurants with over 3,500 employees.

## II.     <u>Events Leading to Chapter 11 Filing</u>.

11.     Unfortunately, Mr. Sidhu passed away unexpectedly on May 24, 2022, which triggered great operational instability for PK's existing Restaurants, as Mr. Sidhu was not only the sole stockholder or member, but also the sole manager.  Upon Mr. Sidhu's death, Joginder Sidhu became the Personal Representative of Mr. Sidhu's estate (the "<u>Estate Representative</u>") and, as such, gained legal and operational control over the Debtors.  The tragic and sudden passing of Mr. Sidhu, coupled with various macroeconomic factors, caused tremendous uncertainty and disruption within the business.  Those factors include, among others, the national impact of the COVID-19 pandemic on restaurant operations, high inflation, increased borrowing rates, and an increasingly limited qualified labor force.

12.     On June 2, 2022, the Estate Representative caused PK to retain Aurora Management Partners Inc. ("<u>AMP</u>") to provide certain financial and business advisory services, and AMP's Managing Partner, David M. Baker, was appointed as Chief Restructuring Officer ("<u>CRO</u>") for each of the Debtors on July 22, 2022.  Aurora and the CRO have been actively involved in evaluating the Debtor's liquidity, cash management system, financial forecasting, and contingency planning.  In consultation with its professionals, the Debtors made the difficult decision to close a number of Restaurants in an attempt to avoid further losses and to stabilize the business (another location was closed due to fire).  Unfortunately, these cost-cutting measures have not been sufficient to correct or prevent the Debtors' insolvency.  Facing increased pressure from

landlords, vendors, and its secured lenders, the Debtors have no choice but to seek relief in this Court in order to reorganize their businesses in chapter 11.

**III.     Pre-Petition Marketing Efforts.**

13.     Following the death of Mr. Sidhu, and based on the performance of the Restaurants and the managerial and capital needs to operate, the Estate Representative determined in consultation with the CRO and various professionals that a sale of PK's assets was necessary to preserve the go-forward value of PK's businesses and to maximize the return to creditors.  PK retained Raymond James & Associates, Inc. ("Raymond James") as the investment banker to commence a pre-petition marketing process and to solicit interest for the purchase of the Debtors' assets (along with the Bidding Procedures, the "Sale Process").  Among other things, Raymond James familiarized itself with the Debtors' businesses and, along with AMP, assisted in developing a financial model and furnishing a virtual data room containing nearly 850 files for the review of potentially interested bidders (the "Potential Bidders").  Raymond James has engaged, and continues to engage, in a robust and sophisticated marketing campaign designed to maximize the value of the Debtors' estates and the return to creditors.

14.     To that end, Raymond James began soliciting interest by preparing and distributing a "teaser" document in June 2023, describing the history of the Debtors' businesses and key financial metrics (the "Teaser") to approximately 230 Potential Bidders, including approximately 160 "strategic" Potential Bidders, *i.e.*, competitors and those already engaged in a business similar or adjacent to the Debtors' business (the "Strategic Potential Bidders") and approximately 70 "financial" Potential Bidders, *i.e.*, private equity and other firms engaged in the business of buying companies in and out of distressed situations (the "Financial Potential Bidders").  Raymond James further prepared a confidential information memorandum providing a detailed overview of the

Debtors' financial records and certain projections designed to permit Potential Bidders to analyze the *bona fides* of a sale (the "CIM"). Based on the regional division and tracking of Restaurant locations by BKC, Raymond James has marketed the Purchased Assets as a complete portfolio, or as any portion of six (6) regions, consisting of Atlanta, GA; North Alabama; Central Alabama; South Alabama; Savannah, GA; and Jacksonville, FL (each, and "Region" and, together, the "Regions").

15.     As of the Petition Date, a total of 44 Potential Bidders have signed non-disclosure agreements ("NDAs") and were thereafter provided a copy of the CIM. Concurrent with the review of the CIM, all 44 Potential Bidders, including 20 Strategic and 24 Financial Potential Bidders were given access to the Data Room. Raymond James conducted detailed diligence calls with 33 Potential Bidders and, in late September 2023, received eight letters of intent for subsets of the Debtors' store base. Also in late September and through the Petition Date, Raymond James provided the Debtors' form asset purchase agreement to seven Potential Bidders to review and revise in connection with submitting a Bid for the Purchased Assets.

## IV.     The Stalking Horse Agreements and Bid Protections.

16.     The Debtors consulted with their professionals on the Bids received and, after extensive arm's-length negotiations, entered into two separate asset purchase agreements (each a "Stalking Horse Agreement" and, together, the "Stalking Horse Agreements"), each for a different Region of stores: one with RRG of Jacksonville, LLC ("RRG") for the purchase of 44 Stores in the Savannah and Jacksonville Regions for an Initial Purchase Price of $15,525,000.00 plus the inventory value at closing;  and a second one with Newell-Berg Alliance AL, LLC (with RRG, each a "Stalking Horse Bidder" and, together, the "Stalking Horse Bidders") for the purchase of a total of 31Stores in the North Alabama Region for an Initial Purchase Price of $18,500,000.00 plus

the value of inventory at closing, as more thoroughly described in each of the Stalking Horse Agreements.[3] A summary of the Initial Purchase Price and Bid Protections (defined below) set forth in each of the Stalking Horse Agreements is provided on the schedule attached hereto as **Exhibit B**, and each Stalking Horse Agreement will be filed with the Court under notice.

17.     During negotiations, the Debtors determined in their business judgment, and in consultation with their professionals, that the net proceeds of the Sale would be maximized by offering certain bid protections for entities willing to serve as a Stalking Horse Bidder.  To that end, the Debtors' professionals were able to secure the Stalking Horse Agreements by offering a uniform set of bid protections for each Stalking Horse Bidder, in the form of a break-up fee of 2.5% of the Purchase Price proposed in each Stalking Horse Agreement (the "Break-Up Fee(s)"), plus a maximum reimbursement of $150,000 for reasonable and substantiated expenses incurred in connection with each Stalking Horse Bidder's submission (the "Expense Reimbursement(s)" and, together with the Break-Up Fee, the "Bid Protections").

18.     Each of the Stalking Horse Agreements are subject to higher and better bids that may be submitted at or in advance of an Auction.

**V.     Proposed Bidding Procedures, Auction, and Sale Hearing.**

19.     The Bidding Procedures, attached to the Bidding Procedures Order as Exhibit 1, are designed to promote participation and active bidding at an Auction and to ensure an orderly Sale Process. The Bidding Procedures describe, among other things, the procedures for interested parties to access due diligence, the process for submitting written, irrevocable offers ("Bids"), the

---

[3] The Debtors and their professionals are in the process of finalizing a third Stalking Horse Agreement with another bidder for the stores in the South Alabama and Central Alabama Regions. After that is fully executed, this third Stalking Horse Agreement and any additional stalking horse agreements will be filed with the Court.

manner in which bidders and Bids become "qualified," the negotiations of Bids received, the conduct of any Auction, the selection and approval of any Successful Bidder(s) and Back-up Bidder(s) (both defined below), and the deadlines with respect to the foregoing. The Bidding Procedures will allow the Debtors to conduct the Sale Process in a fair, orderly, and transparent manner that will maximize value for all stakeholders.

20. As described in more detail in the Bidding Procedures, Qualified Bidders may submit Qualified Bids for the Purchased Assets through November 30, 2023, or such other date as is determined by the Debtors in accordance with the Bidding Procedures Order (the "Bid Deadline"). To the extent that a potential purchaser wishes to submit a bid for stores not yet the subject of a Stalking Horse Agreement, Qualified Bidders may submit their bids by the Bid Deadline. If at least one Qualified Bid is received before the Bid Deadline, the Debtors will conduct an Auction for the Sale of the Purchase Assets, as set forth below. If an Auction is conducted, the Debtors, in consultation with Wells Fargo Bank, NA, as prepetition agent (the "Prepetition Agent"), (i) may designate the highest or otherwise best Bid(s) and the Successful Bidder or Bidders, and (ii) may further designate the second highest or otherwise best Bid(s) and a Back-Up Bidder or Bidders to consummate the Sale in the event that a Sale to the Successful Bidder(s) does not close. In the event that an asset purchase agreement is executed with one or more Successful Bidder(s) or Back-Up Bidder(s) (each a "Bidder Purchase Agreement"), the Debtors will file notice thereof in accordance with the Bidding Procedures Order and will submit any such Bidder Purchase Agreement(s) to the Court in advance of the Sale Hearing.

21. To effectuate the Sale Process, the Debtors hereby request that the Court authorize the scheduling of the Auction, as set forth in the Bidding Procedures Order, for **December 4, 2023, at 10:00 am (Central)**, at the offices of Holland & Knight, LLP, located at 1901 Sixth Avenue

North, Suite 1400, Birmingham, Alabama 35203.  In the event that no Qualified Bids are submitted before the Bid Deadline (both defined in the Bidding Procedures), the Debtor will cancel the Auction and seek to consummate the proposed Sale with the Stalking Horse Bidders and any other bidders who submitted Qualified Bids acceptable to the Debtors for stores not currently subject to a Stalking Horse Agreement; provided, however, that any changes to the dates and deadlines set forth herein shall (i) comply with any milestones contained in any order for the use of cash collateral entered by the Court in these cases or (ii) be made in consultation with the Prepetition Agent.

22.     The Debtors further ask the Court to schedule a hearing for December 8, 2023 to consider and approve the Sale and to resolve any objections to the assumption and assignment of the Proposed Assumed Leases (the "Sale Hearing").[4]

23.     Below is a summary of the material terms of the Bidding Procedures:[5]

| SUMMARY OF BIDDING PROCEDURES |
|---|
| **A. Due Diligence.**  Upon execution of a valid confidentiality agreement in form and substance reasonably acceptable to the Debtors, the Debtors will afford interested parties such due diligence access or additional information as the Debtors, in consultation with their advisors, deem appropriate.  The Debtors will limit access to due diligence to those parties they believe, in the exercise of the Debtors' reasonable judgment, are pursuing the transaction in good faith and are capable of submitting a Qualified Bid (as defined below) ("Potential Bidders"). |
| **B. Bid Deadline – November 30, 2023, 5:00 p.m. (Central).**  Other than as set forth herein, in order to participate in the Auction, a Potential Bidder must submit a Qualified Bid (defined below), in writing or by email, so as to be actually received by the Bid Deadline, to:  (a) the Debtors, c/o Aurora Management Partners, 112 South Tryon Street, Suite 1770, |

---

[4] The Debtors and their professionals continue to market certain assets of the Debtors that are not presently subject to the Stalking Horse Agreements (the "Other Assets").  The Debtors reserve the right to modify the Bid Procedures for the sale of some or all of the Other Assets, as may be necessary or appropriate to maximize the results of the Debtors' sale efforts.

[5] The following summary is qualified in its entirety by reference to the provisions of the Bidding Procedures. In the event of any inconsistencies between the provisions of the Bidding Procedures and the terms herein, the terms of the Bidding Procedures shall govern. Unless otherwise defined in the summary set forth in the accompanying text, capitalized terms have the meaning ascribed to them in the Bidding Procedures.

Charlotte, NC 28284, Attention David Baker, CRO, dbaker@aurubamp.com; (b) counsel for the Debtors, Gary H. Leibowitz, Esq., Cole Schotz P.C., 1201 Wills Street, Baltimore, MD 21231, gleibowitz@coleschotz.com; (c) Raymond James, 320 Park Avenue, 12th Floor, New York, NY 10022, Attention: John Berg, john.berg@raymondjames.com, and Geoffrey Richards, geoffreyrichards@raymondjames.com, and Enrique Acevedo, enrique.acevedo@raymondjames.com; (d) the Prepetition Agent, c/o counsel for the Prepetition Agent, Jeffrey R. Dutson, Esq., 1180 Peachtree Street, NE Suite 1600, Atlanta, GA 30309, jdutson@kslaw.com; and (e) counsel for the Creditors' Committee, [**********]. (together, the "Notice Parties"). If the Prepetition Agent intends to credit bid at the Auction, they shall provide the Debtors with a "Notice of Intention to Credit Bid" by 5:00 p.m. on the Business Day prior to commencement of the Auction, which notice shall include a marked copy of an asset purchase agreement reflecting any changes from the applicable Stalking Horse Agreement of the opening bid at the Auction (provided that Prepetition Agent will have the same rights as any other Qualifying Bidder hereunder to amend such terms during the Auction). If the Prepetition Agent shall submit a Notice of Intention to Credit Bid, the Prepetition Agent shall thereafter cease to be a consultation party hereunder.

## C. Qualified Bid Requirements.

To constitute a Qualified Bid, a bid must:

i. fully disclose the identity of the Potential Bidder and include contact information for the specific person(s) the Debtors should contact if they have any questions about the Potential Bidder's Bid;

ii. identify the Stalking Horse Agreement that the Potential Bidder seeks to overbid, including the specific store numbers and locations the Potential Bidder proposes to purchase, including identification of any Stores included in the Stalking Horse Agreement that are excluded from the bid, and any other Stores not included in the Stalking Horse Agreement that are included in the bid; or if the bid is for Other Assets, provide the required information for the Stores the bidder seeks to purchase;

iii. include a signed writing that the Potential Bidder's offer is formal, binding, unconditional, and irrevocable until (i) the closing of the transaction with the Successful Bidder (as defined below) and (ii) for two (2) business days after the earlier of the closing of the sale transaction with the Successful Bidder or the termination of the Successful Bid, if such bidder is designated the Back-Up Bidder (as defined below) at the conclusion of the Auction;

iv. confirm that there are no conditions precedent to the Potential Bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the bid;

v. include a duly authorized and executed copy of an asset purchase agreement, including the purchase price (the "Purchase Price") for the Stores and other Purchased Assets for which the bid is submitted (a "Bidder Purchase Agreement"),

together with all exhibits and schedules thereto and copies marked to show any amendments and modifications to the Stalking Horse Agreement the bid seeks to overbid; provided, however, that such Bidder Purchase Agreement shall not include any financing or diligence conditions;

vi. include written evidence of sufficient cash on hand to fund the Purchase Price or sources of immediately available funds that are not conditioned on further third party approvals or commitments, that will allow the Debtors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the transaction contemplated by the Bidder Purchase Agreement, and such other financial information of the Potential Bidder as may be acceptable to the Debtors in their reasonable discretion (collectively, the "Financials"), or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, the Financials of the Potential Bidder's equity holder(s) or other financial backer(s);

vii. (a) where a Potential Bidder seeks to submit a Bid for the purchase of the same Stores contemplated in a particular Stalking Horse Agreement or multiple Stalking Horse Agreements, provide for a cash Purchase Price of at least 2.5% more than the value of the total combined Purchase Price offered in the respective Stalking Horse Agreement or Stalking Horse Agreements, as the case may be, *plus* $250,000 per Stalking Horse Bidder, and/or otherwise have a Purchase Price and value to the Debtors that, in the Debtors' business judgment, is greater or otherwise better than the Purchase Price and value offered under the Stalking Horse Agreement(s); and

(b) where a Potential Bidder seeks to submit a Bid for a portion of the Purchased Assets that is not the same as that contemplated in one or more Stalking Horse Agreements, and includes a different combination of Stores than those designated in any or all of the Stalking Horse Agreements, provide greater or otherwise better value than the value offered under the Stalking Horse Agreement(s), in the Debtors' business judgment, including consideration of the total combined sale price of the Purchased Assets, the specific Restaurants' marketability, practical matters concerning Restaurant-level issues, and such other considerations as the Debtors may deem appropriate in their business judgment (together or separately, as the case may be, a "Minimum Overbid").

viii. provide a commitment to close the transactions contemplated by the Bidder Purchase Agreement by no later than January 8, 2024;

ix. identify with particularity the unexpired leases the Potential Bidder wishes to assume;

x. contain sufficient information concerning the Potential Bidder's ability to provide adequate assurance of future performance with respect to unexpired leases to be assumed and assigned.

xi.  include sufficient information to satisfy the Debtors that the Potential Bidder has obtained the Franchisor's approval to become a franchisee for the Stores included in the bid or, as determined by the Debtors in their sole discretion, after consultation with the Prepetition Agent, that the Potential Bidder is reasonably likely to be able to obtain such approval prior to Closing or otherwise is willing and able to complete Closing without such prior approval;

xii.  include an acknowledgement and representation by the Potential Bidder that it: (A) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its offer; (B) has relied solely on its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its Bid; (C) did not rely on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction (defined below), except as expressly stated in the Bidder Purchase Agreement; and (D) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its Bid;

xiii.  be accompanied by a good faith deposit in the form of a wire transfer, certified check or such other form that is acceptable to the Debtors, payable to the order of the escrow agent designated by the Sellers in an amount no less than ten percent (10%) of the Purchase Price;

xiv.  state that the Potential Bidder agrees to serve as a Back-Up Bidder (as defined below) if such bidder's Qualified Bid is selected as the next highest or otherwise next best bid after the Successful Bidder (as defined below) with respect to the Purchased Assets;

xv.  state that the Potential Bidder consents to the jurisdiction of the Bankruptcy Court; and

xvi.  contain such other information reasonably requested by the Debtor.

**D. Credit Bids.** On or before the Bid Deadline, parties holding a valid lien on some or all of the Debtors' assets that secures an bona fide claim may submit a credit bid for some or all of such assets to the fullest extent permitted under section 363(k) of the Bankruptcy Code. The Prepetition Agent shall be entitled to credit bid any portion of its outstanding secured obligations pursuant to section 363(k) of the Bankruptcy Code with respect to any assets on which they hold liens (a "<u>Prepetition Credit Bid</u>").

**E. Auction.** If one or more Qualified Bids (including a Prepetition Credit Bid) are received on or before the Bid Deadline, the Debtors shall conduct the Auction commencing on **December 4, 2023 at 10:00 a.m. (Central)**, at the offices of Holland & Knight, LLP, located at 1901 Sixth Avenue North, Suite 1400, Birmingham, Alabama 35203. The Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Auction, or before the Auction by notice provided in the best

65533/0001-46246868v7

efforts of the Debtors to all interested parties and to the Court; provided, however, that any changes to the dates and deadlines set forth herein shall (i) comply with any milestones contained in any order for the use of cash collateral entered by the Court in these cases or (ii) be made in consultation with the Prepetition Agent. The Debtors reserve the right to cancel the Auction (in consultation with the Prepetition Agent) if the requisite Bids described above are not received as of the Bid Deadline.

F. **Auction Procedures.** Only the Stalking Horse Bidders and a person or entity that has submitted a Qualified Bid (including a Prepetition Credit Bid) (a "<u>Qualified Bidder</u>") to the Notice Parties and such person's or entity's respective advisors are eligible to participate in the Auction. For the avoidance of doubt, the Prepetition Agent and its advisors are entitled to attend the Auction in person or via video conferencing. All participants shall appear in person, by telephone (with prior written authorization by the Debtors, in the Debtors' sole discretion), or through a duly authorized representative. Prior to the Auction, the Debtors, after consultation with the Prepetition Agent and the Creditors' Committee, shall select the Qualified Bids that, in the Debtors' business judgment, reflect the highest or otherwise best value for the Debtors' estate and the portion of the Purchased Assets contemplated by each Qualified Bid as the starting Bid or Bids (as the case may be, the "<u>Starting Auction Bid(s)</u>"), and advise all participants in the Auction of the terms of the Starting Auction Bid(s).

Where Qualified Bidders seek to submit Bids at the Auction for the purchase of the same portion of the Purchased Assets contemplated in a particular Starting Auction Bid or multiple Starting Auction Bids—including the same Restaurant locations—Qualified Bidders may submit Bids that are higher and better than the total combined Purchase Price of the Starting Auction Bid(s) in an initial increment equal to the aggregate amount of the Starting Auction Bid(s) plus $250,000, and in subsequent increments of at least $250,000, unless and until the Debtors, in their sole discretion and in consultation with the Prepetition Agent, lift or modify this requirement.

Where Qualified Bidders wish to submit Bids for a portion of the Purchased Assets that is not the same as that contemplated in one or more of the Starting Auction Bids, and includes a different combination of Restaurant locations than those designated in any or all of the Starting Auction Bids, Qualified Bidders may submit Bids that provide greater or otherwise better value than the Starting Auction Bid(s), in the Debtors' business judgment, including consideration of the total combined sale price of the Purchased Assets, the specific Restaurants' marketability, practical matters concerning Restaurant-level issues, and such other considerations as the Debtors may deem appropriate, and in subsequent increments as are set by the Debtors for each applicable combination of Purchased Assets and/or Restaurant locations (collectively, the "<u>Overbid Increments</u>"). The Debtors, in consultation with the Prepetition Agent, may adjourn, continue, re-open, or terminate the Auction, and reserve the right to adopt other and further rules and procedures for the Auction that, in their business judgment, will better promote the goals of the Auction.

Each Qualified Bidder participating in the Auction will be required to confirm on the record at the Auction that it has not engaged in any collusion with respect to the bidding and sale process.

**G. Selection of Successful Bidder and Back-Up Bidder.** The Debtors may designate, in their sole discretion and in consultation with the Prepetition Agent and the Creditors' Committee, in the Debtors' business judgment, pursuant to these Bidding Procedures, the highest or otherwise best Bid(s) and the Successful Bidder or Bidders. The Debtors may also designate, in their business judgment, the second highest or otherwise best Bid(s) as the Back-Up Bidder or Bidders.

**H. Reservation of Rights.** The Debtors reserves the right to reject, without liability, any Bid that the Debtors, in their reasonable discretion and after consultation with the Prepetition Agent and the Creditors' Committee, determine to be (a) inadequate or insufficient, (b) not in conformity with the Bidding Procedures, the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, or (c) contrary to the best interests of the Debtors and their estates. The Debtors also reserve the right to modify these Bidding Procedures, in their sole discretion and after consultation with the Prepetition Agent and the Creditors' Committee, without the need for any further order of the Bankruptcy Court, including, without limitation, (i) extending the deadlines set forth in the Bidding Procedures, (ii) adjourning the Auction, and (iii) withdrawing any Purchased Assets from the Sale Process at any time prior to or during the Auction; provided, however, that any changes to the dates and deadlines set forth herein shall (i) comply with any milestones contained in any order for the use of cash collateral entered by the Court in these cases or (ii) be made in consultation with he Prepetition Agent.

24.    A summary of the timeline for the Bidding Procedures and Auction is as follows:

| Event | Date |
|---|---|
| Deadline for Qualified Bids | November 30, 2023 |
| Auction | December 4, 2023 |
| Proposed Sale Hearing | December 8, 2023 |
| Closing | On or before January 8, 2024 |

## VI.    <u>The Assumption and Assignment Procedures</u>.

25.    As part of the Sale Process, the Debtors will serve on each counterparty to a Proposed Assumed Leases, by first-class mail, postage prepaid, a cure notice concerning each executory contract or unexpired lease that is proposed to be assumed and assigned, including

without limitation, a Proposed Assumed Leases (as defined and designated in the Stalking Horse Agreement or Bidder Purchase Agreement, as applicable), substantially in the form attached hereto as **<u>Exhibit C</u>** (the "<u>Cure Notice</u>"), which shall, for each such executory contract, (i) state the cure amount that the Debtor believes is necessary to assume such executory contract or unexpired lease (the "<u>Cure Amount</u>"); (ii) notify the non-Debtor party that such party's contract or lease, including any amendments and subordination, non-disturbance, and attornment agreements related to the leases, may be assumed and assigned to a purchaser of the Purchased Assets (as defined in the Stalking Horse Agreement or Bidder Purchase Agreement, as applicable) at the conclusion of the Auction; (iii) state the applicable deadline, which will be December 6, 2023 (the "<u>Cure Objection Deadline</u>"), by which the non-Debtor party must file an objection to the Cure Amount (a "<u>Cure Amount Objection</u>") or to the assumption and assignment of a Proposed Assumed Lease (an "<u>Assumption Objection</u>"), and that the deadline to file a an objection to the Sale (a "<u>Sale Objection</u>") is December 6, 2023; and (iv) state the date of the Sale Hearing and that Cure Amount Objections, Assumption Objections, and Sale Objections will be heard at the Sale Hearing; provided, however, that the inclusion of a contract, lease, or agreement on the Cure Notice shall not constitute an admission that such contract, lease, or agreement is an executory contract or unexpired lease (as more fully described herein and including the process set forth in the Cure Notice, the "<u>Assumption and Assignment Procedures</u>"). The Cure Notice will further state that the Debtors reserve all rights, claims, and causes of action with respect to the contracts, leases, and agreements listed on or appended to the Cure Notice or pertaining to the Proposed Assumed Leases.

26.     Any Cure Amount Objections must be filed in accordance with the Cure Notice, so as to actually be received by the parties listed on the Cure Notice, at or before **4:00 p.m. (Central Time) on December 6, 2023**.

27.     Unless a non-Debtor party to any executory contract or unexpired lease files a Cure Amount Objection by the Cure Amount Objection Deadline, then the Cure Amount set forth in the Cure Notice shall be binding upon the non-Debtor counterparty to such agreement for all purposes and will constitute a final determination of the Cure Amount required to be paid in connection with the assumption and assignment of such agreement. In addition, all counterparties to the Proposed Assumed Leases who fail to file an objection will be (a) forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Proposed Assumed Leases, and the Debtors, a Stalking Horse Bidder, or a Successful Bidder or Back-Up Bidder (as applicable) shall be entitled to rely solely upon the Cure Amount set forth in the Cure Notice, and (b) be forever barred and estopped from asserting or claiming against the Debtors, a Stalking Horse Bidder, or a Successful Bidder or Back-Up Bidder (as applicable), or any other assignee of the Proposed Assumed Leases, that any additional amounts are due or that defaults exist, or conditions to assumption and assignment must be satisfied with respect to such Proposed Assumed Leases.

28.     In the event that the Debtors and the non-Debtor party cannot resolve the Cure Amount, the Debtors shall segregate any disputed Cure Amounts ("Disputed Cure Amounts") pending the resolution of any such disputes by the Court or mutual agreement of the parties.

29.     The Debtors shall, by no later than December 6, 2023 (the "Adequate Assurance Deadline"), provide the necessary financial information to demonstrate that the Successful Bidder and/or Back-Up Bidder (as defined in the Bidding Procedures), as applicable, can provide adequate

assurance of future performance under Section 365 of the Bankruptcy Code (the "Adequate Assurance Information") to those counterparties to the Proposed Assumed Leases (or their counsel) who have (x) submitted a written request (by e-mail to Debtors' counsel is acceptable) for Adequate Assurance Information and (y) confirmed in writing to the Debtors' counsel (by e-mail is acceptable) their agreement to keep such Adequate Assurance Information strictly confidential and use it solely for the purpose of evaluating whether a Qualified Bidder or the Stalking Horse Bidder has provided adequate assurance of future performance under the applicable Proposed Assumed Leases; provided, however, that the Stalking Horse Bidder or Qualified Bidder, as applicable, may require the counterparties to the applicable Proposed Assumed Leases to execute confidentiality agreements prior to the remittance of any confidential, non-public information to such counterparty.

30.     Any objection (an "Adequate Assurance Objection") to the provision of adequate assurance of future performance must be filed and served in accordance with the Cure Notice, so as to actually be received by the parties listed on the Cure Notice, at or before **4:00 p.m. (Central Time) on December 6, 2023** (the "Assumption Objection Deadline"). Any such objection must also state the basis therefor. If a non-Debtor party to any executory contract or unexpired lease fails to object to the assumption or assignment and provision of adequate assurance of future performance by the Assumption Objection Deadline or at the Sale Hearing, as the case may be, such counterparty shall be forever barred from raising any such objection.  Assumption Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before the Sale Hearing or after the Sale Hearing.  Any counterparty to an executory contract or unexpired lease, including, without limitation, a Proposed Assumed Leases, that fails to timely file and serve an Assumption Objection shall be forever barred from disputing the assumption and assignment of

such Assumed Lease to a Stalking Horse Bidder or to a Successful Bidder or seeking adequate assurance of future performance. If the Debtors elect to exclude a Proposed Assumed Lease pursuant to the Stalking Horse Agreements, the Debtors shall provide the Stalking Horse Bidder and Qualified Bidders with notice of the excluded Proposed Assumed Lease three (3) business days before the Auction.

31.     Notwithstanding anything to the contrary herein, at any time before the Auction, the Stalking Horse Bidders or any Qualified Bidders who becomes a Successful Bidder, as the case may be, shall have the right to exclude any of the Proposed Assumed Leases from the Purchased Assets (an "Excluded Contract") to the extent permitted in the applicable Stalking Horse Agreement or Bidder Purchase Agreement, and any such Excluded Contract shall constitute an Excluded Asset (as defined in the applicable Stalking Horse Agreement or Bidder Purchase Agreement) and shall not constitute, for any purpose whatsoever, a Purchased Asset and the Purchase Price shall be reduced to the extent permitted in the Stalking Horse Agreement or Bidder Purchase Agreement; provided, however, that any Excluded Contract nevertheless may be assumed and assigned, at a Successful Bidder's written request to Debtors' counsel made no later than the Closing (as defined in the Stalking Horse Agreement or Bidder Purchase Agreement) (the "Subsequently Added Contract") unless alternative mutual arrangements are made between the Debtors and the Stalking Horse Bidder or Successful Bidder; and provided that any Excluded Contract that does not become a Subsequently Added Contract shall be deemed rejected pursuant to section 365(a) of the Bankruptcy Code effective as of the start of the Auction. Neither the Stalking Horse Bidders nor the Successful Bidders, as applicable, shall incur any liability, obligation, or debt in connection with or related to any such Excluded Contract that constitutes an Excluded Asset.

## VII.    The Sale Notice.

32.    On a date that is at least twenty-one (21) calendar days prior to the Sale Hearing, the Debtors will serve a notice of the Sale and Sale Hearing, substantially in the form attached hereto as **Exhibit D** (the "Sale Notice"), by first-class mail, postage prepaid, or by email where available, upon (a) all known creditors of the Debtors, (b) all equity holders of the Debtors, (c) entities known to have expressed an interest in a transaction with respect to some or all of the Purchased Assets; (d) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Purchased Assets; (e) the Internal Revenue Service and all state and local taxing authorities in the states in which the Debtors have or may have any tax liability; (f) the Securities and Exchange Commission; (g) counsel to the Prepetition Agent; (h) counsel to BKCI; (i) counsel to the Creditors' Committee, if appointed; (j) the Office of the Bankruptcy Administrator for the Northern District of Alabama; (k) counsel for the Stalking Horse Bidders; and (l) those parties who have filed the appropriate notice requesting notice of all pleadings filed in these chapter 11 cases.

33.    Additionally, pursuant to the Bidding Procedures Order, the Debtor will file and serve a notice identifying any Successful Bidder(s) or Back-up Bidder(s) in accordance with the Bidding Procedures Order.

## BASIS FOR RELIEF REQUESTED

34.    The instant Bidding Procedures Motion is the first step in a two-step process, whereby the Debtors intend ultimately to sell all or substantially all of their assets with Court approval.  The Debtors intend to continue their robust marketing efforts and conduct the Auction with Stalking Horse Bidders and active participation from as many interested parties as possible. The Debtors, with the advice of their professionals, believe that this course of action will maximize

the value of the Debtors' business as a going concern and result in the best possible recovery to the Debtors' creditors. While the instant Bidding Procedures Motion does not seek authorization to consummate a sale, the legal standard is nevertheless set forth in brief below as a complement to the Sale Motion filed contemporaneously herewith.

I.  **Section 363(b) of the Bankruptcy Code authorizes the sale of assets under these <u>circumstances</u>.**

35.     Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of a debtor's estate, courts have approved the authorization of a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See, e.g., Meyers v. Martin (In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper,* 933 F.2d 513 (7th Cir. 1991)); *In re Chateaugay Corp.,* 973 F.2d 141, 143 (2d Cir. 1992); *Stephen Indus., Inc. v. McClung,* 789 F.2d 386 (6th Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2d Cir. 1983).

36.     Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See In re Decora Indus., Inc.,* 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del. 1991)). Where a debtor demonstrates a valid business justification for a decision, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that

the action taken was in the best interests of the company." *In re Integrated Res., Inc.,* 147 B.R. at 656 (quoting *Van Gorkum,* 488 A.2d 858, 872 (Del. 1985)). A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders. *See, e.g., In re Abbotts Dairies of Pa., Inc.,* 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.,* 722 F.2d at 1063; *In re Food Barn Stores, Inc.,* 107 F.3d at 564-65 (recognizing the paramount goal of any proposed sale of property of estate is to maximize value).

37.     The Debtors' contemporaneously filed Sale Motion addresses the legal standard set forth here, and the factual elements satisfying the standard, in detail.

## II.     The Bidding Procedures are fair and are designed to elicit the highest or otherwise best possible value for the sale of the Debtors' assets.

38.     There is ample authority for approving the Bidding Procedures described above. Courts have consistently held that a Debtors' business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. *See, e.g., In re Trilogy Dev. Co., LLC,* No. 09-42219, 2010 Bankr. LEXIS 5636, at *3–4 (Bankr. W.D. Mo. 2010) (holding that section 363 of the Bankruptcy Code permits the Debtors to sell their assets if a sound business purpose exists); *In re Channel One Commc'ns, Inc.,* 117 BR 493 (Bankr. E.D. Mo. 1990) (same); *In re Schipper,* 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the Debtors in possession can sell property of the estate . . . if he has an 'articulated business justification.'" (internal citations omitted)); *see also In re Farmland Indus., Inc.,* 294 B.R 855, 881 (Bankr. W.D. Mo. 2003) (holding that courts in this district are reluctant to interfere with corporate decisions unless "it is made clear that those decisions are, inter alia, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code"); *In re Integrated Res.,*

*Inc.,* 147 B.R. 650, 656–57 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

39.     The purpose of sale and bidding procedures is to promote competition in order to maximize the value of the Debtors' assets. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 537 (3d Cir. 1999); *see also Official Comm. Of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992).

40.     To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., Integrated Resources,* 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the Debtors' assets"); *In re Fin. News Network, Inc.,* 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("[C]ourt-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

41.     The Bidding Procedures proposed above are appropriate in this context. The Debtors designed the Bidding Procedures to ensure a fair and reasonable process that will yield the maximum value for the Debtors' assets. The proposed Bidding Procedures will facilitate a competitive process in which all Potential Bidders are encouraged to participate and submit bids (while affording Potential Bidders flexibility in structuring their Bids). The Bidding Procedures also provide Potential Bidders with sufficient notice and opportunity to acquire information necessary to submit timely and informed bids at each stage of the Sale Process. Thus, the Debtors

65533/0001-46246868v7

and all parties in interest can be assured that the Debtors will have the opportunity to consider all competing Bids in a fair process and that the consideration received will be the highest and best available.

### III. The Court should authorize the Break-Up Fees and Overbid.

42.     The Debtors have determined, in their reasonable business judgment, that a sale of the Purchased Assets according to the Bidding Procedures is warranted. The Debtors request that the Court authorize the Break-Up Fees of 2.5% of the Purchase Price of each Stalking Horse Agreement, plus a maximum Expense Reimbursement of $150,000 for substantiated expenses incurred in connection with each Stalking Horse Bidder's submission.

43.     Break-up and other termination fees are a normal, and in some cases necessary, component of sales outside the ordinary course of business under section 363 of the Bankruptcy Code. *See, e.g., In re Integrated Resources, Inc.*, 147 B.R. 650, 660 (S.D.N.Y. 1992) (noting that Break-up fees may be legitimately necessary to convince a single "white knight" to enter the bidding by providing some form of compensation for the risk it is undertaking).

44.     The United States Court of Appeals for the Eleventh Circuit has yet to establish standards for determining the propriety of bidding incentives in the bankruptcy context. For this reason, courts in the Eleventh Circuit look to the standards adopted by other bankruptcy courts and/or circuits when considering whether to award a break-up fee in connection with a proposed sale. At least one bankruptcy court in the Eleventh Circuit has adopted the approach taken by the United States Bankruptcy Court for the District of Arizona, which seeks to determine whether the breakup fee will unduly burden the debtor's estate or impair the rights of parties in interest. *In re Sea Island Co.*, 2010 WL 4393269, *2 (S.D. Ga., Sept. 15, 2010). In *In re Sea Island Co.*, the United States Bankruptcy Court for the Southern District of Georgia considered the propriety of a

proposed break-up fee contained in a bidding procedures motion filed by the debtor. The court recognized that bankruptcy courts generally examine "break-up fee arrangements under three standards." *Id.* "Some courts [] use[] a 'business judgment' standard requiring a reviewing court to defer to the business judgment of the debtor in possession and denying the use of such fees only when they are a product of bad faith or would chill bidding." *Id.* (citing *In re Integrated Resources, Inc.*, 147 B.R. 650 (S.D.N.Y.1992)). In contrast, "the Third Circuit Court of Appeals has held that the application for break-up fees and expenses under § 503(b) is no different from other applications for administrative expenses." *Id.* citing (*In re Reliant Energy Channelview LP*, 594 F.3d 200 (3d Cir. 2010). Under this approach, the standard turns on "'the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate.'" *Id.* (quoting *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999)). Other bankruptcy courts— such as the Bankruptcy Court for the District of Arizona—have held that the "standard is not whether a break-up fee is within the business judgment of the debtor, but whether the transaction will 'further the diverse interests of the debtor, creditors and equity holders, alike[.]'" *Id.* (quoting *In re America West Airlines, Inc.,* 166 B.R. 908 (Bankr. Ariz. 1994).

45.     To meet the standard used by the Bankruptcy Court for the Southern District of Georgia, "a breakup fee must not unduly burden a debtor's estate, and the relative rights of the parties in interest must be protected." *Id.* The court in *Sea Island Co.* ultimately found that the "standard set out in *America West* [was] the most appropriate of the three standards[,]" *id.* at *3, and looked to the following seven factors to determine whether that standard was met:

> (1)     Whether the fee requested correlates with a maximization of value to the debtor's estate;
>
> (2)     Whether the underlying negotiated agreement is an arms-length transaction between the debtor's estate and the negotiating acquirer;

(3)     Whether the principal secured creditors and the official creditors committee are supportive of the concession;

(4)     Whether the subject break-up fee constitutes a fair and reasonable percentage of the proposed purchase price;

(5)     Whether the dollar amount of the break-up fee is so substantial that it provides a "chilling effect" on other potential bidders;

(6)     The existence of available safeguards beneficial to the debtor's estate [in the event the transaction falls through];

(7)     Whether there exists a substantial adverse impact upon unsecured creditors, where such creditors are in opposition to the break-up fee.

*Id*. (citing *In re Hupp Industries, Inc*. 140 B.R. 191 (Bankr. N.D. Ohio 1992)).

46.     The standard set forth in *America West* and *Hupp* is met here.

(1)     The Bid Protections are beneficial to the Debtors' estates and their stakeholders because they were necessary to induce the Stalking Horse Bidders to enter into the Stalking Horse Agreements which, in turn, sets a higher floor for bidding at the Auction. *See e.g. In re Williamson*, 327 B.R. 578, 581 (Bankr. E.D. Va. 2005) ("It is reflected in some chapter 11 cases by the use of 'stalking horses', break-up fees and other devices, all of which encourage broad participation in a bankruptcy sale and recognize the risks inherent in participation from the peculiar requirements of bankruptcy sales.").

(2)     The Stalking Horse Bidders were solicited through the Debtors' investment banker, Raymond James, and negotiated at arms' length.  Several iterations of the Stalking Horse Agreements were exchanged, with both sides seeking to achieve the Purchase Price and terms most favorable to it.

(3)     While no Creditors' Committee has been appointed as of the filing of this Bidding Procedures Motion, the Debtors understand that the Prepetition Agent does not object to

the uniform Bid Protections sought herein, and it appears that such Bid Protections will help to preserve any valuing flowing to unsecured creditors, rather than to impede it.

(4)     The Break-Up Fees and Expense Reimbursements of 2.5% of the projected guaranteed value of the Stalking Horse Bidder's Bid, plus as much as $150,000 of substantiated expenses are of the same order of magnitude as break-up fees approved in other cases. *See, e.g., Consumer News & Business Channel Partnership v. Financial News Network, Inc.* (*In re Financial News Network, Inc.*), 980 F.2d 165, 167 (2d Cir. 1992) (noting without discussion $8.2 million Break-up fee on $149.3 million transaction (5.5% of consideration offered)); *Cottle v. Stores Communications*, 849 F.2d 570, 578-79 (11th Cir 1988) (approving $29 million fee on $2.5 billion transaction, 1.16%); *see also LTV Aerospace & Defense Co. v. Thomson-CSF, S.A.* (*In re Chateguay Corp.*), 1998 B.R. 848, 861 (S.D.N.Y. 1996) (enforcing $20 million "reverse Break-up fee" payable to debtor on $450 million offer (4.4% of consideration)).

(5)     The Bid Protections will not chill bidding.  The projected Purchase Price of the various combinations of Purchased Assets contained in the Stalking Horse Agreements are on the order of many tens of millions of dollars.  As such, the Expense Reimbursements are nearly negligible and the Break-Up Fees, at only 2.5%, will be of a value that the Debtors and their professional believe will not discourage a Potential Bidder from providing a Qualified Bid, which would require a Minimum Overbid in excess of the Stalking Horse Bidders Purchase Prices plus the Bid Protections.  Rather than chill bidding, the Debtors believe the respective Stalking Horse Bids (which the Debtors could only secure through offering the Bid Protections) will prompt active bidding before and during the Auction.

(6)     Here, in the event that the Bid Protections are triggered, it means that a Successful Bidder has been named following the Auction, and that a transaction with such

Successful Bidder *has closed*.  Moreover, to the extent that any transaction with a Successful Bidder is not consummated for any reason, the Debtors are seeking the Court's approval in the contemporaneously filed Sale Motion to designate a Back-Up Bidder or Bidders at the Auction, and to consummate the Sale with such Back-Up Bidder(s) to the extent that any transaction with a Successful Bidder does not close.  Thus, if the Bid Protections are triggered, it means that a transaction has closed and the estates bear no risk of paying the Bid Protections where the transaction triggering those Bid Protections does not close.

(7)     No Creditors' Committee has been appointed as of the filing of this Bidding Procedures Motion.  However, if a Creditors' Committee is appointed and is in opposition to the Bid Protections, there would nevertheless be no substantial adverse impact to the unsecured creditors because the value to be achieved through the Sale Process is only possible through the Bid Protections.  As previously stated, the Stalking Horse Bidders would not have entered into the Stalking Horse Agreements without the Bid Protections, which would have materially affected the outlook of any Auction or other Sale Process.

47.     It is also worth noting that the Bid Protections proposed here would satisfy the standards adopted in the Second and Third Circuits (and elsewhere), should the Court choose to apply them.  To that end, the Debtors submit that (i) the Bid Protections were established in a reasonable exercise of the Debtors' business judgment, because they were necessary to induce the Stalking Horse Bidders to enter into the Stalking Horse Agreements and are of reasonable magnitude, and (ii) that the Bid Protections thereby have already not only preserved, but provided value to, the Debtors' estates.  Indeed, if any such Break-Up Fee is ultimately payable to a Stalking Horse Bidder—by definition, because the Debtors have received a higher or otherwise better offers and have closed on one or more superior transactions—the Stalking Horse Bidder's Bid will have

benefited the estate, particularly in the context of the total consideration received. The Bidding Procedures require a Minimum Overbid of at least the purchase price offered by any Stalking Horse Bidder *plus* 2.5% of that proposed Purchase Price and $250,000 to exceed the maximum possible Expense Reimbursement, which will more than offset any Break-up Fee that is triggered.

48.     It is also possible that Bids will be submitted before or during the Auction that contemplate a different portion of the Purchased Assets (*i.e.*, different Restaurant locations) than that contemplated by the Stalking Horse Agreements, in which case the Minimum Overbids may not directly cover the Bid Protections. The Debtors will therefore take all such potential results into consideration in determining whether to name one or more Successful Bidders, including the net proceeds received by the estates if one more Stalking Horse Bidders are entitled to payment of Bid Protections. It is critical that the Debtors retain the flexibility to consider Bids for different combinations of Restaurant locations, and in such case will exercise their business judgment, in consultation with their professionals, the Prepetition Agent, and the Creditors' Committee, in determining which Bid or combination of Bids provide the highest and best value, and greatest total recovery, to the Debtors' estates and their creditors.

49.     In light of the foregoing, the Debtors submit that the proposed Bid Protections will not unduly burden the Debtors' estates or impair the interests of any parties in interest. Likewise, the Bid Protections will not chill bidding, are reasonable within the requirements of the business judgment rule and should therefore be approved.

## IV.     The Court Should Approve the Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases.

50.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." Pursuant to Bankruptcy Rule 6006(a), "[a] proceeding to assume,

reject, or assign an executory contract or unexpired lease, other than as part of a plan, is governed by [Bankruptcy] Rule 9014." In turn, Bankruptcy Rule 9014 provides that "[i]n a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."

51. Here, each Counterparty to a Proposed Assumed Lease will have an opportunity to file a written objection to the Cure Amount or the assignment of the Proposed Assumed Lease, or to challenge the ability of the Stalking Horse Bidder(s) or Successful Bidder(s) to provide adequate assurance. To the extent any such objection is not resolved before the Sale Hearing, each counterparty to a Proposed Assumed Lease will have the opportunity to be heard at the Sale Hearing or at such other time as the Court deems appropriate.

52. The Debtors therefore submit that the Assumption and Assignment Procedures proposed above, as well as the Cure Notice attached hereto as <u>Exhibit C</u>, are reasonable and sufficient under the circumstances and satisfy Bankruptcy Rules 6006(a) and 9014(a).

**V.** **<u>The Court should Approve the Form and Manner of Sale Notice and Cure Notice</u>.**

53. Under Bankruptcy Rules 6004(a) and 2002(a) and (c), the Debtors are required to notify creditors of the Sale, including disclosing the terms and conditions of the Sale, and the deadlines for filing any objections thereto. The Debtors submit that the notice procedures described above, and the form of Sale Notice attached hereto as <u>Exhibit D</u>, fully comply with the applicable Bankruptcy Rules and are reasonably calculated to provide timely and adequate notice of the Sale and Sale Hearing to the Debtors' creditors and all other interested parties that are entitled to notice, as well as to those parties that have expressed a bona fide interest in acquiring the Purchased Assets.

## <u>RESERVATION OF RIGHTS</u>

54.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Section 365 of the Bankruptcy Code.  To the contrary, the Debtors expressly reserve their rights to contest any such claim.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to this Court's Order is not intended and should not be construed as an admission as to the validity of any claims, a waiver of the Debtors' rights to dispute such claim subsequently, or an admission that the entity paid is entitled to such payment by law.

## NOTICE

55.     The Debtors will provide notice of this Motion to: (a) all known creditors of the Debtors, (b) all equity holders of the Debtors, (c) entities known to have expressed an interest in a transaction with respect to some or all of the Purchased Assets; (d) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Purchased Assets; (e) the Internal Revenue Service and all state and local taxing authorities in the states in which the Debtors have or may have any tax liability; (f) the Securities and Exchange Commission; (g) counsel to the Prepetition Agent; (h) counsel to BKCI; (i) counsel to the Creditors' Committee, if appointed; (j) the Office of the Bankruptcy Administrator for the Northern District of Alabama; and (k) those parties who have filed the appropriate notice requesting notice of all pleadings filed in these chapter 11 cases.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

56.     The Debtors have not previously sought the relief requested herein from this Court or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter the Bidding Procedures Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: October 26, 2023
Birmingham, Alabama

/s/ Jesse S. Vogtle, Jr.
Jesse S. Vogtle, Jr.
Eric T. Ray
HOLLAND & KNIGHT LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, Alabama 35203
Telephone: (205) 226-5700
Facsimile: (205) 214-8787
jesse.vogtle@hklaw.com
etray@hklaw.com

-and-

COLE  SCHOTZ P.C.

Gary H. Leibowitz*
Irving E. Walker*
H.C. Jones III*
J. Michael Pardoe*
COLE SCHOTZ PC
1201 Wills Street, Suite 320
Baltimore, MD 21231
(410) 230-0660
(410) 230-0667
gleibowitz@coleschotz.com
iwalker@coleschotz.com
hjones@coleschotz.com
mpardoe@coleschotz.com

*Proposed Attorneys for the Debtors and Debtors-in-Possession*

*Admitted *pro hac vice*

65533/0001-46246868v7

**EXHIBIT A**

**PROPOSED ORDER**

65533/0001-46246868v7

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | (Chapter 11) |
| PREMIER KINGS, INC., *et al.*,[6] | Case No. 23-02871 (TOM11) |
| Debtors. | Joint Administration Requested |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF ALL OR SUBSTANTIALLY ALL THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) APPROVING BID PROTECTIONS FOR STALKING HORSE BIDDERS; (III) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (IV) SCHEDULING AN AUCTION FOR, AND HEARING TO APPROVE, THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (V) APPROVING THE FORM AND MANNER OF SALE NOTICE; AND (VI) GRANTING RELATED RELIEF**

Upon consideration of the Motion (the "Motion")[7] of the Debtors for entry of an order approving bidding procedures for the sale of all or substantially all of the Debtors' assets, scheduling an Auction for, and Hearing to consider, the Sale, and upon consideration of all pleadings related thereto, including the Baker Declaration; and it appearing that the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2); and it appearing that venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing

---

[6] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers, are: Premier Kings, Inc. (3932); Premier Kings of Georgia, Inc. (9797); and Premier Kings of North Alabama, LLC (9282). The Debtors' address is 7078 Peachtree Industrial Blvd., Suite #800, Peachtree Corners, GA 30071. The Debtors have filed a motion for joint administration with the Court.

[7] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures.

that the relief requested in this Motion is in the best interest of the Debtors, their estates, and their creditors; and after due deliberation and good and sufficient cause appearing therefor;

**IT IS FOUND AND DETERMINED THAT:**

A.    The Debtors have articulated good and sufficient business reasons for the Court to (i) approve the Bidding Procedures attached to this Order; (ii) approve the Bid Protections proposed in the Motion, including a uniform Break-Up Fee of 2.5% for each Stalking Horse Bidder, plus a maximum expense reimbursement of $150,000 for substantiated expenses incurred in connection with each Stalking Horse Bidder's submission; (iii) set dates for the Auction and Sale Hearing, as well as any other dates or deadlines set forth in the Bidding Procedures attached hereto; and (iv) to authorize and approve the Assumption and Assignment Procedures and the form and manner of Sale Notice.

B.    In light of the circumstances and the nature of the relief requested, sufficient and adequate notice of the Bidding Procedures has been given, and no further notice thereof is required.

C.    The Bidding Procedures attached hereto as **<u>Exhibit 1</u>** and the Bid Protections contained herein are fair, reasonable, appropriate, and appear to represent the best method for maximizing the value of the Debtors' estates, considering the size and nature of the proposed Sales, the marketing efforts by the Debtors and their professionals to date and yet to be conducted, and the efforts the Court believes have been and will be expended by the Stalking Horse Bidders.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Motion is granted with respect to the matters set forth herein, including approval of the Bidding Procedures and Bid Protections.

**The Bid Deadline**

2.     In order to participate in the Auction, a Potential Bidder must submit a Qualified Bid (as defined in the Bidding Procedures), in writing or by email, so as to be actually received by the Bid Deadline, to:  (a) the Debtors, c/o Aurora Management Partners, 112 South Tryon Street, Suite 1770, Charlotte, NC 28284, Attention David Baker, CRO, dbaker@auroramp.com;  (b) counsel for the Debtors, Gary H. Leibowitz, Esq., Cole Schotz P.C., 1201 Wills Street, Baltimore, MD 21231, gleibowitz@coleschotz.com; (c) Raymond James, 320 Park Avenue, 12th Floor, New York, NY 10022, Attention: John Berg, john.berg@raymondjames.com, Geoffrey Richards, geoffrey.richards@raymondjames.com, and Enrique Acevedo, Enrique.acevedo@raymondjames.com; (d) the Prepetition Agent, c/o counsel for the Prepetition Agent, Jeffrey R. Dutson, Esq., 1180 Peachtree Street, NE Suite 1600, Atlanta, GA 30309, jdutson@kslaw.com; and (e) counsel for the Creditors' Committee, [**********] (the "Notice Parties).

**Qualified Bids**

3.     The Debtors may determine, in their business judgment, and in consultation with the Prepetition Agent, whether any Bids submitted by the Bid Deadline constitute Qualifying Bids in connection with the standards set forth in the Bidding Procedures.

**Credit Bids**

4.     On or before the Bid Deadline, secured creditors may submit a credit bid for some or all of the Purchased Assets to the fullest extent permitted under section 363(k) of the Bankruptcy Code.  The Prepetition Agent shall be entitled to credit bid any portion of its outstanding secured

obligations pursuant to section 363(k) of the Bankruptcy Code with respect to any assets on which they hold liens. If the Prepetition Agent intends to credit bid at the Auction, they shall provide the Debtors with a "Notice of Intention to Credit Bid" by 5:00 p.m. on the Business Day prior to commencement of the Auction, which notice shall include a marked copy of an asset purchase agreement reflecting any changes from the applicable Stalking Horse Purchase Agreement of the opening bid at the Auction (provided that such Prepetition Agent will have the same rights as any other Qualifying Bidder hereunder to amend such terms during the Auction). If the Prepetition Agent shall submit a Notice of Intention to Credit Bid, the Prepetition Agent shall thereafter cease to be a consultation party hereunder. Any secured creditors that submit a credit bid at the Auction, which is or are determined to be the highest and best offer(s) and the Successful Bidder(s) or Back-Up Bidder(s) pursuant to this Order and the Bidding Procedures (the "Successful Credit Bidder"), shall be required to pay cash in the full amount of the credit bid(s) (in addition to any other cash required to pay the Purchase Price in full at closing) which shall be held in escrow by Flagstar Bank ("Escrow Agent") pending the determination of the extent, validity, amount and priority of their secured claim; provided that, notwithstanding anything to the contrary contained herein, the Prepetition Agent shall be entitled to credit bid any portion of its outstanding secured obligations pursuant to section 363(k) of the Bankruptcy Code with respect to any assets on which they hold liens without the payment of any such cash deposit. After the secured claim is determined by final and non-appealable order, if the Successful Credit Bidder(s) obtain one or more allowed secured claim(s), they shall be entitled to set off the amount of such claim(s) against the Purchase Price in accordance with section 363(k) and obtain a refund of that amount from the cash held by the Escrow Agent. If the Successful Credit Bidders' secured claim(s) are disallowed in full, then the Escrow Agent shall release all of the cash in escrow to the Debtors. The Debtors' acceptance of a

Bid from a Successful Credit Bidder shall not be deemed to be an admission that such creditor has an allowed secured claim, or otherwise impact the determination of its claim in this case.

**The Auction**

5. If the Debtors, in their sole discretion, pursuant to the Bidding Procedures, determine that they have received one or more Qualified Bids by the Bid Deadline, the Debtors shall conduct an auction (the "<u>Auction</u>") with respect to the Purchased Assets, which shall take place on **December 4, 2023 at 10:00 a.m. (Central)**, at the offices of Holland & Knight, LLP, located at 1901 Sixth Avenue North, Suite 1400, Birmingham, Alabama 35203. Only the Stalking Horse Bidders and Qualified Bidders, as well as their respective advisors, may participate in the Auction.

6. The Stalking Horse Bidders and each Qualified Bidder will be entitled to make Bids at the Auction. The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed. Any Stalking Horse Bidder (in its capacity as a Qualified Bidder, if applicable) and each Qualified Bidder participating in the Auction must confirm that (a) it has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein and (b) it has reviewed, understands, and accepts the Bidding Procedures.

**Successful Bidder(s) and Back-Up Bidders(s)**

7. The Debtors may (I) designate, in their sole discretion and in consultation with the Prepetition Agent and the Creditors' Committee, in the Debtors' business judgment, pursuant to these Bidding Procedures, the highest or otherwise best Bid(s) and the Successful Bidder or Bidders and, at the Debtors' discretion, the second highest or otherwise best Bid(s) as the Back-Up Bidder or Bidders, and (II) reject, without liability, any Bid that the Debtors, in their reasonable discretion and after consultation with the Prepetition Agent and the Creditors' Committee,

determine to be (a) inadequate or insufficient, (b) not in conformity with the Bidding Procedures, the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, or (c) contrary to the best interests of the Debtors and their estates. For the sake of clarity, the terms "consult" or "consultation," as used herein, shall not give the Lender Group, Creditors' Committee, or any other party the right to veto the Debtors' decisions concerning the Bidding Procedures and Sale Process.

8. The Debtors shall file notice with the Court of the identity of the Successful Bidder(s) and Back-up Bidder(s), and the amount(s) of their Bids, by no later than two (2) business days after the selection. The same day, the Debtors shall serve such notice by fax or email to all contract and lease counterparties and to all creditors who have requested the same in writing and provided their fax number or email address, as applicable, to Debtors' counsel on or before that date and time. The Debtors may not designate a Stalking Horse Bidder as a Back-up Bidder unless such Stalking Horse Bidder consents to serving as Back-up Bidder.

**Sale Hearing and Notice**

9. By no later than three (3) business days after entry of this Order, the Debtors shall serve, or cause to be served, this Order, the Bidding Procedures attached hereto as <u>Exhibit 1</u> and the Sale Notice attached hereto as **<u>Exhibit 2</u>**, by first-class mail, postage prepaid, or by email where available, upon (a) all known creditors of the Debtors, (b) all equity holders of the Debtors, (c) entities known to have expressed an interest in a transaction with respect to some or all of the Purchased Assets; (d) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Purchased Assets; (e) the Internal Revenue Service and all state and local taxing authorities in the states in which the Debtors have or may have any tax liability; (f) the Securities and Exchange Commission; (g) counsel to the Prepetition Agent; (h) counsel to the Creditors' Committee, if appointed; (i) the Office of the Bankruptcy Administrator for the

Northern District of Alabama; and (j) those parties who have filed the appropriate notice requesting notice of all pleadings filed in these chapter 11 cases.

10.     The court will conduct a hearing to approve the Sale of the Purchased Assets on [*********] (Central Time) at the United States Bankruptcy Court for the Northern District of Alabama, Southern Division, at the Robert S. Vance Federal Building, 1800 Fifth Avenue North, Birmingham, Alabama 35203, in Courtroom [***], or such other location as the Bankruptcy Court may determine.

11.     Objections, if any, to the Sale of the Purchased Assets ("Sale Objections") must be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Alabama, Southern Division, Robert S. Vance Federal Building, 1800 Fifth Avenue North, Birmingham, AL 35203 or electronically via the Court's CM/ECF system at or before **4:00 p.m. (Central Time) on December 6, 2023** (the "Sale Objection Deadline") and served on counsel for the Debtors, Gary H. Leibowitz, Esq., 1201 Will Street, Suite 320, Baltimore, MD 21231, gleibowitz@coleschotz.com; the Prepetition Agent, c/o counsel for the Prepetition Agent, Jeffrey R. Dutson, Esq., 1180 Peachtree Street, NE Suite 1600, Atlanta, GA 30309, jdutson@kslaw.com; Counsel for the Unsecured Creditors' Committee, [*********]; and counsel for the Stalking Horse Bidders.  Failure to file a Sale Objection on or before the Sale Objection Deadline shall be deemed to be consent for purposes of Section 363(f).

**Assumption and Assignment Procedures**

12.     As part of the Sale Process, the Debtors will serve on each counterparty to a Proposed Assumed Lease, by first-class mail, postage prepaid, a cure notice concerning each executory contract or unexpired lease that is proposed to be assumed and assigned, including without limitation, a Proposed Assumed Lease (as defined and designated in the Stalking Horse

Agreement or Bidder Purchase Agreement, as applicable), substantially in the form attached hereto as **Exhibit 3** (the "Cure Notice"), which shall, for each such executory contract, (i) state the cure amount that the Debtor believes is necessary to assume such executory contract or unexpired lease (the "Cure Amount"); (ii) notify the non-Debtor party that such party's contract or lease, including any amendments and subordination, non-disturbance, and attornment agreements related to the leases, may be assumed and assigned to a purchaser of the Purchased Assets (as defined in the Stalking Horse Agreement or Bidder Purchase Agreement, as applicable) at the conclusion of the Auction; (iii) state the applicable deadline, which will be December 6, 2023 (the "Cure Objection Deadline"), by which the non-Debtor party must file an objection to the Cure Amount (a "Cure Amount Objection") or to the assumption and assignment of a Proposed Assumed Lease (an "Assumption Objection"), and that the deadline to file a an objection to the Sale (a "Sale Objection") is December 6, 2023; and (iv) state the date of the Sale Hearing and that Cure Amount Objections, Assumption Objections, and Sale Objections will be heard at the Sale Hearing; provided, however, that the inclusion of a contract, lease, or agreement on the Cure Notice shall not constitute an admission that such contract, lease, or agreement is an executory contract or unexpired lease (as more fully described herein and including the process set forth in the Cure Notice, the "Assumption and Assignment Procedures"). The Cure Notice will further state that the Debtors reserve all rights, claims, and causes of action with respect to the contracts, leases, and agreements listed on or appended to the Cure Notice or pertaining to the Proposed Assumed Leases.

13.     Any Cure Amount Objections must be filed in accordance with the Cure Notice, so as to actually be received by the parties listed on the Cure Notice, at or before **4:00 p.m. (Central Time) on December 6, 2023**.

14.     Unless a non-Debtor party to any executory contract or unexpired lease files a Cure Amount Objection by the Cure Amount Objection Deadline, then the Cure Amount set forth in the Cure Notice shall be binding upon the non-Debtor counterparty to such agreement for all purposes and will constitute a final determination of the Cure Amount required to be paid in connection with the assumption and assignment of such agreement. In addition, all counterparties to the Proposed Assumed Leases who fail to file an objection will be (a) forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Proposed Assumed Leases, and the Debtors, a Stalking Horse Bidder, or a Successful Bidder or Back-Up Bidder (as applicable) shall be entitled to rely solely upon the Cure Amount set forth in the Cure Notice, and (b) be forever barred and estopped from asserting or claiming against the Debtors, a Stalking Horse Bidder, or a Successful Bidder or Back-Up Bidder (as applicable), or any other assignee of the Proposed Assumed Leases that any additional amounts are due or that defaults exist, or conditions to assumption and assignment must be satisfied with respect to such Proposed Assumed Leases.

15.     In the event that the Debtors and the non-Debtor party cannot resolve the Cure Amount, the Debtors shall segregate any disputed Cure Amounts ("Disputed Cure Amounts") pending the resolution of any such disputes by the Court or mutual agreement of the parties.

16.     The Debtors shall, by no later than December 6, 2023 (the "Adequate Assurance Deadline"), provide the necessary financial information to demonstrate that the Successful Bidder and/or Back-Up Bidder (as defined in the Bidding Procedures), as applicable, can provide adequate assurance of future performance under Section 365 of the Bankruptcy Code (the "Adequate Assurance Information") to those counterparties to the Proposed Assumed Leases (or their counsel) who have (x) submitted a written request (by e-mail to Debtors' counsel is acceptable)

for Adequate Assurance Information and (y) confirmed in writing to the Debtors' counsel (by e-mail is acceptable) their agreement to keep such Adequate Assurance Information strictly confidential and use it solely for the purpose of evaluating whether a Qualified Bidder or the Stalking Horse Bidder has provided adequate assurance of future performance under the applicable Proposed Assumed Lease; provided, however, that the Stalking Horse Bidder or Qualified Bidder, as applicable, may require the counterparties to the applicable Proposed Assumed Lease to execute confidentiality agreements prior to the remittance of any confidential, non-public information to such counterparty.

17.     Any objection (an "Adequate Assurance Objection") to the provision of adequate assurance of future performance must be filed and served in accordance with the Cure Notice, so as to actually be received by the parties listed on the Cure Notice, at or before **4:00 p.m. (Central Time) on December 6, 2023** (the "Assumption Objection Deadline"). Any such objection must also state the basis therefor. If a non-Debtor party to any executory contract or unexpired lease fails to object to the assumption or assignment and provision of adequate assurance of future performance by the Assumption Objection Deadline or at the Sale Hearing, as the case may be, such counterparty shall be forever barred from raising any such objection. Assumption Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before the Sale Hearing or after the Sale Hearing. Any counterparty to an executory contract or unexpired lease, including, without limitation, a Proposed Assumed Lease, that fails to timely file and serve an Assumption Objection shall be forever barred from disputing the assumption and assignment of such Assumed Lease to a Stalking Horse Bidder or to a Successful Bidder or seeking adequate assurance of future performance. If the Debtors elect to exclude a Proposed Assumed Lease pursuant to the Stalking Horse Agreements, the Debtors shall provide the Stalking Horse Bidder

and Qualified Bidders with notice of the excluded Proposed Assumed Lease three (3) business days before the Auction.

18.     Notwithstanding anything to the contrary herein, at any time before the Auction, the Stalking Horse Bidders or any Qualified Bidders who becomes a Successful Bidder, as the case may be, shall have the right to exclude any of the Proposed Assumed Leases from the Purchased Assets (an "Excluded Contract") to the extent permitted in the applicable Stalking Horse Agreement or Bidder Purchase Agreement, and any such Excluded Contract shall constitute an Excluded Asset (as defined in the applicable Stalking Horse Agreement or Bidder Purchase Agreement) and shall not constitute, for any purpose whatsoever, a Purchased Asset and the Purchase Price shall be reduced to the extent permitted in the Stalking Horse Agreement or Bidder Purchase Agreement; provided, however, that any Excluded Contract nevertheless may be assumed and assigned, at a Successful Bidder's written request to Debtors' counsel made no later than the Closing (as defined in the Stalking Horse Agreement or Bidder Purchase Agreement) (the "Subsequently Added Contract") unless alternative mutual arrangements are made between the Debtors and the Stalking Horse Bidder or Successful Bidder; and provided that any Excluded Contract that does not become a Subsequently Added Contract shall be deemed rejected pursuant to section 365(a) of the Bankruptcy Code effective as of the start of the Auction. Neither the Stalking Horse Bidders nor the Successful Bidders, as applicable, shall incur any liability, obligation, or debt in connection with or related to any such Excluded Contract that constitutes an Excluded Asset.

**Stalking Horse Bid Protections**

19.     The Bid Protections described in the Motion are hereby approved, to include a break-up fee of 2.5% of the Purchase Price proposed in each Stalking Horse Agreement (the "Break-

Up Fee"), plus a maximum reimbursement of $150,000 for substantiated expenses incurred in connection with each Stalking Horse Bidder's submission (the "<u>Expense Reimbursement</u>" and, together with the Break-Up Fee, the "<u>Bid Protections</u>").  The Debtors shall be required to pay the Break-Up Fee and Expense Reimbursement to a Stalking Horse Bidder in the event that the Debtors complete a sale of the portion of Purchased Assets designated in the Stalking Horse Bidders Bid to a Successful Bidder other than the Stalking Horse Bidder.  If applicable, the Debtors shall pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder(s) three (3) business days after the closing of the Sale of the Purchased Assets to the Successful Bidder, to the extent due and payable.

### Modification of Bidding Procedures

20.     The Debtors may modify the Bidding Procedures (except the Stalking Horse Bid Protections), in their sole discretion and after consultation with the Prepetition Agent and the Creditors' Committee, without the need for any further order of this Court, including, without limitation, (i) extending the deadlines set forth in the Bidding Procedures, (ii) adjourning the Auction, and (iii) withdrawing any Purchased Assets from the Sale Process at any time prior to or during the Auction; provided, however, that any changes to the dates and deadlines set forth in this Order or the Bidding Procedures shall (i) comply with any milestones contained in any order for the use of cash collateral entered by the Court in these cases or (ii) be made in consultation with the Prepetition Agent.  The Debtors must file notice of any such modifications with the Court and serve such notice upon (a) all known creditors of the Debtors; (b) all equity holders of the Debtors, (c) entities known to have expressed current interest in a transaction with respect to some or all of the Purchased Assets; (d) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Purchased Assets; (e) the Internal Revenue Service and all state

and local taxing authorities in the states in which the Debtors have or may have any tax liability; (f) the Securities and Exchange Commission; (g) counsel to the Prepetition Agent; (h) counsel to BKCI; (i) counsel to the Creditors' Committee, if appointed; (j) the Office of the Bankruptcy Administrator for the Northern District of Alabama; (k) counsel for the Stalking Horse Bidders; and (l) those parties who have filed the appropriate notice requesting notice of all pleadings filed in these chapter 11 cases.

21.    The requirements of Bankruptcy Rule 6003(b) have been satisfied.

22.    The requirements of Bankruptcy Rule 6004(a) are waived.

23.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

24.    The Court shall retain jurisdiction to hear and determine all matter arising from the implementation of this Order.


Dated: _____, 2023
        Birmingham, Alabama

_____
TAMARA O. MITCHELL
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1 TO**
**<u>BIDDING PROCEDURES ORDER</u>**

**BIDDING PROCEDURES**

A. **Due Diligence.**  Upon execution of a valid confidentiality agreement in form and substance reasonably acceptable to the Debtors, the Debtors will afford interested parties such due diligence access or additional information as the Debtors, in consultation with their advisors, deem appropriate.  The Debtors will limit access to due diligence to those parties they believe, in the exercise of the Debtors' reasonable judgment, are pursuing the transaction in good faith and are capable of submitting a Qualified Bid (as defined below) ("<u>Potential Bidders</u>").

B. **Bid Deadline** – **November 30, 2023, 5:00 p.m. (Central).**  Other than as set forth herein, in order to participate in the Auction, a Potential Bidder must submit a Qualified Bid (defined below), in writing or by email, so as to be actually received by the Bid Deadline, to:  (a) the Debtors, c/o Aurora Management Partners, 112 South Tryon Street, Suite 1770, Charlotte, NC 28284, Attention David Baker, CRO, dbaker@auroramp.com; (b) counsel for the Debtors, Gary H. Leibowitz, Esq., Cole Schotz P.C., 1201 Wills Street, Baltimore, MD 21231, gleibowitz@coleschotz.com; (c) Raymond James, 320 Park Avenue, 12th Floor, New York, NY 10022, Attention: John Berg, john.berg@raymondjames.com, and Geoffrey Richards, geoffreyrichards@raymondjames.com; and Enrique Acevedo, enrique.acevedo@raymondjames.com; (d) the Prepetition Agent, c/o counsel for the Prepetition Agent, Jeffrey R. Dutson, Esq., 1180 Peachtree Street, NE Suite 1600, Atlanta, GA 30309, jdutson@kslaw.com; and (e) counsel for the Creditors' Committee, [*********]. (together, the "<u>Notice Parties</u>").  If the Prepetition Agent intends to credit bid at the Auction, they shall provide the Debtors with a "Notice of Intention to Credit Bid" by 5:00 p.m. on the Business Day prior to commencement of the Auction, which notice shall include a marked copy of an asset purchase agreement reflecting any changes from the applicable Stalking Horse Agreement of the opening bid at the Auction (provided that Prepetition Agent will have the same rights as any other Qualifying Bidder hereunder to amend such terms during the Auction).  If the Prepetition Agent shall submit a Notice of Intention to Credit Bid, the Prepetition Agent shall thereafter cease to be a consultation party hereunder.

C. **Qualified Bid Requirements.**

To constitute a Qualified Bid, a bid must:

   i. fully disclose the identity of the Potential Bidder and include contact information for the specific person(s) the Debtors should contact if they have any questions about the Potential Bidder's Bid;

   ii. identify the Stalking Horse Agreement that the Potential Bidder seeks to overbid, including the specific store numbers and locations the Potential Bidder proposes to purchase, including identification of any Stores included in the Stalking Horse

Page 46

Agreement that are excluded from the bid, and any other Stores not included in the Stalking Horse Agreement that are included in the bid; or if the bid is for Other Assets, provide the required information for the Stores the bidder seeks to purchase;

iii. include a signed writing that the Potential Bidder's offer is formal, binding, unconditional, and irrevocable until (i) the closing of the transaction with the Successful Bidder (as defined below) and (ii) for two (2) business days after the earlier of the closing of the sale transaction with the Successful Bidder or the termination of the Successful Bid, if such bidder is designated the Back-Up Bidder (as defined below) at the conclusion of the Auction;

iv. confirm that there are no conditions precedent to the Potential Bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the bid;

v. include a duly authorized and executed copy of an asset purchase agreement, including the purchase price (the "Purchase Price") for the Stores and other Purchased Assets for which the bid is submitted (a "Bidder Purchase Agreement"), together with all exhibits and schedules thereto and copies marked to show any amendments and modifications to the Stalking Horse Agreement the bid seeks to overbid; provided, however, that such Bidder Purchase Agreement shall not include any financing or diligence conditions;

vi. include written evidence of sufficient cash on hand to fund the Purchase Price or sources of immediately available funds that are not conditioned on further third party approvals or commitments, that will allow the Debtors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the transaction contemplated by the Bidder Purchase Agreement, and such other financial information of the Potential Bidder as may be acceptable to the Debtors in their reasonable discretion (collectively, the "Financials"), or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, the Financials of the Potential Bidder's equity holder(s) or other financial backer(s);

vii. (a) where a Potential Bidder seeks to submit a Bid for the purchase of the same Stores contemplated in a particular Stalking Horse Agreement or multiple Stalking Horse Agreements, provide for a cash Purchase Price of at least 2.5% more than the value of the total combined Purchase Price offered in the respective Stalking Horse Agreement or Stalking Horse Agreements, as the case may be, *plus* $250,000 per Stalking Horse Bidder, and/or otherwise have a Purchase Price and value to the Debtors that, in the Debtors' business judgment, is greater or otherwise better than the Purchase Price and value offered under the Stalking Horse Agreement(s); and

(b) where a Potential Bidder seeks to submit a Bid for a portion of the Purchased Assets that is not the same as that contemplated in one or more Stalking Horse Agreements, and includes a different combination of Stores than those designated

in any or all of the Stalking Horse Agreements, provide greater or otherwise better value than the value offered under the Stalking Horse Agreement(s), in the Debtors' business judgment, including consideration of the total combined sale price of the Purchased Assets, the specific Restaurants' marketability, practical matters concerning Restaurant-level issues, and such other considerations as the Debtors may deem appropriate in their business judgment (together or separately, as the case may be, a "<u>Minimum Overbid</u>").

viii. provide a commitment to close the transactions contemplated by the Bidder Purchase Agreement by no later than January 8, 2024;

ix. identify with particularity the unexpired leases the Potential Bidder wishes to assume;

x. contain sufficient information concerning the Potential Bidder's ability to provide adequate assurance of future performance with respect to unexpired leases to be assumed and assigned.

xi. include sufficient information to satisfy the Debtors that the Potential Bidder has obtained the Franchisor's approval to become a franchisee for the Stores included in the bid or, as determined by the Debtors in their sole discretion, after consultation with the Prepetition Agent, that the Potential Bidder is reasonably likely to be able to obtain such approval prior to Closing or otherwise is willing and able to complete Closing without such prior approval;

xii. include an acknowledgement and representation by the Potential Bidder that it: (A) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its offer; (B) has relied solely on its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its Bid; (C) did not rely on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction (defined below), except as expressly stated in the Bidder Purchase Agreement; and (D) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its Bid;

xiii. be accompanied by a good faith deposit in the form of a wire transfer, certified check or such other form that is acceptable to the Debtors, payable to the order of the escrow agent designated by the Sellers in an amount no less than ten percent (10%) of the Purchase Price;

xiv. state that the Potential Bidder agrees to serve as a Back-Up Bidder (as defined below) if such bidder's Qualified Bid is selected as the next highest or otherwise next best bid after the Successful Bidder (as defined below) with respect to the Purchased Assets;

xv.   state that the Potential Bidder consents to the jurisdiction of the Bankruptcy Court; and

xvi.   contain such other information reasonably requested by the Debtor.

**D.   Credit Bids.**   On or before the Bid Deadline, parties holding a valid lien on some or all of the Debtors' assets that secures an bona fide claim may submit a credit bid for some or all of such assets to the fullest extent permitted under section 363(k) of the Bankruptcy Code. The Prepetition Agent shall be entitled to credit bid any portion of its outstanding secured obligations pursuant to section 363(k) of the Bankruptcy Code with respect to any assets on which they hold liens (a "<u>Prepetition Credit Bid</u>").

**E.   Auction.**   If one or more Qualified Bids (including a Prepetition Credit Bid) are received on or before the Bid Deadline, the Debtors shall conduct the Auction commencing on **December 4, 2023 at 10:00 a.m. (Central)**, at the offices of Holland & Knight, LLP, located at 1901 Sixth Avenue North, Suite 1400, Birmingham, Alabama 35203.   The Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Auction, or before the Auction by notice provided in the best efforts of the Debtors to all interested parties and to the Court; provided, however, that any changes to the dates and deadlines set forth herein shall (i) comply with any milestones contained in any order for the use of cash collateral entered by the Court in these cases or (ii) be made in consultation with the Prepetition Agent.   The Debtors reserve the right to cancel the Auction (in consultation with the Prepetition Agent) if the requisite Bids described above are not received as of the Bid Deadline.

**F.   Auction Procedures.**   Only the Stalking Horse Bidders and a person or entity that has submitted a Qualified Bid (including a Prepetition Credit Bid) (a "<u>Qualified Bidder</u>") to the Notice Parties and such person's or entity's respective advisors are eligible to participate in the Auction.   For the avoidance of doubt, the Prepetition Agent and its advisors are entitled to attend the Auction in person or via video conferencing.   All participants shall appear in person, by telephone (with prior written authorization by the Debtors, in the Debtors' sole discretion), or through a duly authorized representative.   Prior to the Auction, the Debtors, after consultation with the Prepetition Agent and the Creditors' Committee, shall select the Qualified Bids that, in the Debtors' business judgment, reflect the highest or otherwise best value for the Debtors' estate and the portion of the Purchased Assets contemplated by each Qualified Bid as the starting Bid or Bids (as the case may be, the "<u>Starting Auction Bid(s)</u>"), and advise all participants in the Auction of the terms of the Starting Auction Bid(s).

Where Qualified Bidders seek to submit Bids at the Auction for the purchase of the same portion of the Purchased Assets contemplated in a particular Starting Auction Bid or multiple Starting Auction Bids—including the same Restaurant locations—Qualified Bidders may submit Bids that are higher and better than the total combined Purchase Price of the Starting Auction Bid(s) in an initial increment equal to the aggregate amount of the Starting Auction Bid(s) plus $250,000, and in subsequent increments of at least $250,000,

unless and until the Debtors, in their sole discretion and in consultation with the Prepetition Agent, lift or modify this requirement.

Where Qualified Bidders wish to submit Bids for a portion of the Purchased Assets that is not the same as that contemplated in one or more of the Starting Auction Bids, and includes a different combination of Restaurant locations than those designated in any or all of the Starting Auction Bids, Qualified Bidders may submit Bids that provide greater or otherwise better value than the Starting Auction Bid(s), in the Debtors' business judgment, including consideration of the total combined sale price of the Purchased Assets, the specific Restaurants' marketability, practical matters concerning Restaurant-level issues, and such other considerations as the Debtors may deem appropriate, and in subsequent increments as are set by the Debtors for each applicable combination of Purchased Assets and/or Restaurant locations (collectively, the "Overbid Increments"). The Debtors, in consultation with the Prepetition Agent, may adjourn, continue, re-open, or terminate the Auction, and reserve the right to adopt other and further rules and procedures for the Auction that, in their business judgment, will better promote the goals of the Auction.

Each Qualified Bidder participating in the Auction will be required to confirm on the record at the Auction that it has not engaged in any collusion with respect to the bidding and sale process.

**G.** **Selection of Successful Bidder and Back-Up Bidder.** The Debtors may designate, in their sole discretion and in consultation with the Prepetition Agent and the Creditors' Committee, in the Debtors' business judgment, pursuant to these Bidding Procedures, the highest or otherwise best Bid(s) and the Successful Bidder or Bidders. The Debtors may also designate, in their business judgment, the second highest or otherwise best Bid(s) as the Back-Up Bidder or Bidders.

**H.** **Reservation of Rights.** The Debtors reserves the right to reject, without liability, any Bid that the Debtors, in their reasonable discretion and after consultation with the Prepetition Agent and the Creditors' Committee, determine to be (a) inadequate or insufficient, (b) not in conformity with the Bidding Procedures, the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, or (c) contrary to the best interests of the Debtors and their estates. The Debtors also reserve the right to modify these Bidding Procedures, in their sole discretion and after consultation with the Prepetition Agent and the Creditors' Committee, without the need for any further order of the Bankruptcy Court, including, without limitation, (i) extending the deadlines set forth in the Bidding Procedures, (ii) adjourning the Auction, and (iii) withdrawing any Purchased Assets from the Sale Process at any time prior to or during the Auction; provided, however, that any changes to the dates and deadlines set forth herein shall (i) comply with any milestones contained in any order for the use of cash collateral entered by the Court in these cases or (ii) be made in consultation with he Prepetition Agent.

**EXHIBIT 2 TO**
**BIDDING PROCEDURES ORDER**

**SALE NOTICE**

65533/0001-46246868v7

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| In re: | (Chapter 11) |
| PREMIER KINGS, INC., *et al.*,[8] | Case No. 23-02871 (TOM11) |
| Debtors. | Joint Administration Requested |
|  | **Deadline for Objections:  December 6, 2023.** |
|  | **Sale Hearing:  December [**], 2023.** |

**NOTICE OF HEARING ON APPROVAL OF (I) SALE OF ALL OR SUBSTANTIALLY ALL THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (II) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**PLEASE TAKE NOTICE** that on October 26, 2023, the debtor and debtor-in-possession in the above-captioned chapter 11 cases (the "Debtors"), by their undersigned counsel, filed the *Motion of the Debtors and Debtors-in-Possession for Entry of an Order (I) Approving Asset Purchase Agreements and Authorizing the Sale of All or Substantially All of the Debtors' Assets under 11 U.S.C. §§ 363(b) and 363(m); (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363(f); (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365; and (IV) Granting Related Relief* (the "Sale Motion").[9]

By the Motion, the Debtors seek, among other things, an order authorizing the sale of substantially all their assets (the "Purchased Assets," as further defined in the Stalking Horse Agreements or Bidder Purchase Agreements, as applicable), as a going concern, to the Stalking Horse Bidders, as further designated in each Stalking Horse Agreement—or, alternatively, to any Successful Bidders designated following an Auction, as described below, on the terms contained in each applicable Bidder Purchase Agreement—free and clear of all liens, claims, encumbrances, and interests, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code (the "Sale").

**PLEASE TAKE FURTHER NOTICE** that, concurrently with the Sale Motion, on October 26, 2023, the Debtor, by its undersigned counsel, filed the *Motion of the Debtors and*

---

[8] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers, are:  Premier Kings, Inc. (3932); Premier Kings of Georgia, Inc. (9797); and Premier Kings of North Alabama, LLC (9282). The Debtors' address is 7078 Peachtree Industrial Blvd., Suite #800, Peachtree Corners, GA 30071.  The Debtors have filed a motion for joint administration with the Court.

[9] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion or the Bidding Procedures Motion (defined below).

65533/0001-46246868v7

*Debtors-in-Possession for Entry of an Order (I) Approving Bidding Procedures for the Sale of All or Substantially All the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving Bid Protections for Stalking Horse Bidders; (III) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (IV) Scheduling an Auction for, and Hearing to Approve, the Sale of All or Substantially All the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (V) Granting Related Relief* (the "Bidding Procedures Motion"). The Debtors have filed copies of the Stalking Horse Agreements with the Court under notice (the "Stalking Horse Notices"). The Bankruptcy Court entered an order on [*********] [**], 2023 granting the Bidding Procedures Motion and setting dates for the Auction (as defined below) and other key deadlines for the Sale [Doc. No. ***] (the "Bidding Procedures Order"). All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures, as well as the Stalking Horse Notices. To the extent that there are any inconsistencies between the Bidding Procedures Order and the summary description of its terms and conditions contained in this Notice, the terms of the Bidding Procedures Order shall control.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, if at least one Qualified Bid is duly submitted before the Bid Deadline, an auction to sell the Purchased Assets will be conducted on **December 4 2023, at 10:00 a.m. (Central Time)** (the "Auction")[10] at the offices of Holland & Knight, LLP, located at 1901 Sixth Avenue North, Suite 1400, Birmingham, Alabama 35203. Only those who submit a Qualified Bid to the Notice Parties on or before the Bid Deadline may participate in the Auction.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, if an Auction is conducted, the Debtors are authorized to designate the highest or otherwise best Bid(s) and the Successful Bidder(s) and the second highest or otherwise best Bid(s) and the Back-Up Bidder(s). If Successful Bidder(s) or Back-Up Bidder(s) are designated, the Debtors will file with the Court, within two (2) business days of the selection, a notice of the identity of any Successful Bidder(s) and Back-Up Bidder(s) and the amount(s) of their Bid(s).

**PLEASE TAKE FURTHER NOTICE** that, on [*********] [**], 2023 at [**:**] (Central time), the Bankruptcy Court will conduct a hearing to approve the Sale (the "Sale Hearing"). The Sale Hearing will take place before the Honorable Tamara O. Mitchell, United States Bankruptcy Judge, United States Bankruptcy Court for the Northern District of Alabama, Southern Division, at the Robert S. Vance Federal Building, 1800 Fifth Avenue North, Birmingham, Alabama 35203, in Courtroom [***], or such other location as the Bankruptcy Court may determine.

**PLEASE TAKE FURTHER NOTICE** that objections to the Sale or relief requested in connection with the Sale (a "Sale Objection") must (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedures; (c) set forth the specific basis for the Sale Objection; and (d) be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Alabama, Southern Division, Robert S. Vance Federal Building, 1800 Fifth Avenue North, Birmingham, AL

---

[10] The Bidding Procedures Order authorizes the Debtor to modify certain deadlines set forth therein and to adjourn the Auction.

35203 or electronically via the Court's CM/ECF system and served so as to actually be received by the following parties, at or before **4:00 p.m. (Central Time) on December 6, 2023**.

(a) Undersigned Counsel for the Debtors;

(b) The Prepetition Agent, c/o counsel for the Prepetition Agent, Jeffrey R. Dutson, Esq., 1180 Peachtree Street, NE Suite 1600, Atlanta, GA 30309, jdutson@kslaw.com;

(c) Counsel for the Unsecured Creditors' Committee, [**********]; and

(d) Counsel for the Stalking Horse Bidder or Bidders to whom the Sale Objection pertains.

**IF NO SALE OBJECTION IS PROPERLY FILED AND SERVED BEFORE THE DEADLINE, THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER PERMITTING THE SALE OF THE PURCHASED ASSETS WITHOUT FURTHER NOTICE.**

The Debtors encourage interested parties to review the Sale Motion, Bidding Procedures Motion, Stalking Horse Notices, and Bidding Procedures Order in their entireties. Parties interested in receiving more information regarding the Sale or copies of related documents may make a written request to undersigned counsel. In addition, copies of the Sale Motion, Bidding Procedures Motion, Bidding Procedures Order, and the Proposed Sale Order can be found through PACER, at https://ecf.alnb.uscourts.gov (registration required), and are on file with the Clerk of the Bankruptcy Court, 1800 Fifth Avenue North, Birmingham, AL 35203.

*[Remainder of page intentionally left blank]*

Dated: [*********] [**], 2023
Birmingham, Alabama

/s/ _____

Jesse S. Vogtle, Jr.
Eric T. Ray
HOLLAND & KNIGHT LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, Alabama 35203
Telephone: (205) 226-5700
Facsimile: (205) 214-8787
jesse.vogtle@hklaw.com
etray@hklaw.com

*-and-*

COLE SCHOTZ P.C.

Gary H. Leibowitz*
Irving E. Walker*
H.C. Jones III*
J. Michael Pardoe*
COLE SCHOTZ PC
1201 Wills Street, Suite 320
Baltimore, MD 21231
(410) 230-0660
(410) 230-0667
gleibowitz@coleschotz.com
iwalker@coleschotz.com
hjones@coleschotz.com
mpardoe@coleschotz.com

*Proposed Attorneys for the Debtors and Debtors-in-Possession*

*Admitted *pro hac vice*

65533/0001-46246868v7

**EXHIBIT 3 TO**
**BIDDING PROCEDURES ORDER**

**CURE NOTICE**

65533/0001-46246868v7

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | (Chapter 11) |
| PREMIER KINGS, INC., *et al.*,[11] | Case No. 23-02871 (TOM11) |
| Debtors. | Joint Administration Requested |
| | **Deadline for Objections to Assumption and Assignment: December 6, 2023.** |
| | **Sale Hearing: December [**], 2023.** |

## NOTICE OF POSSIBLE ASSUMPTION AND
## ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES IN CONNECTION WITH SALE

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY BE A COUNTERPARTY TO A CONTRACT OR LEASE WITH THE PREMIER KINGS, INC., PREMIER KINGS OF GEORGIA, INC., OR PREMIER KINGS OF NORTH ALABAMA, LLC, THE DEBTORS AND DEBTORS-IN-POSSESSION IN THE ABOVE-CAPTION CHAPTER 11 CASES. PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN.**

    **PLEASE TAKE NOTICE** that on October 26, 2023, Premier Kings, Inc. and its debtor affiliates, the debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Debtors"), by its undersigned counsel, filed the *Motion of the Debtors and Debtors-in-Possession for Entry of an Order (I) Approving Asset Purchase Agreements and Authorizing the Sale of All or Substantially All of the Debtors' Assets under 11 U.S.C. §§ 363(b) and 363(m); (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363(f); (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365; and (IV) Granting Related Relief* (the "Sale Motion").[12]

---

[11] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers, are: Premier Kings, Inc. (3932); Premier Kings of Georgia, Inc. (9797); and Premier Kings of North Alabama, LLC (9282). The Debtors' address is 7078 Peachtree Industrial Blvd., Suite #800, Peachtree Corners, GA 30071. The Debtors have filed a motion for joint administration with the Court.

[12] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures Motion (defined below).

65533/0001-46246868v7

By the Motion, the Debtors seek, among other things, an order authorizing the sale of substantially all their assets (the "Purchased Assets," as further defined in the Stalking Horse Agreements or Bidder Purchase Agreements, as applicable), as a going concern, to the Stalking Horse Bidders, as further designated in each Stalking Horse Agreement—or, alternatively, to any Successful Bidder designated following an Auction, as described below, on the terms contained in each applicable Bidder Purchase Agreement—free and clear of all liens, claims, encumbrances, and interests, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code (the "Sale").

PLEASE TAKE FURTHER NOTICE that, concurrently with the Sale Motion, on October 26, 2023, the Debtors, by their undersigned counsel, filed the *Motion of the Debtors and Debtors-in-Possession for Entry of an Order (I) Approving Bidding Procedures for the Sale of All or Substantially All the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving Bid Protections for Stalking Horse Bidders; (III) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (IV) Scheduling an Auction for, and Hearing to Approve, the Sale of All or Substantially All the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (V) Granting Related Relief* (the "Bidding Procedures Motion"). The Debtors have filed copies of the Stalking Horse Agreements with the Court under notice (the "Stalking Horse Notices"). The Bankruptcy Court entered an order on [*********] [**], 2023 granting the Bidding Procedures Motion and setting dates for the Auction (as defined below) and other key deadlines for the Sale [Doc. No. ***] (the "Bidding Procedures Order"). All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures, as well as the Stalking Horse Notices. To the extent that there are any inconsistencies between the Bidding Procedures Order and the summary description of its terms and conditions contained in this Notice, the terms of the Bidding Procedures Order shall control.

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Bidding Procedures Order, if at least one Qualified Bid is duly submitted before the Bid Deadline, an auction to sell the Purchased Assets will be conducted on **December 4, 2023, at 10:00 a.m. (Central Time)** (the "Auction")[13] at the offices of Holland & Knight, LLP, located at 1901 Sixth Avenue North, Suite 1400, Birmingham, Alabama 35203. Only those who submit a Qualified Bid to the Notice Parties on or before the Bid Deadline may participate in the Auction.

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Bidding Procedures Order, if an Auction is conducted, the Debtors are authorized to designate the highest or otherwise best Bid(s) and the Successful Bidder(s) and the second highest or otherwise best Bid(s) and the Back-Up Bidder(s). If Successful Bidder(s) or Back-Up Bidder(s) are designated, the Debtors will file with the Court, within two (2) business days of the selection, a notice of the identity of any Successful Bidder(s) and Back-Up Bidder(s) and the amount(s) of their Bid(s).

PLEASE TAKE FURTHER NOTICE that, on [*********] [**], 2023 at [**:**] (Central time), the Bankruptcy Court will conduct a hearing to approve the Sale (the "Sale Hearing"). The Sale Hearing will take place before the Honorable Tamara O. Mitchell, United

---

[13] The Bidding Procedures Order authorize the Debtors to modify certain deadlines set forth therein and to adjourn the Auction.

States Bankruptcy Judge, United States Bankruptcy Court for the Northern District of Alabama, Southern Division, at the Robert S. Vance Federal Building, 1800 Fifth Avenue North, Birmingham, Alabama 35203, in Courtroom [***], or such other location as the Bankruptcy Court may determine.

PLEASE TAKE FURTHER NOTICE that, to facilitate the Sale, the Debtors are seeking to assume and assign to the Stalking Horse Bidder(s) or Successful Bidder(s), as applicable, the Proposed Assumed Leases (as defined and designated in the Stalking Horse Agreement(s) or Bidder Purchase Agreement(s), as applicable, and attached thereto as Schedule 1). A list of the Proposed Assumed Leases, including the amounts the Debtors believe are necessary to be paid to each counterparty (the "Counterparties" and, each, a "Counterparty") to cure any applicable payment arrearages (the "Cure Amount(s)"), if any, is attached hereto as **Schedule 1**. If the Court grants the Motion and approves the Sale, each Counterparty's contract or lease, including any amendments or subordination, non-disturbance, and attornment agreements, may be assumed and assigned to the applicable Stalking Horse Bidder or Successful Bidder.

PLEASE TAKE FURTHER NOTICE that objections to the Cure Amount ("Cure Amount Objections") or to the assumption or assignment of a Proposed Assumed Leases (an "Assumption Objection") must be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Alabama, Southern Division, Robert S. Vance Federal Building, 1800 Fifth Avenue North, Birmingham, AL 35203 or electronically via the Court's CM/ECF system and served so as to actually be received by the following parties, at or before **4:00 p.m. (Central Time) on December 6, 2023**.

(a) Undersigned Counsel for the Debtors;

(b) The Prepetition Agent, c/o counsel for the Prepetition Agent, Jeffrey R. Dutson, Esq., 1180 Peachtree Street, NE Suite 1600, Atlanta, GA 30309, jdutson@kslaw.com;;

(c) Counsel for the Unsecured Creditors' Committee, [**********]; and

(d) Counsel for the Stalking Horse Bidder or Bidders to whom the objection pertains.

Subject to the Bidding Procedures Order, any unresolved objections, based on any grounds, shall be heard at the Sale Hearing unless otherwise agreed by the parties.

PLEASE TAKE FURTHER NOTICE that, at the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to the Stalking Horse Bidder(s) or Successful Bidder(s), as applicable, of only those Proposed Assumed Leases that have actually been selected by the Stalking Horse Bidder(s) or Successful Bidder(s), as applicable, to be assumed and assigned. The Debtors and their estates reserve any and all rights with respect to any Proposed Assumed Leases that are not ultimately designated for assumption and/or assignment.

PLEASE TAKE FURTHER NOTICE that nothing contained in this Notice shall constitute a waiver of any rights of the Debtors or their estates or an admission with respect to the

Debtors' chapter 11 cases, including, but not limited to, any issues involving objections to claims, setoff or recoupment, equitable subordination or recharacterization of debt, defenses, characterization or re-characterization of contracts, leases and claims, assumption or rejection of contracts and leases and/or causes of action arising under the Bankruptcy Code or any other applicable laws. The Debtors reserve all rights to amend this notice, including but not limited to any Cure Amount or the Proposed Assumed Leases set forth on <u>Schedule 1</u> hereto.

---

**Unless a non-Debtor party to any executory contract or unexpired lease files a Cure Amount Objection by the Cure Amount and Assumption Objection Deadline, then the Cure Amount set forth in the Cure Notice shall be binding upon the Counterparty to such agreement for all purposes and will constitute a final determination of the Cure Amount required to be paid in connection with the assumption and assignment of such agreement. In addition, all Counterparties to the Proposed Assumed Leases who fail to file an objection will (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Proposed Assumed Leases, and the Debtors, a Stalking Horse Bidder, or a Successful Bidder (as applicable) shall be entitled to rely solely upon the Cure Amount set forth in this Cure Notice, and (b) be forever barred and estopped from asserting or claiming against the Debtors, a Stalking Horse Bidder, or a Successful Bidder (as applicable), or any other assignee of the Proposed Assumed Leased, that any additional amounts are due or that defaults exist, or conditions to assumption and assignment must be satisfied with respect to such Proposed Assumed Leases.**

---

The Debtors encourage interested parties to review the Sale Motion, Bidding Procedures Motion, Stalking Horse Notices, and Bidding Procedures Order in their entireties. Parties interested in receiving more information regarding the Sale or copies of related documents may make a written request to undersigned counsel. In addition, copies of the Sale Motion, the Bidding Procedures Order, and the Proposed Sale Order can be found through PACER, at https://ecf.alnb.uscourts.gov (registration required), and are on file with the Clerk of the Bankruptcy Court, Robert S. Vance Federal Building, 1800 Fifth Avenue North, Birmingham, AL 35203.

*[Remainder of page intentionally left blank]*

65533/0001-46246868v7

Dated: [*********] [**], 2023
Birmingham, Alabama

/s/ _____
Jesse S. Vogtle, Jr.
Eric T. Ray
HOLLAND & KNIGHT LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, Alabama 35203
Telephone: (205) 226-5700
Facsimile: (205) 214-8787
jesse.vogtle@hklaw.com
etray@hklaw.com

*-and-*

COLE  SCHOTZ P.C.

Gary H. Leibowitz*
Irving E. Walker*
H.C. Jones III*
J. Michael Pardoe*
COLE SCHOTZ PC
1201 Wills Street, Suite 320
Baltimore, MD 21231
(410) 230-0660
(410) 230-0667
gleibowitz@coleschotz.com
iwalker@coleschotz.com
hjones@coleschotz.com
mpardoe@coleschotz.com

*Proposed Attorneys for the Debtors and Debtors-in-Possession*

*Admitted pro hac vice*

65533/0001-46246868v7

## EXHIBIT B

## SCHEDULE OF
## STALKING HORSE AGREEMENTS

| Region :  North Alabama | |
| --- | --- |
| Buyer(s): (Name/Address) | Newell-Berg Alliance AL, LLC |
| Initial Purchase Price (does not include additional purchase price based on inventory value) | $18,500,000.00 |
| Stores to be Purchased | See list of Stores attached as Exhibit B-1 |
| Stalking Horse Bidder Protections | Break-up Fee of 2 ½ % of Initial Purchase Price ($462,500.00) plus Expense Reimbursement of up to $150,000.00 of documented expenses incurred |

| Region:  Savanna, GA and Jacksonville, FL | |
| --- | --- |
| Buyer(s): (Name/Address) | RRG of Jacksonville, LLC |
| Initial Purchase Price (does not include additional purchase price based on inventory value) | $15,525,000.00 |
| Stores to be Purchased | See List of Stores attached as Exhibit B-2 |
| Stalking Horse Bidder Protections | Break-up Fee of 2 ½ % of Initial Purchase Price ($388,125.00) plus Expense Reimbursement of up to $150,000.00 of documented expenses incurred |

# EXHIBIT B1

## NEWELL-BERG ALLIANCE AL, LLC and NEWELL-BERG ALLIANCE TN II, LLC STORES

| Store# | Operating Entity | Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 435 | Premier Kings of North Alabama, LLC | 1244 Florence Blvd | Florence | AL | 35630 |
| 1225 | Premier Kings of North Alabama, LLC | 308 Jordan Lane | Huntsville | AL | 35805 |
| 1486 | Premier Kings of North Alabama, LLC | 1605 Town Square | Cullman | AL | 35055 |
| 2261 | Premier Kings of North Alabama, LLC | 3204 South Broad Street | Scottsboro | AL | 35769 |
| 2297 | Premier Kings of North Alabama, LLC | 2116 Whitesburg Drive | Huntsville | AL | 35801 |
| 3242 | Premier Kings of North Alabama, LLC | 7300 Highway 431 N | Albertville | AL | 35950 |
| 3942 | Premier Kings of North Alabama, LLC | 8895 Madison Blvd | Madison | AL | 35758 |
| 4272 | Premier Kings of North Alabama, LLC | 1111 SE Jefferson Street | Athens | AL | 35611 |
| 4705 | Premier Kings of North Alabama, LLC | 1929 Gunter Avenue | Guntersville | AL | 35976 |
| 4885 | Premier Kings of North Alabama, LLC | 2057 Beltline Road | Decatur | AL | 35603 |
| 6150 | Premier Kings of North Alabama, LLC | 1506 Glenn Blvd. SW | Fort Payne | AL | 35967 |
| 6468 | Premier Kings of North Alabama, LLC | 3541 North Memorial Parkway | Huntsville | AL | 35810 |
| 8173 | Premier Kings of North Alabama, LLC | 2331 Jordan Lane | Huntsville | AL | 35816 |
| 9306 | Premier Kings of North Alabama, LLC | 376 Hughes Road | Madison | AL | 35758 |
| 9694 | Premier Kings of North Alabama, LLC | 3105 Woodward Avenue | Muscle Shoals | AL | 35661 |
| 9783 | Premier Kings of North Alabama, LLC | 601 Highway 31 North | Hartselle | AL | 35640 |
| 10714 | Premier Kings of North Alabama, LLC | 807 Cox Creek Parkway | Florence | AL | 35630 |
| 11000 | Premier Kings of North Alabama, LLC | 11157 Alabama Highway 157 | Moulton | AL | 35650 |
| 11664 | Premier Kings of North Alabama, LLC | 554 Brindlee Mt. Parkway | Arab | AL | 35016 |
| 11914 | Premier Kings of North Alabama, LLC | 5940 Alabama Highway 157 | Cullman | AL | 35055 |
| 12710 | Premier Kings of North Alabama, LLC | 6363 University Drive | Huntsville | AL | 35806 |
| 13084 | Premier Kings of North Alabama, LLC | 11925 South Memorial Parkway | Huntsville | AL | 35803 |
| 13212 | Premier Kings of North Alabama, LLC | 323 Main St. W. | Rainsville | AL | 35986 |
| 13277 | Premier Kings of North Alabama, LLC | 1600 Highway 72 East | Athens | AL | 35611 |
| 13512 | Premier Kings of North Alabama, LLC | 105 Highway 72 West | Tuscumbia | AL | 35674 |
| 14433 | Premier Kings of North Alabama, LLC | 2313 6th Avenue | Decatur | AL | 35601 |
| 21340 | Premier Kings of North Alabama, LLC | 14637 Hwy 231 | Hazel Green | AL | 35750 |
| 22937 | Premier Kings of North Alabama, LLC | 8670 Hwy 72 | Madison | AL | 35758 |
| 23952 | Premier Kings of North Alabama, LLC | 5615 Alabama Hwy 68 | Collinsville | AL | 35961 |
| 25817 | Premier Kings of North Alabama, LLC | 1214 Locust Ave | Lawrenceburg | TN | 38464 |
| 29043 | Premier Kings of North Alabama, LLC | 4240 Florence Blvd | Florence | AL | 35634 |

65533/0001-46246868v7

# EXHIBIT B2

## RRG OF JACKSONVILLE, LLC, OR ITS NOMINEE(S)

| Store# | Operating Entity | Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 1197 | Premier Kings of Georgia, Inc. | 250 Monument Road | Jacksonville | FL | 32225 |
| 1724 | Premier Kings of Georgia, Inc. | 5922 Merrill Road | Jacksonville | FL | 32277 |
| 2873 | Premier Kings of Georgia, Inc. | 1940 S. 8th Street | Fernandina Beach | FL | 32034 |
| 6986 | Premier Kings of Georgia, Inc. | 11031 Old St. Augustine Rd | Jacksonville | FL | 32257 |
| 7068 | Premier Kings of Georgia, Inc. | 13180 Atlantic Blvd | Jacksonville | FL | 32225 |
| 7121 | Premier Kings of Georgia, Inc. | 10142 Phillip's Hwy | Jacksonville | FL | 32256 |
| 8907 | Premier Kings of Georgia, Inc. | 1162 Boone St Ext E | Kingsland | GA | 31548 |
| 9942 | Premier Kings of Georgia, Inc. | 9090 Merrill Road | Jacksonville | FL | 32225 |
| 10422 | Premier Kings of Georgia, Inc. | 542370 US Highway 1 | Callahan | FL | 32011 |
| 11309 | Premier Kings of Georgia, Inc. | 462581 SR 200 | Yulee | FL | 32097 |
| 13106 | Premier Kings of Georgia, Inc. | 13404 Sutton Park Dr. | Jacksonville | FL | 32224 |
| 15499 | Premier Kings of Georgia, Inc. | 13049 North Main St | Jacksonville | FL | 32218 |
| 16751 | Premier Kings of Georgia, Inc. | 184 S. Hwy 17 | East Palatka | FL | 32131 |
| 17831 | Premier Kings of Georgia, Inc. | 11761 Beach Blvd Ste 15 | Jacksonville | FL | 32246 |
| 19411 | Premier Kings of Georgia, Inc. | 2455 SR 207 | St Augustine | FL | 32084 |
| 23806 | Premier Kings of Georgia, Inc. | 2430 Osborne Rd | St Mary's | GA | 31558 |
| 1691 | Premier Kings of Georgia, Inc. | 5015 New Jesup Hwy | Brunswick | GA | 31520 |
| 322 | Premier Kings of Georgia, Inc. | 601 Martin Luther King Blvd | Savannah | GA | 31401 |
| 521 | Premier Kings of Georgia, Inc. | 7923 White Bluff Road | Savannah | GA | 31406 |
| 1226 | Premier Kings of Georgia, Inc. | 14 W. DeRenne Ave | Savannah | GA | 31405 |
| 1404 | Premier Kings of Georgia, Inc. | 11711 Abercorn Street | Savannah | GA | 31419 |
| 1471 | Premier Kings of Georgia, Inc. | 1295 Ribaut Rd | Beaufort | SC | 29902 |
| 1551 | Premier Kings of Georgia, Inc. | 4241 Augusta Road | Garden City | GA | 31408 |
| 2124 | Premier Kings of Georgia, Inc. | 1710 Memorial Drive | Waycross | GA | 31501 |
| 2397 | Premier Kings of Georgia, Inc. | 998 Sunset Blvd | Jesup | GA | 31545 |
| 3048 | Premier Kings of Georgia, Inc. | 18770 Whyte Hardee Blvd | Hardeeville | SC | 29927 |
| 5571 | Premier Kings of Georgia, Inc. | 415 US Highway 80 E | Pooler | GA | 31322 |
| 10241 | Premier Kings of Georgia, Inc. | Highway 251 Magnolia Bluff Way | Darien | GA | 31305 |
| 10893 | Premier Kings of Georgia, Inc. | 815 Elma G. Miles Parkway | Hinesville | GA | 31313 |
| 12107 | Premier Kings of Georgia, Inc. | 115 Golden Isles Plaza | Brunswick | GA | 31520 |
| 12792 | Premier Kings of Georgia, Inc. | 3527 Highway 84 West | Blackshear | GA | 31516 |
| 12906 | Premier Kings of Georgia, Inc. | 8257 E Main St | Ridgeland | SC | 29936 |
| 13243 | Premier Kings of Georgia, Inc. | 154 S. Main St. | Baxley | GA | 31513 |
| 14209 | Premier Kings of Georgia, Inc. | 201 Museum St | Hilton Head Island | SC | 29926 |
| 14614 | Premier Kings of Georgia, Inc. | 602 Fair Road | Statesboro | GA | 30458 |
| 15760 | Premier Kings of Georgia, Inc. | 4268 Ogeechee Road | Savannah | GA | 31405 |
| 23049 | Premier Kings of Georgia, Inc. | 496 Jimmy DeLoach Parkway | Savannah | GA | 31407 |
| 23155 | Premier Kings of Georgia, Inc. | 3 Baylor Brook Dr | Okatie | SC | 29909 |
| 24560 | Premier Kings of Georgia, Inc. | 5918 Ogeehee Road | Savannah | GA | 31419 |
| 25882 | Premier Kings of Georgia, Inc. | 106 N Duval St | Claxton | GA | 30417 |
| 25937 | Premier Kings of Georgia, Inc. | 4660 Hwy 17 | Richmond Hill | GA | 31324 |
| 26749 | Premier Kings of Georgia, Inc. | 13708 East Oglethorpe Hwy | Midway | GA | 31320 |
| 26868 | Premier Kings of Georgia, Inc. | 7306 Hwy 21 | Port Wentworth | GA | 31407 |
| 27690 | Premier Kings of Georgia, Inc. | 13200 W Cleveland Street | Nahunta | GA | 31553 |

**EXHIBIT C**

**CURE NOTICE**

65533/0001-46246868v7

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | (Chapter 11) |
| PREMIER KINGS, INC., *et al.*,[14] | Case No. 23-02871 (TOM11) |
| Debtors. | Joint Administration Requested |
| | **Deadline for Objections to Assumption and Assignment: December 6, 2023.** **Sale Hearing: December [**], 2023.** |

### NOTICE OF POSSIBLE ASSUMPTION AND
### ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
### AND UNEXPIRED LEASES IN CONNECTION WITH SALE

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY BE A COUNTERPARTY TO A CONTRACT OR LEASE WITH THE PREMIER KINGS, INC., PREMIER KINGS OF GEORGIA, INC., OR PREMIER KINGS OF NORTH ALABAMA, LLC, THE DEBTORS AND DEBTORS-IN-POSSESSION IN THE ABOVE-CAPTION CHAPTER 11 CASES. PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN.**

 **PLEASE TAKE NOTICE** that on October 26, 2023, Premier Kings, Inc. and its debtor affiliates, the debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Debtors"), by its undersigned counsel, filed the *Motion of the Debtors and Debtors-in-Possession for Entry of an Order (I) Approving Asset Purchase Agreements and Authorizing the Sale of All or Substantially All of the Debtors' Assets under 11 U.S.C. §§ 363(b) and 363(m); (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363(f); (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365; and (IV) Granting Related Relief* (the "Sale Motion").[15]

---

[14] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers, are: Premier Kings, Inc. (3932); Premier Kings of Georgia, Inc. (9797); and Premier Kings of North Alabama, LLC (9282). The Debtors' address is 7078 Peachtree Industrial Blvd., Suite #800, Peachtree Corners, GA 30071. The Debtors have filed a motion for joint administration with the Court.

[15] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures Motion (defined below).

65533/0001-46246868v7

By the Motion, the Debtors seek, among other things, an order authorizing the sale of substantially all their assets (the "Purchased Assets," as further defined in the Stalking Horse Agreements or Bidder Purchase Agreements, as applicable), as a going concern, to the Stalking Horse Bidders, as further designated in each Stalking Horse Agreement—or, alternatively, to any Successful Bidder designated following an Auction, as described below, on the terms contained in each applicable Bidder Purchase Agreement—free and clear of all liens, claims, encumbrances, and interests, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code (the "Sale").

**PLEASE TAKE FURTHER NOTICE** that, concurrently with the Sale Motion, on October 26, 2023, the Debtors, by their undersigned counsel, filed the *Motion of the Debtors and Debtors-in-Possession for Entry of an Order (I) Approving Bidding Procedures for the Sale of All or Substantially All the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving Bid Protections for Stalking Horse Bidders; (III) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (IV) Scheduling an Auction for, and Hearing to Approve, the Sale of All or Substantially All the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (V) Granting Related Relief* (the "Bidding Procedures Motion"). The Debtors have filed copies of the Stalking Horse Agreements with the Court under notice (the "Stalking Horse Notices"). The Bankruptcy Court entered an order on [**********] [**], 2023 granting the Bidding Procedures Motion and setting dates for the Auction (as defined below) and other key deadlines for the Sale [Doc. No. ***] (the "Bidding Procedures Order"). All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures, as well as the Stalking Horse Notices. To the extent that there are any inconsistencies between the Bidding Procedures Order and the summary description of its terms and conditions contained in this Notice, the terms of the Bidding Procedures Order shall control.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, if at least one Qualified Bid is duly submitted before the Bid Deadline, an auction to sell the Purchased Assets will be conducted on December 4, 2023, at 10:00 a.m. (Central Time) (the "Auction")[16] at the offices of Holland & Knight, LLP, located at 1901 Sixth Avenue North, Suite 1400, Birmingham, Alabama 35203. Only those who submit a Qualified Bid to the Notice Parties on or before the Bid Deadline may participate in the Auction.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, if an Auction is conducted, the Debtors are authorized to designate the highest or otherwise best Bid(s) and the Successful Bidder(s) and the second highest or otherwise best Bid(s) and the Back-Up Bidder(s). If Successful Bidder(s) or Back-Up Bidder(s) are designated, the Debtors will file with the Court, within two (2) business days of the selection, a notice of the identity of any Successful Bidder(s) and Back-Up Bidder(s) and the amount(s) of their Bid(s).

**PLEASE TAKE FURTHER NOTICE** that, on [**********] [**], 2023 at [**:**] (Central time), the Bankruptcy Court will conduct a hearing to approve the Sale (the "Sale Hearing"). The Sale Hearing will take place before the Honorable Tamara O. Mitchell United

---

[16] The Bidding Procedures Order authorize the Debtors to modify certain deadlines set forth therein and to adjourn the Auction.

65533/0001-46246868v7

States Bankruptcy Judge, United States Bankruptcy Court for the Northern District of Alabama, Southern Division, at the Robert S. Vance Federal Building, 1800 Fifth Avenue North, Birmingham, Alabama 35203, in Courtroom [***], or such other location as the Bankruptcy Court may determine.

**PLEASE TAKE FURTHER NOTICE** that, to facilitate the Sale, the Debtors are seeking to assume and assign to the Stalking Horse Bidder(s) or Successful Bidder(s), as applicable, the Proposed Assumed Leases (as defined and designated in the Stalking Horse Agreement(s) or Bidder Purchase Agreement(s), as applicable, and attached thereto as Schedule 1). A list of the Proposed Assumed Leases, including the amounts the Debtors believe are necessary to be paid to each counterparty (the "Counterparties" and, each, a "Counterparty") to cure any applicable payment arrearages (the "Cure Amount(s)"), if any, is attached hereto as **Schedule 1**. If the Court grants the Motion and approves the Sale, each Counterparty's contract or lease, including any amendments or subordination, non-disturbance, and attornment agreements, may be assumed and assigned to the applicable Stalking Horse Bidder or Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that objections to the Cure Amount ("Cure Amount Objections") or to the assumption or assignment of a Proposed Assumed Leases (an "Assumption Objection") must be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Alabama, Southern Division, Robert S. Vance Federal Building, 1800 Fifth Avenue North, Birmingham, AL 35203 or electronically via the Court's CM/ECF system and served so as to actually be received by the following parties, at or before **4:00 p.m. (Central Time) on December 6, 2023**.

    (a)    Undersigned Counsel for the Debtors;

    (b)    The Prepetition Agent, c/o counsel for the Prepetition Agent, Jeffrey R. Dutson, Esq., 1180 Peachtree Street, NE Suite 1600, Atlanta, GA 30309, jdutson@kslaw.com;;

    (c)    Counsel for the Unsecured Creditors' Committee, [**********]; and

    (d)    Counsel for the Stalking Horse Bidder or Bidders to whom the objection pertains.

Subject to the Bidding Procedures Order, any unresolved objections, based on any grounds, shall be heard at the Sale Hearing unless otherwise agreed by the parties.

**PLEASE TAKE FURTHER NOTICE** that, at the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to the Stalking Horse Bidder(s) or Successful Bidder(s), as applicable, of only those Proposed Assumed Leases that have actually been selected by the Stalking Horse Bidder(s) or Successful Bidder(s), as applicable, to be assumed and assigned. The Debtors and their estates reserve any and all rights with respect to any Proposed Assumed Leases that are not ultimately designated for assumption and/or assignment.

**PLEASE TAKE FURTHER NOTICE** that nothing contained in this Notice shall constitute a waiver of any rights of the Debtors or their estates or an admission with respect to the

Debtors' chapter 11 cases, including, but not limited to, any issues involving objections to claims, setoff or recoupment, equitable subordination or recharacterization of debt, defenses, characterization or re-characterization of contracts, leases and claims, assumption or rejection of contracts and leases and/or causes of action arising under the Bankruptcy Code or any other applicable laws. The Debtors reserve all rights to amend this notice, including but not limited to any Cure Amount or the Proposed Assumed Leases set forth on <u>Schedule 1</u> hereto.

> **Unless a non-Debtor party to any executory contract or unexpired lease files a Cure Amount Objection by the Cure Amount and Assumption Objection Deadline, then the Cure Amount set forth in the Cure Notice shall be binding upon the Counterparty to such agreement for all purposes and will constitute a final determination of the Cure Amount required to be paid in connection with the assumption and assignment of such agreement. In addition, all Counterparties to the Proposed Assumed Leases who fail to file an objection will (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Proposed Assumed Leases, and the Debtors, a Stalking Horse Bidder, or a Successful Bidder (as applicable) shall be entitled to rely solely upon the Cure Amount set forth in this Cure Notice, and (b) be forever barred and estopped from asserting or claiming against the Debtors, a Stalking Horse Bidder, or a Successful Bidder (as applicable), or any other assignee of the Proposed Assumed Leased, that any additional amounts are due or that defaults exist, or conditions to assumption and assignment must be satisfied with respect to such Proposed Assumed Leases.**

The Debtors encourage interested parties to review the Sale Motion, Bidding Procedures Motion, Stalking Horse Notices, and Bidding Procedures Order in their entireties. Parties interested in receiving more information regarding the Sale or copies of related documents may make a written request to undersigned counsel. In addition, copies of the Sale Motion, the Bidding Procedures Order, and the Proposed Sale Order can be found through PACER, at https://ecf.alnb.uscourts.gov (registration required), and are on file with the Clerk of the Bankruptcy Court, Robert S. Vance Federal Building, 1800 Fifth Avenue North, Birmingham, AL 35203.

*[Remainder of page intentionally left blank]*

Dated: [\*\*\*\*\*\*\*\*\*\*] [\*\*], 2023
Birmingham, Alabama

/s/ _____
Jesse S. Vogtle, Jr.
Eric T. Ray
HOLLAND & KNIGHT LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, Alabama 35203
Telephone: (205) 226-5700
Facsimile: (205) 214-8787
jesse.vogtle@hklaw.com
etray@hklaw.com


*-and-*

COLE  SCHOTZ P.C.

Gary H. Leibowitz*
Irving E. Walker*
H.C. Jones III*
J. Michael Pardoe*
COLE SCHOTZ PC
1201 Wills Street, Suite 320
Baltimore, MD 21231
(410) 230-0660
(410) 230-0667
gleibowitz@coleschotz.com
iwalker@coleschotz.com
hjones@coleschotz.com
mpardoe@coleschotz.com

*Proposed Attorneys for the Debtors and Debtors-in-Possession*

*Admitted *pro hac vice*

65533/0001-46246868v7

**SCHEDULE 1**
**TO CURE NOTICE**

**PROPOSED ASSUMED LEASES**

65533/0001-46246868v7

# EXHIBIT D

## SALE NOTICE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| In re: | (Chapter 11) |
| PREMIER KINGS, INC., *et al.*,[17] | Case No. 23-02871 (TOM11) |
| Debtors. | Joint Administration Requested |
| | **Deadline for Objections:  December 6, 2023.**<br>**Sale Hearing:  December [\*\*], 2023.** |

**NOTICE OF HEARING ON APPROVAL OF (I) SALE OF ALL OR SUBSTANTIALLY
ALL THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS, AND (II) ASSUMPTION AND ASSIGNMENT
OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

> **PLEASE TAKE NOTICE** that on October 26, 2023, the debtor and debtor-in-possession in the above-captioned chapter 11 cases (the "Debtors"), by their undersigned counsel, filed the *Motion of the Debtors and Debtors-in-Possession for Entry of an Order (I) Approving Asset Purchase Agreements and Authorizing the Sale of All or Substantially All of the Debtors' Assets under 11 U.S.C. §§ 363(b) and 363(m); (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363(f); (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365; and (IV) Granting Related Relief* (the "Sale Motion").[18]

> By the Motion, the Debtors seek, among other things, an order authorizing the sale of substantially all their assets (the "Purchased Assets," as further defined in the Stalking Horse Agreements or Bidder Purchase Agreements, as applicable), as a going concern, to the Stalking Horse Bidders, as further designated in each Stalking Horse Agreement—or, alternatively, to any Successful Bidders designated following an Auction, as described below, on the terms contained in each applicable Bidder Purchase Agreement—free and clear of all liens, claims, encumbrances, and interests, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code (the "Sale").

> **PLEASE TAKE FURTHER NOTICE** that, concurrently with the Sale Motion, on October 26, 2023, the Debtor, by its undersigned counsel, filed the *Motion of the Debtors and*

---

[17] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers, are:  Premier Kings, Inc. (3932); Premier Kings of Georgia, Inc. (9797); and Premier Kings of North Alabama, LLC (9282). The Debtors' address is 7078 Peachtree Industrial Blvd., Suite #800, Peachtree Corners, GA 30071.  The Debtors have filed a motion for joint administration with the Court.

[18] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion or the Bidding Procedures Motion (defined below).

65533/0001-46246868v7

*Debtors-in-Possession for Entry of an Order (I) Approving Bidding Procedures for the Sale of All or Substantially All the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving Bid Protections for Stalking Horse Bidders; (III) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (IV) Scheduling an Auction for, and Hearing to Approve, the Sale of All or Substantially All the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (V) Granting Related Relief* (the "Bidding Procedures Motion"). The Debtors have filed copies of the Stalking Horse Agreements with the Court under notice (the "Stalking Horse Notices"). The Bankruptcy Court entered an order on [*********] [**], 2023 granting the Bidding Procedures Motion and setting dates for the Auction (as defined below) and other key deadlines for the Sale [Doc. No. ***] (the "Bidding Procedures Order"). All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures, as well as the Stalking Horse Notices. To the extent that there are any inconsistencies between the Bidding Procedures Order and the summary description of its terms and conditions contained in this Notice, the terms of the Bidding Procedures Order shall control.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, if at least one Qualified Bid is duly submitted before the Bid Deadline, an auction to sell the Purchased Assets will be conducted on December 4, 2023, at 10:00 a.m. (Central Time) (the "Auction")[19] at the offices of Holland & Knight, LLP, located at 1901 Sixth Avenue North, Suite 1400, Birmingham, Alabama 35203. Only those who submit a Qualified Bid to the Notice Parties on or before the Bid Deadline may participate in the Auction.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, if an Auction is conducted, the Debtors are authorized to designate the highest or otherwise best Bid(s) and the Successful Bidder(s) and the second highest or otherwise best Bid(s) and the Back-Up Bidder(s). If Successful Bidder(s) or Back-Up Bidder(s) are designated, the Debtors will file with the Court, within two (2) business days of the selection, a notice of the identity of any Successful Bidder(s) and Back-Up Bidder(s) and the amount(s) of their Bid(s).

**PLEASE TAKE FURTHER NOTICE** that, on [*********] [**], 2023 at [**:**] (Central time), the Bankruptcy Court will conduct a hearing to approve the Sale (the "Sale Hearing"). The Sale Hearing will take place before the Honorable Tamara O. Mitchell United States Bankruptcy Judge, United States Bankruptcy Court for the Northern District of Alabama, Southern Division, at the Robert S. Vance Federal Building, 1800 Fifth Avenue North, Birmingham, Alabama 35203, in Courtroom [***], or such other location as the Bankruptcy Court may determine.

**PLEASE TAKE FURTHER NOTICE** that objections to the Sale or relief requested in connection with the Sale (a "Sale Objection") must (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedures; (c) set forth the specific basis for the Sale Objection; and (d) be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Alabama, Southern Division, Robert S. Vance Federal Building, 1800 Fifth Avenue North, Birmingham, AL

---

[19] The Bidding Procedures Order authorizes the Debtor to modify certain deadlines set forth therein and to adjourn the Auction.

35203 or electronically via the Court's CM/ECF system and served so as to actually be received by the following parties, at or before **4:00 p.m. (Central Time) on December 6, 2023**.

(a) Undersigned Counsel for the Debtors;

(b) The Prepetition Agent, c/o counsel for the Prepetition Agent, Jeffrey R. Dutson, Esq., 1180 Peachtree Street, NE Suite 1600, Atlanta, GA 30309, jdutson@kslaw.com;

(c) Counsel for the Unsecured Creditors' Committee, [**********]; and

(d) Counsel for the Stalking Horse Bidder or Bidders to whom the Sale Objection pertains.

**IF NO SALE OBJECTION IS PROPERLY FILED AND SERVED BEFORE THE DEADLINE, THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER PERMITTING THE SALE OF THE PURCHASED ASSETS WITHOUT FURTHER NOTICE.**

The Debtors encourage interested parties to review the Sale Motion, Bidding Procedures Motion, Stalking Horse Notices, and Bidding Procedures Order in their entireties. Parties interested in receiving more information regarding the Sale or copies of related documents may make a written request to undersigned counsel. In addition, copies of the Sale Motion, Bidding Procedures Motion, Bidding Procedures Order, and the Proposed Sale Order can be found through PACER, at https://ecf.alnb.uscourts.gov (registration required), and are on file with the Clerk of the Bankruptcy Court, 1800 Fifth Avenue North, Birmingham, AL 35203.

*[Remainder of page intentionally left blank]*

Dated: [**********] [**], 2023
Birmingham, Alabama

/s/ _____

Jesse S. Vogtle, Jr.
Eric T. Ray
HOLLAND & KNIGHT LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, Alabama 35203
Telephone: (205) 226-5700
Facsimile: (205) 214-8787
jesse.vogtle@hklaw.com
etray@hklaw.com

-and-

COLE SCHOTZ P.C.

Gary H. Leibowitz*
Irving E. Walker*
H.C. Jones III*
J. Michael Pardoe*
COLE SCHOTZ PC
1201 Wills Street, Suite 320
Baltimore, MD 21231
(410) 230-0660
(410) 230-0667
gleibowitz@coleschotz.com
iwalker@coleschotz.com
hjones@coleschotz.com
mpardoe@coleschotz.com

*Proposed Attorneys for the Debtors and Debtors-in-Possession*

*Admitted* pro hac vice