## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | (Chapter 11) |
| PREMIER KINGS, INC., *et al.*,[1] | Case No. 23-02871 (TOM11) |
| Debtors. | Joint Administration Requested |

## MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION FOR ENTRY OF AN ORDER (I) APPOVING ASSET PURCHASE AGREEMENTS AND AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS UNDER 11 U.S.C. §§ 363(B) AND 363(M); (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. § 363(F); (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365; AND (IV) GRANTING RELATED RELIEF

Premier Kings, Inc., and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (each, a "Debtor" and, collectively, the "Debtors"), by their undersigned proposed counsel, pursuant to sections 105(a), 363, and 365 of Title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*) (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 914 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby move the Court (the "Sale Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Sale Order"):[2]

    (i)    Authorizing and approving the Sale, pursuant to section 363(b)(1) of the Bankruptcy Code, to (a) the Stalking Horse Bidders, (b) the Successful Bidder(s),

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers, are: Premier Kings, Inc. (3932); Premier Kings of Georgia, Inc. (9797); and Premier Kings of North Alabama, LLC (9282). The Debtors' address is 7078 Peachtree Industrial Blvd., Suite #800, Peachtree Corners, GA 30071. The Debtors have filed a motion for joint administration with the Court.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion.

65533/0001-46356789v2

should the Auction proceed and one or more Qualified Bidders other than a Stalking Horse Bidder be deemed the Successful Bidder(s); or (c) the Back-Up Bidder(s), in the event that any Successful Bidder fails to close on the Sale within the time required by the operative Bidder Purchase Agreement;

(ii)     Authorizing the Sale of the Purchased Assets free and clear of all liens, claims, encumbrances, and interests under section 363(f) of the Bankruptcy Code;

(iii)    Authorizing the assumption and assignment of the Proposed Assumed Leases in connection with the Sale under section 365 of the Bankruptcy Code;

(iv)    Authorizing the Debtors to disburse certain proceeds from the Sale following Closing as set forth herein;

(v)     Waiving the fourteen-day stay period imposed under Bankruptcy Rule 6004(h) in connection with the relief requested herein; and

(vi)    Granting such other and further relief as is just and proper.

In support of this Sale Motion, the Debtors rely upon and hereby incorporate by reference the *Declaration of David M. Baker in Support of First-Day Motions* (the "Baker Declaration"), filed contemporaneously herewith. In further support of this Sale Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Contemporaneously with this Sale Motion, the Debtors filed the Motion of the Debtors and Debtors-in-Possession for Entry of an Order (I) Approving Bidding Procedures for the Sale of All or Substantially All the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving Bid Protections for Stalking Horse Bidders; (III) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (IV) Scheduling an Auction for, and Hearing to Approve, the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (V) Approving the Form and Manner of Sale Notice; and (VI) Granting Related Relief (the "Bidding

Procedures Motion"), seeking approval of certain bidding and sale procedures (the "Bidding Procedures") in regard to the auction (the "Auction") and sale of substantially all of the Debtors' assets, approval of certain bid protections (the "Bid Protections") for the Stalking Horse Bidders, approval of certain procedures for assumption and assignment of the Assumed Contracts, approval of the form and manner of notice for the Sale of the Purchased Assets, and asking the Court to set a date for the Auction and a date for the Sale Hearing to consider the proposed Sale.

2.     By this Sale Motion, the Debtors seek approval of the sale (the "Sale") of substantially all of the Debtors' assets, free and clear of all liens, claims, encumbrances, and interests, in one or more transactions to the Stalking Horse Bidders(s) and/or any Successful Bidder(s) designed following the Auction, as the case may be.  The Debtors believe, in their business judgment, that the proposed Sale represents the best strategy for maximizing the value of the Debtors' assets for the benefit of all stakeholders.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409 and Rule 1073-1(a) of the Local Rules of the United States Bankruptcy Court for the Northern District of Alabama (the "Local Rules").

5.     The statutory predicates for the relief sought herein are sections 105, 363, 365 and 1107 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014.

## RELEVANT BACKGROUND

6.     On October 25, 2023, (the "Petition Date"), the Debtors separately filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.

65533/0001-46356789v2

7. The Debtors continue to manage and operate their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8. No official committee of unsecured creditors has been appointed.

9. No request for a trustee or examiner has been made in this chapter 11 case.

10. Information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of this chapter 11 case is set forth in the Baker Declaration, which is incorporated herein by reference.

**I. Overview of the Debtors' Businesses.**

11. The individual Debtors are Premier Kings, Inc. ("PK Inc."), Premier Kings of Georgia, Inc. ("PKGA Inc."), Premier Kings of North Alabama, LLC ("PKAL LLC", and together with PK, Inc. and PKGA Inc., "PK"). PK was founded in 2009 by Manraj "Patrick" Sidhu ("Mr. Sidhu") for the purpose of owning and operating Burger King restaurants (each, a "Restaurant" or a "Store" and, together, the "Restaurants" or "Stores") as a franchisee pursuant to a franchise agreement with Burger King Corporate, Inc. ("BKCI"). Beginning with six (6) Restaurants in or around Birmingham, Alabama in early 2010, the Debtors later added 34 locations to the portfolio throughout Alabama, Georgia, and Tennessee over the course of 2014. The Debtors opened an eighth store in September of 2015 and expanded to 32 stores in Huntsville, Alabama and 22 in Birmingham, Alabama. PK continued to grow between 2015 and 2021, opening 115 additional locations in Tennessee, Florida, and South Carolina. The Debtors do not own any real property, but instead lease the premises where the Restaurants are located. Some of the lessors are affiliates of the Debtors.

12. As of the Petition Date, the Debtors operated 172 Restaurants with over 3,500 employees.

II.     **Events Leading to Chapter 11 Filing**.

13.     Unfortunately, Mr. Sidhu passed away unexpectedly on May 24, 2022, which triggered great operational instability for PK's existing Restaurants, as Mr. Sidhu was not only the sole stockholder or member, but also the sole manager.  Upon Mr. Sidhu's passing, Joginder Sidhu became the Personal Representative of Mr. Sidhu's estate (the "Estate Representative") and, as such, gained legal and operational control over the Debtors.  Mr. Sidhu's tragic loss, coupled with various macroeconomic factors, caused tremendous uncertainty and disruption within the business.  Those factors include, among others, the national impact of the COVID-19 pandemic on restaurant operations, high inflation, increased borrowing rates, and an increasingly limited qualified labor force.

14.     On June 2, 2022, the Estate Representative caused PK to retain Aurora Management Partners Inc. ("AMP") to provide certain financial and business advisory services, and AMP's Managing Partner, David M. Baker, was appointed as Chief Restructuring Officer ("CRO") for each of the Debtors on July 22, 2022.  Aurora and the CRO have been actively involved in evaluating the Debtor's liquidity, cash management system, financial forecasting, and contingency planning.  In consultation with its professionals, the Debtors made the difficult decision to close a number of Restaurants in an attempt to avoid further losses and to stabilize the business (another location was closed due to fire).  These cost-cutting measures, however, were not sufficient to correct or prevent the Debtors' insolvency.  Facing increased pressure from landlords, vendors, and its secured lenders, the Debtors had no choice but to seek relief in this Court pursuant to chapter 11 of the Bankruptcy Code.

65533/0001-46356789v2

## III.   Pre-Petition Marketing Efforts.[3]

15.   Following the death of Mr. Sidhu, and based on the performance of the Restaurants and the managerial and capital needs to operate, the Estate Representative determined in consultation with the CRO and various professionals that a sale of PK's assets was necessary to preserve the go-forward value of PK's businesses and to maximize the return to creditors.  PK retained Raymond James & Associates, Inc. ("Raymond James") as the investment banker to commence a pre-petition marketing process and to solicit interest for the purchase of the Debtors' assets (along with the Bidding Procedures, the "Sale Process").  Among other things, Raymond James familiarized itself with the Debtors' businesses and, along with AMP, assisted in developing a financial model and furnishing a virtual data room containing nearly 850 files for the review of potentially interested bidders (the "Potential Bidders").  Raymond James has engaged, and continues to engage, in a robust and sophisticated marketing campaign designed to maximize the value of the Debtors' estates and the return to creditors.

16.   To that end, Raymond James began soliciting interest by preparing and distributing a "teaser" document in June 2023, describing the history of the Debtors' businesses and key financial metrics (the "Teaser") to approximately 230 Potential Bidders, including approximately 160 "strategic" Potential Bidders, *i.e.*, competitors and those already engaged in a business similar or adjacent to the Debtors' business (the "Strategic Potential Bidders") and approximately 70 "financial" Potential Bidders, *i.e.*, private equity and other firms engaged in the business of buying companies in and out of distressed situations (the "Financial Potential Bidders").

---

[3] In connection with the pre-petition marketing process, the Debtors and their advisors were advised that BKCI would not consent to the sale that would result in any franchisee owning more than 50 Restaurant locations.  BKCI has therefore taken the position that the Debtors cannot sell all of their assets—and specifically all of their Store locations—to any single purchaser, regardless of whether such sale would maximize the value of the Debtors' assets and the return to creditors.

65533/0001-46356789v2

Raymond James further prepared a confidential information memorandum providing a detailed overview of the Debtors' financial records and certain projections designed to permit Potential Bidders to evaluate a potential sale (the "CIM"). Based on the regional division and tracking of Restaurant locations by BKC, Raymond James has marketed the Purchased Assets as a complete portfolio, or as any portion of six (6) regions, consisting of Atlanta, GA; North Alabama; Central Alabama; South Alabama; Savannah, GA; and Jacksonville, FL (each, and "Region" and, together, the "Regions").

17.     As of the Petition Date, a total of 44 Potential Bidders have signed non-disclosure agreements ("NDAs") and were thereafter provided a copy of the CIM. Concurrent with the review of the CIM, all 44 Potential Bidders, including 20 Strategic and 24 Financial Potential Bidders, were given access to the Data Room. Raymond James conducted detailed diligence calls with 33 Potential Bidders and, in late September 2023, received 8 letters of intent for subsets of the Debtors' store base. Also in late September and through the Petition Date, Raymond James provided the Debtors' form asset purchase agreement to 7 Potential Bidders to review and revise in connection with submitting a Bid for the Purchased Assets.

18.     Following these extensive marketing efforts, the Debtors reached agreement with two of the Potential Bidders for the purchase of certain subsets of the Debtors' assets.

## IV.     The Stalking Horse Agreements.

19.     The Debtors consulted with their professionals on the Bids received and, after extensive arms' length negotiations, entered into two separate Stalking Horse Agreements (as defined in the Bidding Procedures Motion) for the purchase of a total of 75 Stores for initial purchase prices totaling $34,025,000.00 plus the value of inventories at closings, as more thoroughly described in each of the Stalking Horse Agreements. A description of the material

65533/0001-46356789v2

terms of the Stalking Horse Agreements are appended to the Bidding Procedures Motion as Exhibit B, and complete copies of those Stalking Horse Agreements will be filed under notice with the Court.

20.    Each of the Stalking Horse Agreements is subject to higher and better bids that may be submitted at or in advance of the Auction, as set forth in the Bidding Procedures.

## V.    The Sale Hearing.

21.    At the Sale Hearing, the Debtors will seek approval of (i) the Sale of the Purchased Assets to (a) the Stalking Horse Bidders, (b) the Successful Bidder(s), or (c) the Back-Up Bidder(s), as the case may be following the Auction, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code (except as otherwise provided in the applicable Stalking Horse Agreement(s) or Bidder Purchase Agreement(s)), with all liens, claims, encumbrances, and other interests to attach to the net proceeds of the Sale with the same validity and in the same order of priority as they attached to the Purchased Assets prior to the Sale, and (ii) the assumption by the Debtors and assignment to (a) the Stalking Horse Bidders, (b) the Successful Bidder(s), or (c) the Back-Up Bidder(s), as the case may be following the Auction, of the Proposed Assumed Leases pursuant to section 365 of the Bankruptcy Code.

22.    The Debtors will submit and present additional evidence, as necessary, at the Sale Hearing demonstrating that the Sale is fair, reasonable, and in the best interest of the Debtors and their estates and creditors.

65533/0001-46356789v2

## BASIS FOR RELIEF REQUESTED

**I.    The Proposed Sale Is in the Best Interests of the Debtors and their Estates and Creditors and Is a Valid Exercise of the Debtors' Business Judgment.**

23.    Under section 363(b) of the Bankruptcy Code, a debtor-in-possession, given the powers of a trustee pursuant to section 1107(a) of the Bankruptcy Code, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of a debtor's estate, courts have approved the authorization of a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See, e.g., In re Allen*, 607 Fed. Appx. 840, 843 (10th Cir. 2015); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996). Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (i) whether a sound business purpose exists for the sale, (ii) whether the sale price is fair, (iii) whether adequate and reasonable notice of the sale was provided, and (iv) whether the purchaser has acted in good faith. *See In re Decora Indus., Inc.*, 2002 WL 32332749, at *2 (D. Del. May 20, 2002).

24.    The proposed sale of the Purchased Assets, subject to higher and better offers at the Auction, satisfies all four of the above-described criteria. First, the Debtors believe that the possibility of an Auction provides the estates, creditors, and other stakeholders with the best opportunity for maximizing the value of the Purchased Assets. The Debtors have examined the alternatives to the Sale of the Purchased Assets and have determined that a more viable alternative does not exist. The Debtors' sole manager and operator is now deceased, and even if an injection of capital were plausible (it is not), the Estate cannot indefinitely continue to oversee

the Debtors' businesses. A Sale therefore clearly is the best option to achieve the best outcome for creditors and other parties in interest, and is supported by a sound business purpose.

25.     Additionally, Raymond James conducted a sophisticated and targeted marketing campaign designed to elicit the best possible offers from entities and individuals reasonably capable of and interested in purchasing the Purchased Assets, as described above. These robust marketing efforts and the Sale Process as a whole helped to cause active competition in the marketplace and to generate the highest possible sale prices, and therefore the greatest chance at maximizing value to the estate and creditors.

26.     The notice of this Sale Motion was provided to (a) all entities known to have expressed an interest in a transaction with respect to some or all of the Purchased Assets; (b) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Purchased Assets; (c) the Internal Revenue Service and all state and local taxing authorities in the states in which the Debtors have or may have any tax liability; (d) counsel to the Lender Group; (e) counsel to the Creditors' Committee, if appointed; (f) the Office of the Bankruptcy Administrator for the Northern District of Alabama; and (g) those parties who have filed the appropriate notice requesting notice of all pleadings filed in these chapter 11 cases. The Debtors will also serve this Sale Motion by first-class mail, postage prepaid or by email where available, upon all known creditors of the Debtor not included above. In addition, notice of the proposed assumption and assignment of the Proposed Assumed Leases was provided to contract counterparties to such executory contracts and unexpired leases. Accordingly, the Debtors submit that adequate and reasonable notice was provided.

27.     As set forth more fully below, the Debtors submit that the Sale, on the terms set forth in the Stalking Horse Agreements and/or Bidder Purchase Agreements, as the case may be,

was a heavily negotiated, arms-length transaction between sophisticated parties, in which the Stalking Horse Bidders and/or Successful Bidders acted in good faith.

28. Based on the foregoing, the Sale of the Purchased Assets is supported by a sound business purpose and is in the best interests of the Debtors, their estates and creditors, and other stakeholders. Accordingly, the Debtors request approval under section 363(b) of the Bankruptcy Code of the Sale as set forth herein and under the terms of the Stalking Horse Agreements and/or Bidder Purchase Agreements.

## II. The Proposed Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code for a Sale Free and Clear of Liens, Claims and Encumbrances.

29. As set forth in the Stalking Horse Agreements, or Bidder Purchase Agreements, as the case may be, and the proposed Sale Order, the Sale contemplates a transfer of the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests, except as may otherwise be set forth in the applicable Stalking Horse Agreements and/or Bidder Purchase Agreements.

30. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

65533/0001-46356789v2

11 U.S.C. § 363(f).

31.     Section 363(f) of the Bankruptcy Code is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and other interests, except with respect to any Permitted Encumbrances set forth in the Bidder Purchase Agreements.  *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988).

32.     Here, only the parties comprising the Lender Group assert a secured interest in the Debtors' assets.[4]  While the Debtors anticipate that each of the parties in the Lender Group will consent to the Sale under section 363(f)(2) of the Bankruptcy Code. Moreover, each of these entities' interests (if any), and to the extent not disputed by the Debtors, will attach to the sale proceeds, subject to any claims and defenses the Debtors may possess with respect thereto, in satisfaction of section 363(f)(5).  Thus, even if a lienholder withheld consent, all liens, claims, and encumbrances on the Purchased Assets will be adequately protected either by payment in full at the time of Closing or by attachment to the Sale proceeds pending resolution of any claims of the Debtors and other parties.

33.     The Debtors therefore request authority to convey the Purchased Assets to the Stalking Horse Bidders and/or the Successful Bidder(s), as the case may be, free and clear of all liens, claims, encumbrances and other interests, except as otherwise may be set forth in the Stalking Horse Agreements and/or Bidder Purchase Agreements, with such liens, claims, encumbrances, and other interests to attach to the Sale proceeds with the same validity, priority,

---

[4] There are certain liens on certain furnishings, fixtures, and equipment in the stores ("FF&E) to be sold which are held by creditors of Premier Holdings, LLC.  The Debtors maintain that the funds used to purchase the FF&E came from the Debtors.  Although the Debtors anticipate having agreements in place prior to closings of sales to resolve these lien issues, any such issues not resolved by then may be fully addressed pursuant to Section 363(f) to ensure the successful completion of the proposed sales.

65533/0001-46356789v2

and perfection as existed immediately prior to the Sale, subject to the terms of the Bidder Purchase Agreements and the Sale Order.

34.     Accordingly, the Debtors submit that the Court should approve the Sale of the Purchased Assets to the Stalking Horse Bidders or the Successful Bidder(s), as the case may be, free and clear of liens, claims, encumbrances and other interests under section 363(f) of the Bankruptcy Code, and any potential claimants should be compelled to look exclusively to the proceeds of the Sale for satisfaction of their claims.

**III.     Good Faith Under Section 363(m) of the Bankruptcy Code; Sale Not in Violation of Section 363(n) of the Bankruptcy Code.**

35.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

36.     Section 363(n) of the Bankruptcy Code, among other things, provides, in turn, that a trustee may avoid a sale under such section if the sale price was controlled by an agreement among potential bidders at the sale.  11 U.S.C. § 363(n).  Although the Bankruptcy Code does not define "good faith," the Third Circuit held that:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

65533/0001-46356789v2

*In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (internal quotation marks omitted).

37.     The Bidding Procedures were prepared without the input of any Potential Bidder or prospective buyer of the Debtors' assets, and the Stalking Horse Agreements were likewise negotiated at arms' length between sophisticated parties represented by counsel. As such, each of the Stalking Horse Bidders entered into the Stalking Horse Agreements and, if applicable, will close on the Sale in good faith. Additionally, the Bidding Procedures expressly require that each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that it has not engaged in any collusion with respect to the bidding, its Qualified Bid is a good-faith, bona fide offer, and it intends to consummate the proposed transaction if selected and approved as a Successful Bidder. The Bidding Procedures and the Auction format for the Sale thus ensure that the Debtors and any Potential Bidder will have acted in good faith, without collusion or fraud of any kind and in compliance with the *Abbotts Dairies* standards. Neither the Debtors nor any Potential Bidder or prospective buyer of the Debtors' assets (to the best of the Debtors' knowledge) has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or otherwise implicate section 363(n) of the Bankruptcy Code with respect to the consummation of the Sale or the transfer of the Purchased Assets to the Successful Bidder or Successful Bidders.

38.     The Debtors thus request that the Court find that the Stalking Horse Bidders and/or Successful Bidders, as the case may be, will purchase the Purchased Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code and are entitled to the protections of sections 363(m) and (n) of the Bankruptcy Code.

14

## IV. The Proposed Assumption and Assignment of the Assumed Contracts Meet the Requirements for Approval under Section 365 of the Bankruptcy Code.

39.     An essential element of the proposed Sale of the Purchased Assets to the Stalking Horse Bidders or the Successful Bidder(s) is the Debtors' assumption of the Proposed Assumed Leases and assignment thereof to the Stalking Horse Bidders and/or Successful Bidders, as the case may be.

40.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  The Proposed Assumed Leases are each an executory contract within the meaning of section 365 of the Bankruptcy Code.

41.     Section 365(f) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> (A)     the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)     adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).  Under section 365(a) of the Bankruptcy Code, a trustee "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)     cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;

15

(B)     compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C)     provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

42.     Although section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor's decision to assume an executory contract, courts have consistently applied a "business judgment" test when reviewing such a decision.  *See Nat'l Labor Relations Bd. v. Bildisco and Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) (stating that "[t]he usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test.").  A debtor satisfies the "business judgment" test when it determines, in good faith, that assumption of an executory contract will benefit the estate and is not the product of "bad faith, whim or caprice."  *Lubrizon Enters. v. Richmond Metal Finishes*, 756 F.2d 1043, 1047 (4th Cir. 1980); *In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D.N.Y. 1986).

43.     Here, the assumption and assignment of the Proposed Assumed Leases are a necessary and essential part of the terms of the Sale of the Purchased Assets to the Stalking Horse Bidders and/or Successful Bidders.  The Bidding Procedures Motion sets forth certain procedures for assumption and assignment of the Proposed Assumed Leases, including the determination of amounts necessary to cure any arrearages thereunder and approving the form and manner of notice of assumption and assignment.  Notably, the Debtors' assumption and assignment of a Proposed Assumed Lease is subject to consummation of one or more transactions and Court approval.  Absent consummation of the respective transactions and entry of an order approving

16

the assumption and assignment, the Proposed Assumed Leases shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption and assignment or rejection by the Debtors.

44. Because the transactions are contingent upon assumption and assignment of certain Proposed Assumed Leases, the Debtors intend to request such relief under section 365 of the Bankruptcy Code at the Sale Hearing and present any necessary evidence in support thereof.

## V. The Court Should Authorize Payment of the Purchase Price at Closing with Net Proceeds to be Retained by the Debtors Pending Further Order of the Court.

45. After Closing of the Sale of all or any portion of the Purchased Assets, the "Net Proceeds" (as defined below) of the Sale shall be held by the Debtors and shall not be distributed absent further order by the Court.

    (a)   "Net Proceeds" shall mean the Purchase Price less: (i) all closing costs as set forth on a settlement statement; (ii) Cure Costs; (iii) if there is a timely objection by a counterparty to a Proposed Assumed Lease related to the Cure Costs, cash reserves equal to the undisputed portion of the applicable Cure Costs ("Disputed Cure Costs"); and (iv) payment of accrued and allowed administrative expenses (which shall include unpaid professionals of the Debtors and the Committee and unpaid U.S. Trustee fees, including any U.S. Trustee fees that may be incurred as a result of distributions from the Sale proceeds), to the extent not already paid and with respect to professional fees, subject to approval by the Court. The Debtors ask to be authorized to make the above payments immediately from the Purchase Price.

65533/0001-46356789v2

(b)     Within fourteen days of the documented resolution of any Disputed Cure Costs, the Debtors shall hold and account for the difference, if any, between the Disputed Cure Costs and the amount payable to the counterparty to the Assumed Contract.

## **RESERVATION OF RIGHTS**

46.     The Debtors expressly reserve the right to amend, modify, and/or supplement the relief requested in this Sale Motion in all respects, including but not limited to, the Stalking Horse Agreements and/or Bidder Purchase Agreements and proposed Sale Order, prior to or at the Sale Hearing, and reserve the right to withdraw this Sale Motion, in whole or in part, prior to or at the Sale Hearing.

## **NOTICE**

47.     The Debtors will provide notice of this Motion to: (a) all known creditors of the Debtors, (b) all equity holders of the Debtors, (c) all entities known to have expressed an interest in a transaction with respect to some or all of the Purchased Assets; (d) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Assets; (e) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the furniture, fixtures and equipment located in the Stores; (f) the Internal Revenue Service and all state and local taxing authorities in the states in which the Debtors have or may have any tax liability; (g) the Securities and Exchange Commission; (h) counsel to the Lender Group; (i) counsel to BKCI; (j) counsel to the Creditors' Committee, if appointed; (k) the Office of the Bankruptcy Administrator for the Northern District of Alabama; and (l) those parties who have filed the appropriate notice requesting notice of all pleadings filed in these chapter 11 cases.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## WAIVER OF BANKRUPTCY RULES 6004 AND 6006

48.     The Debtors request that the Court (i) find that the notice of this Sale Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and (ii) waive the fourteen-day stay requirements under Bankruptcy Rules 6004(h) and 6006(d).  As described above, the Debtors need the flexibility to close the Sale promptly after all closing conditions have been satisfied or waived.  To require the Debtors to effectively be liable under the Assumed Contracts for an extra fourteen days and to delay the closing and resulting pay down of the Debtors' secured obligations will burden the estate and require unnecessary expenditure of the Debtors' resources. Accordingly, given the lack of prejudice to any party, the Debtors respectfully request that the Sale Order and any order authorizing the assumption and assignment of a Proposed Assumed Lease in connection with the Sale be effective immediately upon entry and that the fourteen-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) be waived.

**WHEREFORE**, the Debtors respectfully request that the Court grant this Sale Motion by entering the proposed Sale Order, substantially in the form attached hereto as **Exhibit A**:  (i) Authorizing and approving the Sale, pursuant to section 363(b)(1) of the Bankruptcy Code, to (a) the Stalking Horse Bidders, (b) the Successful Bidder(s), should the Auction proceed and one or more Qualified Bidders other than a Stalking Horse Bidder be deemed the Successful Bidder(s); or (c) the Back-Up Bidder(s), in the event that any Successful Bidder fails to close on the Sale within the time required by the operative Bidder Purchase Agreement; (ii) Authorizing the Sale of the Purchased Assets free and clear of all liens, claims, encumbrances, and interests under section 363(f) of the Bankruptcy Code; (iii) Authorizing the assumption and assignment of the Proposed Assumed Leases in connection with the Sale under section 365 of the Bankruptcy Code; (iv) Authorizing the Debtors to disburse certain proceeds from the Sale following Closing as set forth

herein; (v) Waiving the fourteen-day stay period imposed under Bankruptcy Rule 6004(h) in connection with the relief requested herein; and (vi) Granting such other and further relief as is just and proper.

Dated: October 26, 2023
Birmingham, Alabama

/s/ Jesse S. Vogtle, Jr.
Jesse S. Vogtle, Jr.
Eric T. Ray
HOLLAND & KNIGHT LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, Alabama 35203
Telephone: (205) 226-5700
Facsimile: (205) 214-8787
jesse.vogtle@hklaw.com
etray@hklaw.com

-and-

Gary H. Leibowitz*
Irving E. Walker*
H.C. Jones III*
J. Michael Pardoe*
COLE  SCHOTZ P.C.
1201 Wills Street, Suite 320
Baltimore, MD 21231
Telephone: (410) 230-0660
Facsimile: (410) 230-0667
gleibowitz@coleschotz.com
iwalker@coleschotz.com
hjones@coleschotz.com
mpardoe@coleschotz.com

*Proposed Attorneys for the Debtors and Debtors-in-Possession*

*Admitted *pro hac vice*

# EXHIBIT A

## PROPOSED SALE ORDER

|  |  |
|---|---|
| In re: | (Chapter 11) |
| PREMIER KINGS, INC., *et al.*,[1] | Case No. 23-02871 (TOM11) |
| Debtors. | Joint Administration Requested |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENTS AND AUTHORIZING
THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS UNDER 11 U.S.C.
§§ 363(B) AND 363(M); (II) AUTHORIZING THE SALE OF ASSETS FREE AND
CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS
PURSUANT TO 11 U.S.C. § 363(F); (III) APPROVING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES
PURSUANT TO 11 U.S.C. § 365; AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the *Motion of the Debtors and Debtors-in-Possession for Entry of
an Order (I) Approving Asset Purchase Agreements and Authorizing the Sale of All or
Substantially All of the Debtors' Assets Under 11 U.S.C. §§ 363(b) and 363(m); (II) Authorizing
the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to
11 U.S.C. § 363(f); (III) Approving the Assumption and Assignment of Certain Executory
Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365; and (IV) Granting Related Relief*
[Doc. No. \*\*\*] (the "Sale Motion") filed on October 26, 2023 by the debtors and debtors-in-
possession in the above-captioned jointly administered chapter 11 cases (the "Debtors"), seeking
entry of this Order (the "Order") (i) approving the Stalking Horse Agreements, subject to higher
and better bids (as modified or supplemented by this Order) (collectively, the "Purchase

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
numbers, are:  Premier Kings, Inc. (3932); Premier Kings of Georgia, Inc. (9797); and Premier Kings of
North Alabama, LLC (9282). The Debtors' address is 7078 Peachtree Industrial Blvd., Suite #800,
Peachtree Corners, GA 30071.  The Debtors have filed a motion for joint administration with the Court.

Agreements"), providing for the Sale of certain assets of the Debtors designated as the Assets in the Purchase Agreements under 11 U.S.C. §§ 363(b) and (m); (ii) authorizing the Sale of the Assets free and clear of all liens, claims, encumbrances, and other interests under 11 U.S.C. § 363(f); (iii) approving the assumption and assignment of the Proposed Assumed Leases (hereinafter referred to as the "Assumed Contracts") as set forth in the Agreements; and (iv) granting related relief.[2]

The Court previously entered its *Order (I) Approving Bidding Procedures for the Sale of All or Substantially All the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving Bid Protections for Stalking Horse Bidders; (III) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (IV) Scheduling an Auction for, and Hearing to Approve, the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (V) Approving the Form and Manner of Sale Notice; and (VI) Granting Related Relief* [Doc. No. [**]] (the "Bidding Procedures Order") on November [**], 2023, wherein the Court: (i) approved certain bidding and sale procedures (the "Bidding Procedures") in regard to the auction (the "Auction") and sale of substantially all of the Debtors' assets; (ii) approved certain bid protections (the "Bid Protections") for the Stalking Horse Bidders; (iii) approved procedures for assumption and assignment of the Assumed Contracts; (iv) scheduled the Auction and Sale Hearing; and (v) approved the form and manner of notice concerning the Purchased Assets. Pursuant to the Bidding Procedures Order, the Auction was held on December 4, 2023.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sale Motion or Purchase Agreements, as applicable.

The Debtors filed notices with the Court attaching each of the Stalking Horse Agreements [Doc. Nos. [**] – [**]], and identifying (i) the assets being sold, (ii) the identities of the Stalking Horse Bidders for each group of Assets, and (iii) the consideration for the proposed sales. A summary of two of the Stalking Horse Agreements was also attached to the Bidding Procedures Motion, identifying the material financial terms of each proposed Sale.

Following the Auction, to the extent applicable and in accordance with the Bidding Procedures Order, the Debtors filed notice with the Court attaching each of the Purchase Agreements referenced above and attached hereto as Exhibits 1 – [**], identifying (i) the assets being sold, (ii) the identities of the Successful Bidder(s) for each group of Assets, and (iii) the consideration for the proposed sales.

The Debtors, after consultation with the Lender Group and the Creditors' Committee, have determined that the sale of the Purchased Assets to the respective Buyer(s) pursuant to the Purchase Agreements are the highest or otherwise best offers for the Purchased Assets.

The Court conducted the Sale Hearing on [**********] [**], 202[*] to consider approval of the sale of the Purchased Assets to the respective Buyer(s) pursuant to the Purchase Agreements (the "Sale"), and all parties-in-interest were heard or had the opportunity to be heard regarding the approval of the Purchase Agreements executed by the Buyer(s) and the transactions contemplated thereby (the "Transactions").

The Court having reviewed the Sale Motion and the bases for the relief requested therein, and any responses or objections to the Sale Motion, and having considered the evidence and arguments proffered and/or presented in connection therewith at the Sale Hearing; and having determined that the legal and factual bases set forth in the Sale Motion and presented at the Sale Hearing establish just cause for the relief granted herein; and upon all of the proceedings had

3

before this Court; and after due deliberation and sufficient cause appearing therefor, it is

**HEREBY FOUND AND DETERMINED THAT**:[3]

### Findings of Fact and Conclusions of Law

A.      The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.  The findings of fact and conclusions of law set forth herein are augmented by any additional findings of fact or conclusions of law made on the record at the Sale Hearing, which oral findings and conclusions are incorporated herein by this reference.

### Jurisdiction, Venue and Core Proceeding

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

### Statutory Predicates

C.      The statutory bases for the relief requested in the Sale Motion are sections 105, 363, 365 and 1107 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") and Bankruptcy Rules 2002, 6004 and 9014.  The consummation of the Transactions contemplated by the Sale Motion, the Purchase Agreements and this Order are legal, valid and properly authorized under all such provisions of the Bankruptcy Code and the

---

[3] This Order and the Findings of Fact and Conclusions of Law contained herein apply to all of the above-captioned jointly administered chapter 11 cases.

Bankruptcy Rules, and all of the applicable requirements of such sections and rules have been complied with in all respects or waived by this Court pursuant to this Order.

**Notice; Opportunity to Object**

D.      As evidenced by the certificates of service filed with the Court, proper, timely, adequate and sufficient notice of the Auction, Sale Motion, Sale Hearing, Sale and Purchase Agreements, and all Transactions contemplated therein or in connection therewith, and all deadlines related thereto, was given and no further notice was required or need be provided.  A reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion and granted by this Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code and the Bankruptcy Rules.

**Notice**

E.      Actual written notice of the matters described in paragraph D above was given to all interested persons, including without limitation: (a) all known creditors of the Debtors, (b) all equity holders of the Debtors, (c) entities known to have expressed an interest in a transaction with respect to some or all of the Purchased Assets; (d) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Assets; (e) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the furniture, fixtures and equipment located in the Stores; (f) the Internal Revenue Service and all state and local taxing authorities in the states in which the Debtors have or may have any tax liability; (g) the Securities and Exchange Commission; (h) counsel to the Lender Group; (i) counsel to BKCI; (j) counsel to the Creditors' Committee, if appointed; (k) the Office of the Bankruptcy Administrator for the Northern District of Alabama; (l) those parties who have filed the appropriate notice requesting notice of all pleadings filed in these chapter 11 cases and, (m) as pertains the Assumed Contracts

and Cure Notice, all counterparties to the Assumed Contracts. The foregoing constitutes proper, timely, adequate and sufficient notice under the particular circumstances of these chapter 11 cases, and no further notice was required or need be provided.

**Adequate Marketing; Highest or Best Offer**

F.     The sale of the Purchased Assets to the respective Buyer(s) and the authorization for the Debtors to implement the sale of the Purchased Assets to the respective Buyer(s) pursuant to the Purchase Agreements are duly authorized pursuant to sections 363(b)(1) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 6004(f). As demonstrated by (a) the evidence proffered or adduced at the Sale Hearing and (b) the representations of counsel made on the record at the Sale Hearing, the Debtors marketed the Purchased Assets and conducted all aspects of the Auction and Sale process in good faith. The marketing process undertaken by the Debtors and its advisers was adequate and appropriate under the circumstances of these cases. The Transactions embodied in the Purchase Agreements constitute offers within the range of reasonableness for the Purchased Assets and have been approved by David Banker of Aurora Management Partners Inc., as the Chief Restructuring Officer ("CRO") for the Debtors.

**Corporate Authority**

G.     Each Debtor, through the CRO, and in accordance with this Court's Order approving the Debtors' retention of the CRO, entered [*********] [**], 2023 [Doc. No. [**]], (a) has full corporate power and authority to execute the Purchase Agreements, and the Sale to the Buyer(s) has been duly and validly authorized by all necessary corporate or similar actions, (b) has all of the corporate power and authority necessary to consummate the Sale and all Transactions contemplated by the Purchase Agreements and this Order, (c) has taken all corporate action necessary to authorize and approve the Purchase Agreements and the consummation of the

6

Sale and all Transactions contemplated thereby, and (d) requires no consents or approvals, other than those expressly provided for in the Purchase Agreements, to consummate the Sale and all Transactions contemplated thereby.

**Property of the Estate**

H.     The Assets of the Debtors are property of the Debtors' respective estates and title in such assets is vested in the Debtors' estates and/or are subject to sale by the Debtors pursuant to Section 363 of the Bankruptcy Code.

**Sale in Best Interests**

I.     Approval of the Purchase Agreements and consummation of the Sale of the Assets pursuant to the Purchase Agreements and this Order are in the best interests of the Debtors' estates, their creditors, and other parties in interest.

**Business Justification**

J.     The Debtors have demonstrated good, sufficient, and sound business purposes and justifications and compelling circumstances for this Court to approve the Purchase Agreements and consummation of the Sale pursuant to section 363(b) of the Bankruptcy Code prior to and outside of a plan of reorganization.

**Opportunity to Object**

K.     Based on the Debtors' representations, the Court finds that a reasonable opportunity to object or be heard with respect to the Sale Motion, the Sale (and the Transactions contemplated thereby), the Purchase Agreements, the Sale Hearing, and any asserted rights or interests under any contract has been afforded to all known parties.

65533/0001-46356789v2

**Arm's-Length Sale**

L.     The Purchase Agreements were negotiated, proposed, and entered into by the Debtors and the Buyer(s) without collusion, in good faith, and on an arm's-length basis. The Buyers are not insiders or affiliates of the Debtors. The Debtors and the Buyers have not engaged in any conduct that would cause or permit the Purchase Agreements to be avoided under section 363(n) of the Bankruptcy Code.

**Good Faith Purchasers**

M.     The Buyer(s) are good faith purchasers of the Purchased Assets within the meaning of section 363(m) of the Bankruptcy Code and are entitled to all the protections afforded thereby. The Buyer(s) proceeded in good faith in all respects in connection with the Sale, in that (a) the Buyers in no way induced or caused the chapter 11 filing of the Debtors; (b) the Buyers recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; and (c) all payments to be made by the Buyers pursuant to the Purchase Agreements in connection with the Sale have been disclosed.

**Effect of Closing**

N.     As of the Closing, pursuant and subject to the terms of the Purchase Agreements, the transfer of the Assets pursuant to the Sale will effect a legal, valid, enforceable, and effective transfer of the Assets and will vest the Buyers with all of the Debtors' rights, title, and interests in and to the Assets, including operatorship thereof, free and clear of all liens, claims, and encumbrances, other than as set forth in the Purchase Agreements.

**Substitution**

O.     As of the Closing, the Buyer(s) are hereby substituted for all purposes as a party to all Assumed Contracts in the place of the applicable Debtor. The Buyer(s) shall have any and all

rights, benefits, and obligations of the applicable Debtor(s) under all such Assumed Contracts in the place of such Debtor(s), without interruption or termination of any kind, and all terms applicable to the Debtor(s) shall apply to the Buyer(s) as if such Assumed Contracts were amended to replace the Debtor(s) with the Buyer(s).

**Free and Clear**

P.      The Buyer(s) would not have entered into the Purchase Agreements and would not consummate the Sale, thus adversely affecting the Debtors, the Debtors' estates and their creditors, if (a) the Assets and (b) the assumption and assignment of the Assumed Contracts were not free and clear of all liens, claims, and encumbrances, other than as set forth in the Purchase Agreements, to the greatest extent permitted by the Bankruptcy Code and applicable, non-bankruptcy law.  A sale of the Assets other than one that is free and clear of all liens, other than as set forth in the Purchase Agreements, would yield substantially less value for the Debtors, with less certainty, than the Sale as contemplated.  The Debtors may sell the Assets free and clear of all liens, claims, or encumbrances, other as set forth in the Purchase Agreements, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  All parties in interest, including without limitation, holders of liens, claims, and encumbrances and any counterparties to the Assumed Contracts, that did not object or who withdrew their objection to the Sale, Sale Motion, assumption and assignment of the Assumed Contracts or the associated Cure Cost have either: (a) consented to the relief granted herein pursuant to section 363(f)(2) of the Bankruptcy Code, (b) such interest is a lien and the Purchase Price is greater than the aggregate value of all liens, pursuant to section 363(f)(3) of the Bankruptcy Code; or (c) such lien, claim, or encumbrance is in bona fide dispute pursuant to section 363(f)(4) of the Bankruptcy Code.   Any (a) holders of liens, claims, and encumbrances and (b) non-Debtor

counterparties to Assumed Contracts who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their liens, claims, and encumbrances, if any, attach to the portion of the Purchase Price attributable to the property against or in which they assert a lien or claim, in the order of their priority, with the same validity, force and effect that they now have as against such property, subject to any rights, claims, and defenses the Debtors may possess with respect thereto.

### Successor Liability

Q.      Neither the Buyers nor any of their affiliates are successors to any Debtor or any Debtor's estate by reason of any theory of law or equity, and neither the Buyer(s) nor any of their affiliates shall assume or in any way be responsible for any liability or obligation of the Debtors and/or their estates, except to the extent set forth in the Purchase Agreements.

### No Sub Rosa Plan

R.      The Sale of the Purchased Assets outside of a chapter 11 plan pursuant to the Purchase Agreements neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtors.  The Sale does not constitute a *sub rosa* chapter 11 plan.

### Prompt Consummation

S.      Time is of the essence in consummating the Sale.  To maximize the value of the Purchased Assets, it is essential that the Sale occur within the time constraints set forth in the Purchase Agreements.   Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004(h).

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Sale Motion is GRANTED as set forth herein.

2.     All objections to the relief sought in the Sale Motion that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

3.     The Court finds that notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and the Bidding Procedures Order.

## Approval of the Purchase Agreements

4.     The Purchase Agreements, including all the terms and conditions thereof, are hereby approved.

5.     Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and directed to perform their obligations under and to comply with the terms of the Purchase Agreements, and to consummate the Sale, pursuant to and in accordance with the terms and conditions of the Purchase Agreements.

6.     In the event that, for any reason, a Buyer should fail to Close on any of the Transactions contemplated by the Purchase Agreements following an Auction at which the Debtors have designated one or more Back-Up Bidders in accordance with the Bidding Procedures Order, then the Debtors are authorized to consummate the Sale as contemplated by the Bidder Purchase Agreement executed by any such applicable Back-Up Bidder(s), and the provisions of this Order shall apply to any such transaction contemplated thereby with full force and effect.  In such an event, the term "Purchase Agreements," as used herein, shall be construed to include any Bidder Purchase Agreement(s) executed by the Back-Up Bidder(s), and the term "Buyers," as used herein, shall be construed to include each such Back-Up Bidder.

65533/0001-46356789v2

7. The Debtors are further authorized and directed to pay, without further order of this Court, whether before, at or after the Closing, any expenses or costs that are required to be paid by them in order to consummate the transactions contemplated by the Purchase Agreements or perform their obligations under the Purchase Agreements.

8. The Debtors and the Buyer(s), and each of their respective officers, employees, and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Buyer(s) deem necessary or appropriate to implement and effectuate the terms of the Purchase Agreements and this Order.

9. This Order and the Purchase Agreements shall be binding in all respects upon all creditors of and equity holders in the Debtors and any and all other parties in interest in these chapter 11 cases, including without limitation, any and all holders of liens, claims (including holders of any rights or claims based on any putative successor or transferee liability), and encumbrances in and to the Assets, all counterparties to the Assumed Contracts, the Buyers, the Debtors, all successors and assigns of the Buyers, and any trustee, liquidating or litigation trustee, wind-down administrator or similar person, or any successors to any of the foregoing, appointed in these chapter 11 cases by the Court or any Debtor, including pursuant to a chapter 11 plan, or upon conversion to chapter 7 under the Bankruptcy Code.

10. The Purchase Agreements, this Order and the Debtors' obligations therein and herein shall not be altered, impaired, or otherwise affected by any chapter 11 plan proposed or confirmed in these chapter 11 cases, any order confirming any chapter 11 plan or any subsequent order of this Court, without the prior written consent of the Buyers. Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases or the confirmation order confirming any

12

such chapter 11 plan, or any subsequent order of this Court, shall conflict with the provisions of the Purchase Agreements or this Order.

11. The Purchase Agreements and any related agreements, documents, or instruments may be modified, amended, or supplemented by the parties thereto in a writing signed by the parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement does not have a materially adverse effect on the Debtors' estates.

### Transfer of the Assets

12. The Buyer(s) shall assume and be liable for only the Assumed Liabilities and any other liabilities expressly assumed pursuant to their respective Purchase Agreement. Except as expressly permitted or otherwise specifically provided for in the Purchase Agreements or this Order, pursuant to sections 105, 363, and 365 of the Bankruptcy Code and/or any other applicable section of the Bankruptcy Code, upon Closing, the Assets shall be transferred to the Buyer(s) free and clear of all liens, claims, and encumbrances, other than as set forth in the Purchase Agreements.

13. All persons are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Assets to the respective Buyer in accordance with the Purchase Agreements and this Order or the right of the Debtors to consent to and implement the Sale of the Assets to the respective Buyer pursuant to the Purchase Agreements and this Order. Following Closing, except for persons entitled to enforce Assumed Liabilities as set forth in the Purchase Agreements, all persons (including but not limited to (i) the Debtors and/or their respective successors (including any trustee), (ii) creditors, (iii) current and former employees and shareholders, (iv) administrative agencies, (v) governmental units, (vi)

federal, state and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and (vii) the successors and assigns of each of the foregoing) holding liens, claims, and encumbrances in the Assets or against the Debtors in respect of the Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any liens, claims, and encumbrances against the Buyers or any affiliate of the Buyers or any of their respective property, successors and assigns, or the Assets, as an alleged successor or on any other grounds. No person shall assert, and the Buyers and the Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including without limitation, any right of recoupment), liabilities, claims, and interests or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Buyer(s) or the Debtors, or any obligation of any other person, under or with respect to, any of the Assets, with respect to any act or omission that occurred prior to the Closing or with respect to any other agreement or any obligation of the Debtors that is not an Assumed Liability as set forth in the Purchase Agreements.

14. Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Assets and the Debtors' rights, title, and interests therein, and a bill of sale transferring good and marketable title in the Assets to the respective Buyer free and clear of all liens, claims, and encumbrances, except for as set forth in the Purchase Agreements. Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

15. The transfer of the Assets to the respective Buyer(s) pursuant to the Purchase Agreements and this Order shall constitute legal, valid, and effective transfers of the Assets at the

14

Closing and shall vest the Buyer(s) with all of the Debtors' rights, title, and interests in such Purchased Assets, including operatorship thereof, if applicable, free and clear of all liens, claims, and encumbrances, other than as set forth in the Purchase Agreements.

16.     If any person that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents, instruments or agreements evidencing liens, claims, and encumbrances in the Assets has not delivered to the Debtors, prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens, claims and encumbrances which the person has with respect to the Assets or otherwise, then (a) the Debtors and the Buyer(s), collectively and individually, are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person with respect to the Assets and (b) the Debtors and the Buyer(s) are hereby authorized to file, register, or otherwise record a certified copy of this Order with any governmental authority and all governmental authorities are authorized and directed to accept the same, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, and encumbrances in the Assets.

17.     Nothing in this Order or the Purchase Agreements releases, nullifies, precludes, or enjoins the enforcement of any police power by, or any regulatory liability to, any governmental authority.  To the greatest extent provided by the Bankruptcy Code, no governmental authority may deny, revoke, suspend, or refuse to renew any permit, governmental authority, or grant relating to the Assets or the operation of the business represented thereby on account of the filing or pendency of these chapter 11 cases or the consummation of the transactions contemplated by the Purchase Agreements, including without limitation, the Sale and the assumption and assignment of the Assumed Contracts.

65533/0001-46356789v2

## Assumption and Assignment of Assumed Contracts

18.     Pursuant to section 365 of the Bankruptcy Code, the Debtors are authorized to assume and assign the Assumed Contracts to the respective Buyer(s) pursuant to the Purchase Agreements.

19.     The Assumed Contracts set forth in the Purchase Agreements shall be deemed to be assumed by the Debtors and assigned to the Buyer(s) effective as of Closing, except as a Purchase Agreement may provide otherwise.

20.     In accordance with section 365 of the Bankruptcy Code, effective upon the Closing and upon transfer of the Assumed Contracts to the respective Buyer, (a) the Buyer(s) shall have all of the rights of the Debtor(s) thereunder and each provision of such Assumed Contracts shall remain in full force and effect for the benefit of the Buyer(s) notwithstanding any provision in any such contract, lease, or in applicable law that prohibits, restricts or limits in any way such assignment or transfer and (b) none of the Assumed Contracts may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the Buyers' purchase of the Assets and the assumption of the Assumed Contracts.

21.     All options to renew the Assumed Contracts that have not expired and can be exercised as of the date of this Order are hereby assigned by the Debtors to the respective Buyer(s) and can be validly exercised by the respective Buyer(s).

22.     The assignment by the Debtors of the Assumed Contracts to the respective Buyer(s) shall not constitute a default under any of the Assumed Contracts.  Any provisions in any Assumed Contracts that prohibit or condition the assignment of such Assumed Contract or allows the party to such Assumed Contract to terminate, recapture, impose any penalty, condition,

on renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the respective Buyer(s) of the Assumed Contracts have been satisfied.

23. There shall be no assignment fees, increases, rent-acceleration, or any other fees or amounts charged to the Buyer(s) or the Debtors as a result of the assumption and assignment of the Assumed Contracts.

24. On or as promptly after the Closing as is practical, the Cure Amounts to which no objections have been filed, or to which the Debtors and an applicable non-Debtor contract counterparty have agreed as to the allowed Cure Amount (collectively, the "Undisputed Cure Amounts"), shall be paid by the Debtors from the Purchase Price. On or as promptly after the determination by the Court of any disputed Cure Amounts (collectively, the "Disputed Cure Amounts", and together with the Undisputed Cure Amounts, the "Cure Amounts") as is reasonably practical, shall be paid by the Debtors from the proceeds of the Purchase Price. If there is an objection by a counterparty to any Assumed Contract that is not resolved prior to the Closing Date, the Debtors, with the consent of the Buyers and in accordance with the Purchase Agreements, may elect to (a) not assume and assign to the respective Buyer the Assumed Contract, (b) postpone the assumption and assignment of such Assumed Contract until resolution of such objection without delaying the closing of the Sale, (c) if the objection relates solely to the Cure Amount, pay the undisputed portion of the applicable Cure Amount to the counterparty at the Closing, reserve from the Purchase Price the disputed portion of the applicable Cure Amount, and assume and assign such Assumed Contract at the Closing, or (d) proceed with the assumption

and assignment on such terms as are otherwise mutually agreeable to the applicable counterparty, the Debtors and the respective Buyer. If the parties choose (c), so long as the Disputed Cure Amount is reserved from the Purchase Price and there are no other unresolved objections to the assumption and assignment of the applicable Assumed Contract, the Debtors can, without further delay, assume and assign the applicable Assumed Contract. The Debtors shall pay or otherwise satisfy all undisputed monetary obligations that arise and accrue from the Petition Date through and including the Closing Date (the "Post-Petition Amounts"). Under such circumstances, the recourse of the counterparty to the applicable Assumed Contract is limited to payment of the undisputed portion of the Cure Amount as of the Closing, payment of any portion of the Disputed Cure Amount to which the counterparty is entitled following resolution of the dispute regarding the Cure Amount and payment of Post-Petition Amounts.

25. The payment of the Undisputed Cure Amounts, the Disputed Cure Amounts and the Post-Petition Amounts (a) shall be deemed to discharge the Debtors' obligation to cure any defaults under the Assumed Contracts under section 365 of the Bankruptcy Code; (b) shall effect a cure of all defaults existing as of the date that such Assumed Contracts are assumed as required by section 365 of the Bankruptcy Code; and (c) compensate, or provide adequate assurance of prompt compensation to, any counterparty to any of the Assumed Contracts for any actual pecuniary loss resulting from any default under any of the Assumed Contracts.

26. All counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyers and without any cost or expense to the Buyers for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection therewith.

## Additional Provisions

27. As of and after the Closing, all persons are hereby authorized and directed to execute such documents and take all other actions as may be necessary to release their liens, claims, and encumbrances in, to, or against the Assets, as such liens, claims, and encumbrances may have been recorded or may otherwise exist, and such liens, claims, and encumbrances shall attach to the applicable allocated portion (if any) of the Sale proceeds in the same priority they currently enjoy with respect to the applicable Assets prior to the Closing.

28. This Order (a) shall be effective as a determination that, upon the Closing, all liens, claims, and encumbrances existing as to the Assets prior to the Closing, other than as set forth in the Purchase Agreements, have been unconditionally released, discharged and terminated and that the conveyances described herein have been effected and (b) shall be binding upon and shall govern the acts of all persons, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, federal, state, and local officials and all other persons who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets.

29. Except as expressly permitted or otherwise specifically provided for in the Purchase Agreements or this Order, the Buyers and their affiliates and their respective successors and assigns shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Assets or otherwise. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Purchase Agreements, the Buyers and their affiliates shall not be liable for any liens, claims, and encumbrances against

19

the Debtors or any of their predecessors, other than as set forth in the Purchase Agreements, and the Buyers and their affiliates and their respective successors and assigns shall have no successor or vicarious liabilities of any kind or character, including but not limited to, any theory of antitrust, warranty, product liability, environmental, successor or transferee liability, labor law, ERISA, de facto merger or substantial continuity, whether known or unknown, as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with or in any way relating to the operation of the Debtors' business prior to the Closing or any claims under the WARN Act or any claims related to wages, benefits, severance, or vacation pay owed to employees or former employees of the Debtors other than any such liabilities that are set forth in the Purchase Agreements.

30. Neither the Buyers nor any of their affiliates nor any of their respective successors or assignees shall assume or in any way be responsible for any liability or obligation of the Debtors or the Debtors' estates, except as otherwise expressly provided in the Purchase Agreements.

31. Following the Closing, no holder of any liens, claims, or encumbrances in or against the Assets shall interfere with the Buyer(s)' title to or use and enjoyment of such Assets based on or related to such liens, claims, or encumbrances, or any actions that the Debtors may take in these chapter 11 cases or any successor cases.

32. All persons that are in possession of some or all of the Purchased Assets are hereby directed at their sole cost and expense to surrender possession of such Purchased Assets to the respective Buyer on the Closing Date, unless the Buyer otherwise agrees.

33.     The consideration provided by the Buyer(s) for the Assets under the Purchase Agreements constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.  The Court's approval of the Sale Motion and the Purchase Agreements are in the best interests of the Debtors, the Debtors' estates and creditors, and all other parties in interest in these chapter 11 cases.

34.     This Court retains jurisdiction to enforce and implement the terms and provisions of the Purchase Agreements, all amendments thereto, any waivers and consents thereunder, and each of the agreements and other documents executed and/or delivered in connection therewith in all respects as the same relate to the Debtors, including but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets or performance of any other obligations owed to the Buyer(s); (b) compel delivery of the Purchase Price or performance of other obligations owed to the Debtors; (c) resolve any disputes arising under or related to the Purchase Agreements; (d) interpret, implement, and enforce the provisions of this Order; and (e) protect the Buyer(s) and their affiliates and their respective successors and assigns from and against (a) any liens, claims, or encumbrances in, to, or against the Assets and (b) any creditors or other parties in interest regarding the turnover of the Assets that may be in their possession.

35.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person obtaining a stay pending appeal, the Debtors and the Buyers, at the Buyers' option, are free to close the Sale under the Purchase Agreements at any time prior to this Order becoming a Final Order.  The Sale is undertaken by the Buyers in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the

authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Buyers (including the assumption and assignment of the Assumed Contracts), unless such authorization is duly stayed pending such appeal. The Buyers are buyers in good faith of the Assets and are entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

### Payments From Closing

36.     After Closing of the Sale, the Debtors are authorized to use the sale proceeds as follows:

> (1)     all closing costs for the Sale and transactions as set forth on a settlement statement, consistent with the terms of the Purchase Agreements;
>
> (2)     Cure Amounts;
>
> (3)     if there is a timely objection by a counterparty to an Assumed Contract related to the Cure Amount, cash reserves equal to the undisputed portion of the applicable Cure Amount; and
>
> (4)     payment of fees and expenses of the escrow agent for the Sales, and other professionals whose fees have been authorized and approved by the Court to be paid at closing; and
>
> (5)     the net sale proceeds shall be paid to the Prepetition Agent.

### Miscellaneous

37.     The terms and provisions of the Purchase Agreements and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, the Debtors' estates and creditors, the Buyers and their affiliates and their respective, successor and assigns, and all affected third parties, including but not limited to, all persons asserting liens, claims, and encumbrances in, to, or against the Debtors and/or Assets, notwithstanding any subsequent appointment of any trustee, liquidating or litigation trustee, wind-down administrator or similar

person, or any successors to any of the foregoing, appointed in these chapter 11 cases by the Court or any Debtor, including pursuant to a chapter 11 plan, or upon conversion to chapter 7 under the Bankruptcy Code, as to which such person such terms and provisions likewise shall be binding.

38.     To the extent of any conflict between the Purchase Agreements and this Order, the terms and provisions of this Order shall govern.

39.     The failure to specifically reference any particular provision of the Purchase Agreements or other related documents in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreements and other related documents be authorized and approved in their entirety.

Dated: _____, 2023
        Birmingham, Alabama

_____
TAMARA O. MITCHELL
UNITED STATES BANKRUPTCY JUDGE