**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| In re: | (Chapter 11) |
| PREMIER KINGS, INC., *et al.*,[1] | Case No. 23-02871-TOM |
| Debtors. | Jointly Administered |

## MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION FOR ENTRY OF AN ORDER ENFORCING AUTOMATIC STAY

Premier Kings, Inc., and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), by their undersigned proposed counsel and pursuant to sections 105(a), 541(a), and 362(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby move (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (a) declaring that the prosecution of the Memphis Action (defined below) constitutes a violation of section 362(a) of the Bankruptcy Code, (b) enjoining First Horizon ("First Horizon" or the "Bank") from prosecuting the Memphis Action insofar as it pertains to the Equipment (defined below), the Debtors' Stores (as defined below), or the Debtors, (c) requiring that any further or future action asserting a right to possess or control the Equipment or the Debtors' Stores, or otherwise concerning the Equipment, the Debtors' Stores, or the Debtors, be brought in this Court, and (d) granting such other and further relief as the Court deems just and proper.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers, are: Premier Kings, Inc. (3932); Premier Kings of Georgia, Inc. (9797); and Premier Kings of North Alabama, LLC (9282). The Debtors' address is 7078 Peachtree Industrial Blvd., Suite #800, Peachtree Corners, GA 30071. The Debtors have filed a motion for joint administration with the Court.

## PRELIMINARY STATEMENT

The Debtors request relief in this Motion to ensure that First Horizon and its attorneys cease their efforts to seize control of four of the Debtors' stores, which are currently the subject of two separate stalking horse purchase agreements, through litigation they initiated on Thursday, November 1, 2023 in the Chancery Court for the State of Tennessee, 30th Judicial District, Shelby County (the "<u>Tennessee Court</u>"). First Horizon not only filed a Complaint but also requested and obtained an emergency hearing held in the morning of November 3, 2023 on the Bank's request for appointment of receiver over the Debtors' Stores, including a request for the immediate surrender of the real and personal property used to operate the Debtors' stores, as well as other assets owned by the Debtors' landlord, Premier Holding, LLC and Premier Holdings of Georgia, LLC. Thanks to the ability and willingness of the Debtors' counsel, Eric Ray, to drive to Memphis in the middle of the night to prevent the Tennessee Court from interfering with the Debtors' bankruptcy estate administration, the Tennessee Court did not grant the relief requested by the Bank but did schedule another hearing on the Bank's request for appointment of a receiver which is to be held on Tuesday, November 7, 2023.

First Horizon's extreme actions are a transparent attempt to circumvent this Court's exclusive jurisdiction over the Debtors' Stores. The Bank took its wrongful actions knowing of the Debtors' bankruptcy, and knowing that the Debtors' Stores, which were included in the Bank's Complaint for relief, are the subject of pending stalking horse sale agreements. The Bank's counsel include lawyers who practice bankruptcy law and should know better.

The Bank filed its Complaint in the Tennessee Court even though the Tennessee Court has no jurisdiction over the Debtors' Stores, which are located in Alabama and Georgia, and as a matter of law a state court of Tennessee has no jurisdiction over real and personal property located outside of Tennessee. In taking this action, First Horizon ignored its own loan

documents with Premier Holdings, which provide for any disputes to be resolved by binding arbitration. To avoid further harm from the Bank's actions in violation of the automatic stay arising from the Debtors' bankruptcy, the Debtors now ask for the Court to make clear to First Horizon that the automatic stay applies to the Bank and its agents.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334, and the General Order of Reference from the United States District Court for the Northern District of Alabama dated July 16, 1984, as amended July 17, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are Sections 105(a), 541(a), and 362(a) of the Bankruptcy Code and Bankruptcy Rule 9014.

## BACKGROUND

**I.     Introduction.**

4. On October 25, 2023 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

5. The Court entered its Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief on October 30, 2023 [Doc. No. 84].

6. The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. No official committee of unsecured creditors has been appointed.

8. No request for a trustee or examiner has been made in these chapter 11 cases.

9. Information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the

Declaration of David M. Baker in Support of First-Day Motions [Doc. No. 20]. Those facts are incorporated herein by reference.

## II.    Relevant Factual Background.

10.    On November 1, 2023, First Horizon filed its *Verified Complaint for Breach of Contract, Appointment of Receiver, and Other Injunctive and Equitable Relief* against Premier Holdings, LLC, Premier Holdings of Georgia, LLC, and Jaipal Gill in the Tennessee Court (the "Memphis Complaint"), giving rise to Case No. 23-1418-2 (the "Memphis Action"). A true and correct copy of the Memphis Complaint, without its over 850 pages of exhibits, is attached hereto as **Exhibit B**.[2]

11.    The defendants to the Memphis Complaint include certain non-debtor affiliates of the Debtors—Premier Holdings, LLC and Premier Holdings of Georgia, LLC (the "Affiliate Defendants")—which are obligors on certain loan and security agreements with First Horizon, and which pledged certain collateral to First Horizon, including certain fixtures and kitchen equipment such as fryers, ovens, refrigerators, and other essential equipment, presently used in the operation of certain of the Debtors' restaurants (the "Equipment").

12.    The Equipment in question is located at the stores identified in the Memphis Complaint as the "Montgomery, Alabama Burger King" (Exhibit B, p. 3), the "Harpersville, Alabama Burger King" (Exhibit B, p. 4), the "Nahunta, Georgia Burger King" (Exhibit B, p. 6), and the "Port Wentworth, Georgia Burger King" (Exhibit B, p. 8). In this Motion, these four stores are referred to as the "Debtors' Stores."

13.    The Equipment and the Debtors' Stores identified in the Memphis Complaint are subject to a stalking horse purchase agreement between the Debtors and each of Bulldog

---

[2] Including exhibits, the Memphis Complaint is 900 pages. The exhibits are therefore not included herewith to avoid the burden on the Court and interested parties of reviewing such a voluminous filing, but the exhibits will be made available upon request.

Restaurants, LLC (Store Numbers 21645 and 27281) and RRG of Jacksonville, LLC (or its nominee(s)) (Store Numbers 27690 and 26868), respectively.[3]  Both of the aforementioned stalking horse agreements are subject to higher and better bids pursuant to the proposed Bidding Procedures[4] and any Auction that is conducted, and subject to the Court's ultimate approval following consideration of the Debtors' Sale Motion.[5]

14.     Through the Memphis Action, First Horizon requested, *inter alia*, "immediate possession of all the Collateral under the express terms of the Security Agreements" (Count Four), to have a receiver appointed over the Equipment and the Affiliate Defendants' operations and activities (Count Five), and, among other things, a temporary restraining order and permanent injunction directing the Affiliate Defendants to surrender possession of the Equipment and the Debtors' Stores to First Horizon (Count Six).[6]  See Exhibit B, Counts Four, Five, and Six.

15.     On November 3, 2023, an emergency hearing (the "Emergency Hearing") was held on the Memphis Action, which was attended by Mr. Ray for the Debtors.  Counsel for Premier Holdings did not appear at the hearing.  After hearing argument, Chancellor Kyle of the Tennessee Court continued the hearing on the Bank's request for appointment of a receiver to November 7, 2023 and asked the parties to work to reach a consensual resolution concerning the Equipment and the Debtors' Stores.

---

[3] The stalking horse agreements were filed under notice with the Court on October 27, 2023 [Doc. No. 47].

[4] [Doc. No. 42].

[5] [Doc. No. 43].

[6] Count Six is erroneously named as a duplicate Count Five.

16.    In order to keep this Court apprised of matters concerning administration of the Debtors' estates and to prevent any further interference by First Horizon with the Debtors' estates and with the pending sale process, the Debtors now file this Motion.

## RELIEF REQUESTED

17.    By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto, (a) declaring that the prosecution of the Memphis Action constitutes a violation of section 362(a) of the Bankruptcy Code, (b) enjoining First Horizon from prosecuting the Memphis Action insofar as it pertains to the Equipment, the Debtors' Stores, or in any way would affect the Debtors, (c) requiring that any further or future action asserting a right to possess or control the Equipment or the Debtors' Stores or otherwise concerning the Equipment, the Debtors' Stores, or the Debtors, be brought in this Court, and (d) granting such other and further relief as the Court deems just and proper.[7]

## BASIS FOR RELIEF REQUESTED

18.    Pursuant to section 362(a)(3) of the Bankruptcy Code, the Debtors' voluntary petitions operated as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

19.    In turn, section 541(a) of the Bankruptcy Code defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held."

20.    Here, the Debtors are in possession of all of the Equipment and real property which are the subject of the Memphis Complaint, and which First Horizon has requested be

---

[7] The Debtors reserve the right to seek additional relief for damages and attorneys' fees incurred in connection with responding to the Memphis Complaint, attending the Emergency Hearing, and filing this Motion, including with regard to any forthcoming adversary proceeding concerning the relief requested herein.

surrendered to a state court receiver. While the Memphis Complaint does not name the Debtors as defendants, it represents a flagrant disregard and violation of Section 362(a)(3) which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate". 11 U.S.C. §362(a)(3); In re Morgan, No. 13-05178-TOM-7, 2014 WL 3733966, at *2 (Bankr. N.D. Ala. July 11, 2014) ("The automatic stay of actions against property of the estate continues until the property is no longer property of the estate. 11 U.S.C. § 362(c)(1). Unless the court orders otherwise, property that has not been administered in the case and that has not been abandoned under section 554 remains property of the estate.").

21.     Moreover, the Debtors assert equitable ownership of the Equipment, as among other reasons, the Equipment has been listed on the Debtors' personal property tax returns and the Debtors have paid personal property tax on the Equipment. Importantly, however, the possessory interest, which is undisputed, is enough to render the Equipment and the Debtors' Stores property of the estate subject to the automatic stay of section 362(a) of the Bankruptcy Code. See Goguette v. U.S. Bank Nat'l Ass'n, 716 F. App'x 847, 849 (11th Cir. 2017).

22.     On its face, the Memphis Action seeks to establish First Horizon's right to exercise possession and control over the Equipment by virtue of Counts Four, Five, and Six. This is a textbook violation of the automatic stay. Moreover, counsel for First Horizon was aware of the Debtors' bankruptcy filing and of the automatic stay. Indeed, the purpose of the Memphis Action appears to be to end-run this Court's jurisdiction and to exercise control over property of the Debtors' estates while thwarting the proposed sale process. The Memphis Complaint was filed in a Tennessee court having no jurisdiction over the Debtors' Stores or the Equipment, all of which are located in either Alabama or Georgia. The Memphis Action was filed *after* the Petition Date and sought relief at the Emergency Hearing with almost no notice to

the Debtors—the Memphis Action was initiated on November 1, 2023 and the Emergency Hearing was held on November 3, 2023. Counsel for the Affiliate Defendants was not able to appear at the Emergency Hearing and counsel for the Debtors was only able to appear because local counsel in Birmingham, Alabama was fortunately able to drive nearly 4 hours on short notice to attend. Importantly, if the relief requested in the Memphis Action were granted, First Horizon would have been granted a receivership and the right to possess and control critical property of the Debtors' estates, which would have undermined this Court's jurisdiction over the Debtors' assets and the sale process.

23.     Such a result would be a direct violation of the Bankruptcy Code and this Court's exclusive jurisdiction to administer these Chapter 11 cases.

24.     First Horizon clearly needs clear direction from this Court that it is prohibited from pursuing the actions taken in the Tennessee Court and that its actions to date are in clear violation of the automatic stay.

**<u>NOTICE</u>**

25.     The Debtors will provide notice of this Motion to: (a) plaintiff in the Memphis Action, First Horizon, c/o Clarence Wilbon, Esq., Danielle E. Douglass, Esq., and Thomas W. Lawless, Esq.; (b) the Office of the Bankruptcy Administrator for the Northern District of Alabama; (c) the holders of the forty (40) largest unsecured claims against the Debtors on a consolidated basis; (d) counsel to BKCI; (e) counsel to Wells Fargo Bank, National Association, as Administrative Agent for the Lender Group; (f) the United States Attorney's Office for the Northern District of Alabama; (g) the Internal Revenue Service; (h) the office of the Attorney General for the State of Alabama; (i) the Securities and Exchange Commission; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested herein, and such other and further relief as the Court deems just and proper.

Dated: November 6, 2023
Birmingham, Alabama

/s/ Jesse S. Vogtle, Jr.
Jesse S. Vogtle, Jr.
Eric T. Ray
HOLLAND & KNIGHT LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, Alabama 35203
Telephone: (205) 226-5700
Facsimile: (205) 214-8787
jesse.vogtle@hklaw.com
etray@hklaw.com

*-and-*

COLE SCHOTZ P.C.

Gary H. Leibowitz*
Irving E. Walker*
H.C. Jones III*
J. Michael Pardoe*
COLE SCHOTZ PC
1201 Wills Street, Suite 320
Baltimore, MD 21231
(410) 230-0660
(410) 230-0667
gleibowitz@coleschotz.com
iwalker@coleschotz.com
hjones@coleschotz.com
mpardoe@coleschotz.com

*Proposed Attorneys for the Debtors and Debtors-in-Possession*

*\*Admitted Pro Hac Vice*

**EXHIBIT A**

**PROPOSED ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | (Chapter 11) |
| PREMIER KINGS, INC., *et al.*,[1] | Case No. 23-02871-TOM |
| Debtors. | Jointly Administered |

## ORDER ENFORCING AUTOMATIC STAY AGAINST FIRST HORIZON BANK

Upon consideration of the motion (the "Motion")[2] of the Debtors for entry of an Order enforcing the automatic stay; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A); and it appearing that venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors; and after due deliberation and good and sufficient cause appearing therefor;

**IT IS FOUND AND DETERMINED THAT**:

1.      The Equipment and the Debtors' Stores are property of the Debtors' estates under section 541(a) of the Bankruptcy Code.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers, are:  Premier Kings, Inc. (3932); Premier Kings of Georgia, Inc. (9797); and Premier Kings of North Alabama, LLC (9282).  The Debtors' address is 7078 Peachtree Industrial Blvd., Suite #800, Peachtree Corners, GA 30071.

[2] Capitalized terms not otherwise defined herein are shall be given the meaning ascribed to them in the Motion.

2.     By prosecuting the Memphis Action, First Horizon violated the automatic stay provided by section 362(a) of the Bankruptcy Code.

3.     First Horizon Bank and its agents, including its attorneys, violated the automatic stay by the filing of the Memphis Complaint and other actions taken to date in the Tennessee Court.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

4.     The Motion is GRANTED; and

5.     First Horizon Bank and its agents, including its attorneys, are hereby enjoined from prosecuting the Memphis Action, including without limitation requesting appointment of a receiver for the Equipment or the Debtors' Stores, and seeking any other relief that would in any way interfere with the Debtors' pending sales of the Debtors' Stores and Equipment.

6.     This Court shall retain its exclusive jurisdiction over any claims by First Horizon Bank with respect to the Equipment and the Debtors' Stores, and any other actions by First Horizon Bank that in any way would affect the administration of the Debtors' estates.

Dated: _____, 2023
Birmingham, Alabama

_____
TAMARA O. MITCHELL
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**The Memphis Complaint
(without Exhibits)**

| STATE OF TENNESSEE<br>30th JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS\*\*** | DOCKET NUMBER<br>CH- 23-1418-2 |
|---|---|---|

| Plaintiff | Defendant |
|---|---|
| **First Horizon Bank** | Premier Holdings, LLC, et al. |

TO:    (NAME AND ADDRESS OF DEFENDANT)

**Premier Holdings, LLC**

**2660 Eastchase Lane, Ste 300**

**Montgomery, AL 36117**

Method of Service:

☐ Shelby County Sheriff
☑ Private Process Server
☐ Out of County Sheriff\*
☐ Secretary of State\*
☐ Comm. Of Insurance\*
☐ Certified Mail
☐ Other
  \*Attach Required Fees

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your defense to this action must be made within thirty (30) days from the date this summons is served upon you. You must file your defense with the Clerk of the Court and send a copy to the Plaintiff/Plaintiff's attorney at the address listed below. If you fail to defend this action within thirty (30) days of service, judgment by default may be rendered against you for the relief sought in the complaint. Questions regarding this summons and the attached documents should be addressed to the Attorney/Plaintiff listed below.

| Attorney for Plaintiff or Plaintiff if filing Pro Se:<br>(Name, address & telephone number)<br>**Clarence A. Wilbon**<br>**Adams and Reese LLP**<br>**6075 Poplar Avenue, Ste 700**<br>**Memphis, TN 38119** | ISSUED ___1___ of ___November___, 20 _23_<br><br>W. Aaron Hall, Clerk and Master<br><br>By: _____<br>          Deputy Clerk & Master<br>140 Adams, Room 308   Memphis, TN 38103 |
|---|---|
| TO THE SHERIFF:<br><br>_____<br><br>_____ | Came to hand<br><br>_____ day of _____<br><br>Sheriff |

| **CERTIFICATION (IF APPLICABLE)** ||
|---|---|
| I, W. Aaron Hall, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | W. Aaron Hall, Clerk & Master<br><br>By: _____<br>                    D. C. & M. |

\*\*Submit one original and one copy for each defendant to be served.

♿ If you need accommodations because of a **disability**, please call the ADA Coordinator at ( 901)222-2357.
**For questions regarding scheduling or filing, please contact the court.**

**Notice of Personal Property Exemption:**
  TO THE DEFENDANT(S):
    Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state docket number on list.

## RETURN OF SERVICE OF SUMMONS

I hereby certify that I **HAVE** served the within summons:

By delivering on the_____day of_____, 20_____at_____am/pm a copy of the

summons and a copy of the Complaint to the following Defendant _____

at _____

_____          By:_____
Signature of person accepting service                        Sheriff or other authorized person to serve process

## RETURN OF NON-SERVICE OF SUMMONS

I hereby certify that I **HAVE NOT** served the within summons:

To the named defendant_____because _____

is (are) not to be found in this county after diligent search and inquiry for the following reason(s):_____.

This_____day of_____, 20 _____

                                                By:_Sheriff or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the_____day of_____, 20_____, I sent, postage prepaid, by registered return receipt

mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH-_____to the

defendant_____. On the_____day of_____, 20_____, I

received the return receipt, which had been signed by_____on the_____day of _____,

20_____. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| Sworn to and subscribed before me on this_____day of | Signature of Plaintiff, Plaintiff's attorney or other person authorized by statute to serve process. |
|---|---|
| _____ , **20** _____ . | |
| Signature of_____Notary Public or_____ Deputy Court Clerk: | |
| _____ | _____ |
| My Commission Expires: | |
| ATTACH RETURN<br><br>RECEIPT  HERE<br><br>(IF APPLICABLE) | |

# IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE
## 30TH JUDICIAL DISTRICT, SHELBY COUNTY

| | | |
|---|---|---|
| FIRST HORIZON BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. _____ |
| | ) | |
| PREMIER HOLDINGS, LLC; | ) | |
| PREMIER HOLDINGS OF GEORGIA, LLC; | ) | |
| and JAIPAL GILL; | ) | |
| | ) | |
| Defendants. | ) | |

Part II

SHELBY COUNTY
CHANCERY COURT
NOV 01 2023
W. AARON HALL, C & M
TIME:_____ BY:_____

## VERIFIED COMPLAINT FOR BREACH OF CONTRACT, APPOINTMENT OF RECEIVER, AND OTHER INJUNCTIVE AND EQUITABLE RELIEF

Plaintiff, First Horizon Bank ("First Horizon"), as successor-in-interest to IBERIABANK, states the following for its Complaint against Defendants Premier Holdings, LLC; Premier Holdings of Georgia, LLC; and Jaipal Gill (collectively the "Premier Obligors" or the "Defendants"):

## I.     THE PARTIES

1.      Plaintiff, First Horizon is the banking subsidiary of First Horizon Corporation, a national corporation of regional banking organized and existing under the laws of the United States, with its principal place of business located at 165 Madison Avenue, Memphis, Tennessee 38103.

2.      Defendant, Premier Holdings, LLC ("Premier Holdings") is an Alabama limited liability company with its principal place of business located at 2660 Eastchase Lane, Suite 300, Montgomery, Alabama 36117. Premier Holdings' only member, Manraj Sidhu, died on May 24, 2022. The LLC interest of Premier Holdings is now held by Joginder Sidhu as the Personal

Representative of the Estate of Minraj Sidhu, currently pending as case no. 22-00416 in the Probate Court of Montgomery County, Alabama.

3.     Defendant, Premier Holdings of Georgia, LLC ("Premier Holdings of Georgia") is a Georgia limited liability company with its principal place of business located at 7078 Peachtree Industrial Blvd., Suite 800, Peachtree Corners, Georgia 30071. Premier Holdings of Georgia's only member, Minraj Sidhu, died on May 24, 2022. The LLC interest of Premier Holdings of Georgia is now held by Joginder Sidhu as the Personal Representative of the Estate of Manraj Sidhu, currently pending as case no. 22-00416 in the Probate Court of Montgomery County, Alabama.

4. Defendant Jaipal Gill ("Gill") is an individual resident of Georgia.

## II.     JURISDICTION AND VENUE

5.     This Court has personal jurisdiction over this cause pursuant to, *inter alia*, Tenn. Code Ann. §§ 16-11-102, 16-11-103, 20-2-222 and 20-2-223.

6.     Venue is proper in this Court pursuant to, *inter alia*, Tenn. Code Ann. § 20-4-101.

## III.     PRELIMINARY STATEMENT

7.     This action arises from Premier Obligors' breach and default of the terms of certain loan agreements, promissory notes, security agreements, mortgages, and guaranty agreements executed by Defendants in favor of First Horizon. First Horizon made demand for payment of all amounts currently due from Premier Obligors on July 7, 2023, but payment has not been received. Pursuant to the governing documents and applicable law, First Horizon seeks monetary damages and the appointment of a receiver to manage, operate and ultimately liquidate the remaining collateral pledged and assigned to First Horizon by Premier Obligors, as well as other extraordinary relief.

8. The appointment of a receiver in this matter will (i) protect First Horizon's interest in the collateral real and personal property ("Collateral) (which was pledged to induce First Horizon to

make the loans underlying Defendants' obligations to First Horizon and also serves as the primary source for repaying the loans); (ii) protect the Collateral from waste; (iii) preserve the value of the Collateral; (iv) and will allow First Horizon and the Court to properly account for and collect the income derived from the Collateral and any operations of the Premier Entities.

9. First Horizon also seeks temporary and permanent injunctions restraining and enjoining the Premier Entities and their officers, directors, employees, agents, managers, shareholders, principals, and/or owners (of all or any portion of an interest in the Premier Entities), or anyone acting on behalf of or in concert with the Premier Entities, from transferring, disposing, wasting, and/or converting all or any portion of any rents, royalties, issues, profits, revenue, income, or other proceeds of any kind whatsoever, derived, generated, or related to or from the Collateral, and any other property securing the indebtedness owed.

## IV. FACTUAL ALLEGATIONS

## MONTGOMERY, ALABAMA BURGER KING

10.     First Horizon provided construction financing to Premier Holdings for the construction of a Burger King restaurant in Montgomery, Alabama, which consisted of one loan to finance the purchase of the leasehold interest and the construction of the restaurant building (the "Montgomery Loan").

11.     On September 4, 2015, to evidence the Montgomery Loan, Premier Holdings executed a Promissory Note (the "Montgomery Note") to First Horizon in the maximum amount of $1,040,000.00, bearing interest at a fixed rate equal to 4.250% per anum, and with an original maturity date of September 5, 2022, as amended on March 31, 2020.

12.     To induce First Horizon to make the underlying loan, the Montgomery Note is secured by a leasehold construction mortgage and an assignment of construction contracts executed September 4, 2015 by Premier Holdings thereby pledging to First Horizon all of Premier Holdings'

3

right, title, and interest in, to, and under its leasehold interest in the real property commonly known as 4010 Atlanta Highway, Montgomery, Alabama 36109, including all buildings, improvements, and fixtures on, and royalties and profits arising from, the collateral property.

13.     The Montgomery Note was made subject to an existing Commercial Guaranty executed April 10, 2015 by Premier Kings, Inc. (the "Montgomery Guaranty"), thereby unconditionally guaranteeing full payment and performance of Premier Holdings' obligations relating to indebtedness then existing and thereafter arising "on an open and continuing basis."

14.     On November 14, 2022, Premier Holdings, Premier Kings, Inc., and First Horizon executed an Extension Agreement (the "Montgomery Loan Extension") thereby extending the Montgomery Loan's maturity date to September 5, 2023.

15.     The Montgomery Loan has matured and the Premier Obligors have failed to pay the outstanding principal balance and all other amounts due and owing to First Horizon under the Loan Documents.

16.     A true and correct copy of First Horizon Bank's loan agreement, promissory note, leasehold construction mortgage, assignment of construction contracts, financing statement, amendment, extension agreement, and commercial guaranty relating to the Montgomery Loan are attached hereto as composite **Exhibit A** and incorporated herein by reference.

### HARPERSVILLE, ALABAMA BURGER KING

17.     First Horizon provided purchase money financing to Premier Holdings for the purchase of a Burger King restaurant in Harpersville, Alabama, which consisted of one loan to finance the purchase of the real property and construction of the restaurant building (the "Harpersville Real Estate Loan"), and a second loan to finance the purchase of all furniture, fixtures, and equipment inside the restaurant (the "Harpersville Equipment Loan," and collectively with the Harpersville Real Estate Loan, the "Harpersville Loans").

4

18.    On November 27, 2018, evidencing the Harpersville Loans, Premier Holdings executed two Promissory Notes to First Horizon in the maximum amounts of $1,242,000.00 (the "Harpersville Real Estate Note") and $392,500.00 (the "Harpersville Equipment Note" and collectively with the Harpersville Real Estate Note, the "Harpersville Notes") bearing interest at a variable rate equal to the LIBOR Rate (as defined in the Harpersville Loan Agreement dated November 27, 2018) plus 2.25% per annum.

19.    To induce First Horizon to make the underlying loan, the Harpersville Notes are secured by a mortgage, security agreement, and assignment of rents and leases executed November 27, 2018 by Premier Holdings thereby pledging to First Horizon all of Premier Holdings' right, title, and interest in and to the real property commonly known as 5482 US-280, Harpersville, Alabama 35078, including all buildings, improvements, and fixtures on, and royalties, leases, rents, and profits arising from, the collateral property.

20.    As further security for the Harpersville Loans, First Horizon required two guarantors agree to ensure payment and performance of Premier Holdings under the Harpersville Loans. Manraj Sidhu, deceased, and Premier Kings, Inc. executed a Guaranty Agreement on November 27, 2018 thereby unconditionally guaranteeing the prompt and full payment and performance of Premier Holdings under the Harpersville Notes (the "Harpersville Guaranty").

21.    On December 27, 2019, Premier Holdings executed and delivered to First Horizon Amended, Restated, and Increased promissory notes thereby increasing the original principal amounts of the Harpersville Real Estate Loan to $1,355,387.20 and the Harpersville Equipment Loan to $460,022.54 (collectively, the "Amended and Restated Harpersville Notes").

22.     Pursuant to the Harpersville Loan Agreement, the Harpersville Real Estate Note's maturity date is November 27, 2025, and the Harpersville Equipment Note's maturity date is November 27, 2023.

23.     Pursuant to the Harpersville Loan Agreement, the rate charged upon the Harpersville Loans converted from LIBOR plus 2.25% to the 1-month Chicago Mercantile Exchange ("CME") Term Secured Overnight Funding Rate ("SOFR") plus 2.36448%, effective July 5, 2023, by virtue of the LIBOR-Conversion letter issued by First Horizon to Premier Holdings on May 26, 2023 (the "Harpersville LIBOR-Conversion letters").

24.     A true and correct copy of First Horizon's loan agreement, promissory notes, amended and restated promissory notes, mortgage, security agreement, financing statement, guaranty agreement, and Harpersville LIBOR-Conversion letters relating to the Harpersville Burger King Loans are attached hereto as composite **Exhibit B** and incorporated herein by reference.

## NAHUNTA, GEORGIA BURGER KING

25.     First Horizon provided purchase money financing to Premier Holdings of Georgia for the purchase of a Burger King restaurant in Nahunta, Georgia, which consisted of one loan to finance the purchase of the real property and construction of the restaurant building (the "Nahunta Real Estate Loan"), and a second loan to finance the purchase of all furniture, fixtures, and equipment inside the restaurant (the "Nahunta Equipment Loan," and collectively with the Nahunta Real Estate Loan, the "Nahunta Loans").

26.     On March 1, 2019, evidencing the Nahunta Loans, Premier Holdings of Georgia executed two Promissory Notes to First Horizon in the maximum amounts of $1,365,200.00 (the "Nahunta Real Estate Note") and $517,500.00 (the "Nahunta Equipment Note" and collectively with the Nahunta Real Estate Note, the "Nahunta Notes") bearing interest at a variable rate equal to the

LIBOR Rate (as defined in the Nahunta Loan Agreement dated March 1, 2019) plus 2.25% per annum.

27.     To induce First Horizon to make the underlying loan, the Nahunta Notes are secured by a deed to secure debt, security agreement, assignment of rents and leases, and assignment of contracts executed March 1, 2019 by Premier Holdings of Georgia thereby pledging to First Horizon all of Premier Holdings of Georgia's right, title, and interest in and to the real property commonly known as 13200 West Cleveland Street, Nahunta, Georgia 31553, including all buildings, improvements, and fixtures on, and royalties, leases, rents, and profits arising from, the collateral property.

28.     As further security for the Nahunta Loans, First Horizon required several guarantors agree to ensure payment and performance of Premier Holdings of Georgia under the Nahunta Loans. Manraj Sidhu, deceased, Premier Kings of Georgia, Inc., and Defendant Jaipal Gill executed a Guaranty Agreement on March 1, 2019 thereby unconditionally guaranteeing the prompt and full payment and performance of Premier Holdings of Georgia under the Nahunta Notes (the "Nahunta Guaranty").

29.     The Nahunta Loans would not have been made but for the Nahunta Guaranty executed by the guarantors, including Defendant Gill.

30.     Pursuant to the Nahunta Loan Agreement as amended on October 23, 2019, the Nahunta Real Estate Note's maturity date is March 1, 2026, and the Nahunta Equipment Note's maturity date is March 1, 2024. All outstanding principal and interest was to be due in a balloon payment on the maturity dates of the Nahunta Loans.

31.     Pursuant to the Nahunta Loan Agreement, the rate charged upon the Nahunta Loans converted from LIBOR plus 2.25% to the 1-month CME Term SOFR plus 2.36448%, effective July

5, 2023, by virtue of the LIBOR-Conversion letter issued by First Horizon to Premier Holdings of Georgia on May 26, 2023 (the "Nahunta LIBOR-Conversion letter").

32.     A true and correct copy of First Horizon's loan agreement (as amended), promissory notes, deed to secure debt, security agreement, assignment of rents and leases, assignment of contracts, financing statement, guaranty agreement, and Nahunta LIBOR-Conversion letter relating to the Nahunta Loans are attached hereto as composite **Exhibit C** and incorporated herein by reference.

## PORT WENTWORTH, GEORGIA BURGER KING

33.     First Horizon provided purchase money financing to Premier Holdings of Georgia for the purchase of a Burger King restaurant in Port Wentworth, Georgia, which consisted of one loan to finance the purchase of the leasehold interest and construction of the restaurant building (the "Port Wentworth Real Estate Loan"), and a second loan to finance the purchase of all furniture, fixtures, and equipment inside the restaurant (the "Port Wentworth Equipment Loan," and collectively with the Port Wentworth Real Estate Loan, the "Port Wentworth Loans").

34.     On May 17, 2019, evidencing the Port Wentworth Loans, Premier Holdings of Georgia executed two Promissory Notes to First Horizon in the maximum amounts of $1,030,000.00 (the "Port Wentworth Real Estate Note") and $517,500.00 (the "Port Wentworth Equipment Note" and collectively with the Port Wentworth Real Estate Note, the "Port Wentworth Notes") bearing interest at a variable rate equal to the LIBOR Rate (as defined in the Port Wentworth Loan Agreement dated May 17, 2019) plus 2.25% per annum.

35.     To induce First Horizon to make the underlying loan, the Port Wentworth Notes are secured by a leasehold accommodation deed to secure debt, security agreement, assignment of rents and leases executed May 17, 2019 by Premier Kings of Georgia, Inc., as amended on October

22, 2019, thereby pledging to First Horizon all of its right, title, and interest in and to the real property commonly known as 7306 GA-21, Port Wentworth, Georgia 31407, including all buildings, improvements, and fixtures on, and royalties, leases, rents, and profits arising from, the collateral property.

36.     As further security for the Port Wentworth Loans, First Horizon required several guarantors agree to ensure payment and performance of Premier Holdings of Georgia under the Port Wentworth Loans. Manraj Sidhu, deceased, Premier Kings of Georgia, Inc., and Defendant Gill executed a Guaranty Agreement on May 17, 2019 thereby unconditionally guaranteeing the prompt and full payment and performance of Premier Holdings of Georgia under the Port Wentworth Notes (the "Port Wentworth Guaranty").

37.     Pursuant to the Port Wentworth Loan Agreement, the Port Wentworth Real Estate Note's maturity date is May 16, 2026 and the Port Wentworth Equipment Note's maturity date is May 16, 2024.

38.     Pursuant to the Port Wentworth Loan Agreement, the rate charged upon the Port Wentworth Loans converted from LIBOR plus 2.25% to the 1-month CME Term SOFR plus 2.36448%, effective July 5, 2023, by virtue of the LIBOR-Conversion letter issued by First Horizon to Premier Holdings of Georgia on May 26, 2023 (the "Port Wentworth LIBOR-Conversion letter").

39.     A true and correct copy of First Horizon's loan agreement (as amended), promissory notes (as amended), deed to secure debt, security agreement, assignment of rents and leases (as amended), financing statement, guaranty agreement, and Port Wentworth LIBOR-Conversion letter relating to the Port Wentworth Loans are attached hereto as composite **Exhibit D** and incorporated herein by reference.

40.     The Montgomery, Harpersville, Nahunta, and Port Wentworth Loan Documents (collectively the "Loan Documents") are governed by the laws of the State of Alabama.

## EVENTS OF DEFAULT JEOPARDIZING COLLATERAL

41.     Premier Obligors have defaulted on the terms of the Loan Documents by failing to pay principal and interest on the above-referenced loans when due; failing to cure the defaults existing by virtue of the death of Guarantor Manraj Sidhu; failing to cure the defaults existing by virtue of Guarantors Premier Kings, Inc. and Premier Kings of Georgia, Inc. filings petitions for relief under the Bankruptcy Code on October 25, 2023, and failing to comply with a number of other terms and covenants under the Loan Documents (the "Defaults").

42.     First Horizon notified the Premier Obligors about these Defaults, which were never cured.

43.     Premier Obligors' failure to cure these Defaults constitutes Events of Default and breaches of the Premier Obligors' obligations under the Loan Documents.

44.     Consequently, on July 7, 2023, First Horizon, pursuant to its rights and remedies under the Loan Documents, declared the Notes immediately payable and demanded payment from Premier Holdings, Premier Holdings of Georgia, the Estate of Manraj Sidhu, and Jaipal Gill.[1]  In response thereto, Premier Holdings, with First Horizon's consent, sold the real estate, furniture, fixtures, and equipment of one of Premier Holdings' restaurants not referenced herein. Premier Holdings paid off the real estate and equipment loans secured by the assets sold with the proceeds thereof; however, since the July 7, 2023 demands, only partial payments have been made on the loans referenced herein. The Premier Obligors still owe First Horizon the outstanding indebtedness under

---

[1] Payment was also demanded from Guarantors Premier Kings, Inc. and Premier Kings of Georgia, Inc. on July 7, 2023, one-hundred and eleven days before the Premier Kings-entities filed their respective voluntary petitions for Chapter 11 Bankruptcy.

the Loan Documents evidencing the loans described herein. True and correct copies of the July 7, 2023 demands are attached hereto as composite **Exhibit E** and incorporated herein by reference.

45.        As of February 10, 2023 and according to a sworn proof of claim filed in the Probate Court of Montgomery County, Alabama, Premier-related entities owed $5,050,326.00 to Burger King Company, LLC for past-due royalties, advertising contributions, and other sums owed under their Burger King Franchise Agreements. To the extent any of the amount amounts claimed by Burger King relate to the Montgomery, Harpersville, Nahunta, and/or Port Wentworth Burger Kings, Premier Holdings and Premier Holdings of Georgia have further defaulted under their Loan Agreements with First Horizon by failing to ensure compliance with Borrowers' covenants related to their Burger King Franchise Agreements. *See, e.g.*, Exhibit B, Loan Agreement, §§ 5.23 & 5.31. A true and correct copy of the Burger King Company, LLC Claim is attached hereto and incorporated herein by reference as **Exhibit F**.

46.        On March 14, 2023, an affiliate of the Premier Obligors – Premier Cajun Kings, LLC ("PCK"), which owned approximately 30 Popeyes Louisiana Kitchen restaurants – filed a voluntary petition in the U.S. Bankruptcy Court for the Northern District of Alabama for relief under Chapter 11 of the Bankruptcy Code, reporting approximately $50,000,000.00 in liabilities.

47.        PCK's Chief Restructuring Officer, David M. Baker, filed his Declaration in Support of First-Day Motions setting forth the dire financial condition of PCK and its 30 stores. A true and correct copy of Mr. Baker's Declaration is attached hereto and incorporated herein by reference as **Exhibit G**.

48.        The Bankruptcy Court approved a sale of substantially all of PCK's assets; however, the proceeds were not sufficient to allow the bankruptcy case to continue through Chapter 11. On July 13, 2023, PCK's bankruptcy case was converted to a case under Chapter 7 of the

Bankruptcy Code. A true and correct copy of the Voluntary Conversion Notice is attached hereto and incorporated herein as **Exhibit H.**

49.     As mentioned above, on October 25, 2023, Premier Kings, Inc. and Premier Kings of Georgia, Inc. (the "Premier Kings Guarantors") each filed voluntary petitions for the relief under Chapter 11 of the Bankruptcy Code. In Premier Kings, Inc.'s voluntary petition, it estimated to have between 200 and 299 creditors, between $10,000,000 and $50,000,000 in assets, and between $50,000,000 and $100,000,000 in liabilities. In Premier Kings of Georgia, Inc.'s voluntary petition, it also estimated to have between 200 and 299 creditors, between $10,000,000 and $50,000,000 in assets, and between $50,000,000 and $100,000,000 in liabilities. The voluntary petitions of the Premier Kings Guarantors are attached hereto and incorporated herein as *composite* **Exhibit I.**

50.     According to a lawsuit filed by Iqbal "Peter" Sidhu, PCK and the Premier Kings Guarantors are not the only Premier-affiliates to suffer financially due to alleged mismanagement, illegal conversion of property, civil conspiracy, and other wrongful conduct. A true and correct copy of the Amended Complaint filed by Peter Sidhu is attached hereto and incorporated herein as **Exhibit J**.

51.     On October 3, 2023, Trisura Specialty Insurance Company – which insures Premier Holdings, Premier Holdings of Georgia, Premier Kings, and Premier Kings of Georgia, as well as the Montgomery, Harpersville, Nahunta, and Port Wentworth Burger Kings stores which secure the loans made the basis of this lawsuit – filed suit against Gill and Premier-affiliate entity Premier Kings of North Alabama, LLC regarding its duty to defend against allegations of breach of contract, conversion, unjust enrichment, civil conspiracy, and for an accounting. A true and correct copy of the Amended Complaint filed by Trisura Specialty Insurance Company is attached hereto and incorporated herein as **Exhibit K.**

52.     As of October 31, 2023, Premier Holdings is indebted to First Horizon in the principal amount of $4,532,130.56 plus late fees, accrued interest and default interest thereon, late fees, expenses of collection, including attorneys' fees and the cost of this action (the "Premier Holdings Indebtedness").

53.     As of October 31, 2023, Premier Holdings of Georgia is indebted to First Horizon in the principal amount of $4,532,130.56 plus late fees, accrued interest and default interest thereon, late fees, expenses of collection, including attorneys' fees and the cost of this action (the "Premier Holdings of Georgia Indebtedness," and collectively with the Premier Holdings Indebtedness, the "Indebtedness").

54.     Pursuant to the terms of the Loan Documents, Premier Holdings, Premier Holdings of Georgia, the Estate of Manraj Sidhu, and Jaipal Gill are jointly and severally obligated to pay the entire outstanding Indebtedness evidenced by the Notes, plus accruing interest, pre-judgment interest, post-judgment interest, attorneys' fees, and the costs of this action.

55.     Unless First Horizon is granted the relief requested herein, its ability to collect the Indebtedness, as well as its rights in and the value of the Collateral, may irreparably be impaired.

## V. CAUSES OF ACTION

### COUNT ONE
### BREACH OF NOTES BY PREMIER HOLDINGS, LLC

56.     First Horizon repeats and realleges paragraphs 1-55 of this Complaint as though fully set forth herein.

57.     The Montgomery Note, Harpersville Notes, and all accompanying loan documents, constitute valid and binding legal contracts between Premier Holdings and First Horizon.

58.     First Horizon is entitled to enforce those contracts, and Premier Holdings is obligated to First Horizon for payment and satisfaction of all obligations thereunder.

13

59.     Premier Holdings has breached its obligations to First Horizon by, among other things, failing to cure Events of Defaults and failing to pay First Horizon the full amount due and owing under the terms of the Notes upon demand.

60.     As a direct and proximate result of Premier Holdings' breach of the Notes, First Horizon has been damaged and is entitled to compensatory damages, including without limitation, default interest, late fees, attorneys' fees, costs of collection and of this cause incurred by First Horizon in collecting the Indebtedness.

## COUNT TWO
## BREACH OF NOTES BY PREMIER HOLDINGS OF GEORGIA, LLC

61.     First Horizon repeats and realleges paragraphs 1-60 of this Complaint as though fully set forth herein.

62.     The Nahunta Notes, Port Wentworth Notes, and all accompanying loan documents, constitute valid and binding legal contracts between Premier Holdings of Georgia, LLC and First Horizon.

63.     First Horizon is entitled to enforce those contracts, and Premier Holdings of Georgia is obligated to First Horizon for payment and satisfaction of all obligations thereunder.

64.     Premier Holdings of Georgia has breached its obligations to First Horizon by, among other things, failing to cure Events of Defaults and failing to pay First Horizon the full amount due and owing under the terms of the Notes upon demand.

65.     As a direct and proximate result of Premier Holdings of Georgia's breach of the Notes, First Horizon has been damaged and is entitled to compensatory damages, including without limitation, default interest, late fees, attorneys' fees, costs of collection and of this cause incurred by First Horizon in collecting the Indebtedness.

## COUNT THREE
## BREACH OF GUARANTY AGREEMENTS BY JAIPAL GILL

66.     First Horizon repeats and realleges paragraphs 1-65 of this Complaint as though fully set forth herein.

67.     The Nahunta Guaranty, Port Wentworth Guaranty, and all accompanying loan documents, constitute valid and binding legal contracts between Gill and First Horizon.

68.     First Horizon is entitled to enforce those contracts, and Gill is obligated to First Horizon for payment and performance of all obligations guaranteed thereunder.

69.     Gill has breached his obligations to First Horizon by, among other things, failing to cure Events of Defaults and failing to pay First Horizon the full amounts due and owing under the terms of the Notes upon demand pursuant to the Nahunta and Port Wentworth Guaranty Agreements.

70.     As a direct and proximate result of Gill's breach of the Guaranty Agreements, First Horizon has been damaged and is entitled to compensatory damages, including without limitation, default interest, late fees, attorneys' fees, costs of collection and of this cause incurred by First Horizon in collecting the Indebtedness.

## COUNT FOUR
## RECOVERY OF PERSONAL PROPERTY AND
## ENFORCEMENT OF SECURITY AGREEMENT

71.     First Horizon repeats and realleges paragraphs 1-70 of this Complaint as though fully set forth herein.

72.     Premier Obligors secured the repayment of Notes by pledging to First Horizon the property described in the Security Agreements related to the Montgomery, Harpersville, Nahunta, and Port Wentworth Loans.

73.     The Security Agreements grant First Horizon the right to "sell, transfer, pledge, convey, make any agreement with respect to, or otherwise deal with any of the Collateral as fully and

completely as though [First Horizon] were the absolute owner thereof for all purposes." *See, e.g.*, Exhibit B, Harpersville Security Agreement, p. 7 at § 5.1(m).

74.     The Security Agreements further authorize First Horizon to take "all acts and things which [First Horizon] deems necessary to protect, preserve, maintain, or realize upon the Collateral and [First Horizon's] security interest therein." *See, e.g.*, Exhibit B, Harpersville Security Agreement, p.7 at § 5.1(n).

75.     First Horizon is entitled to immediate possession of all of the Collateral under the express terms of the Security Agreements.

### COUNT FIVE
### APPOINTMENT OF A RECEIVER

76.     First Horizon repeats and realleges paragraphs 1-75 of this Complaint as though fully set forth herein.

77.     Any interruption or temporary closure of the business of Premier Obligors could diminish the value of the Collateral pledged to First Horizon and, potentially, damage the parties to this litigation.

78.     Any interruption or termination of the Premier Obligors' Burger King Franchise Agreements could also diminish the value of the Collateral pledged to First Horizon and, potentially, damage the parties to this litigation.

79.     This Court has the authority, pursuant to Tenn. Code Ann. § 29-1-103, "to appoint receivers for the safekeeping, collection, management, and disposition of property in litigation in such court, whenever necessary to the ends of substantial justice."[2]

80.     Defendants are justly indebted to First Horizon for the Premier Obligors' Indebtedness, and Premier Obligors have agreed that First Horizon has the right to have a receiver

---

[2] The appointment of a receiver under Alabama law is justified pursuant to Ala. Code § 6-6-620.

appointed in this action under the terms of the Loan Documents. *See, e.g.,* Exhibit B, Mortgage, §15(c) at p. 10.

81.    Unless a receiver is appointed, there is imminent danger that the Collateral pledged as security for repayment of the Defendants' Indebtedness will be lost, destroyed, or diminished in value.

82.    Appointment of a receiver is necessary for First Horizon to obtain an accurate accounting regarding the Collateral, and to preserve, protect, and maximize the value of the Collateral.

83.    Preservation of the value of the Collateral is necessary to maintain a reasonable expectation of repayment of the amounts due and owing under the Loan Documents.

84.    First Horizon reasonably believes that its security in the Collateral is endangered and is likely to be rendered inadequate or lost without the immediate appointment of a receiver.

85.    The potential harm to First Horizon if a receiver is not appointed is irreparable and First Horizon has no adequate remedy at law to remedy the harm.

86.    The potential harm to First Horizon outweighs any conceivable harm to the Premier Obligors.

87.    Without immediate relief, the *status quo* may result in the loss of a significant source of repayment of the substantial sums owed under the Loan Documents. Accordingly, equitable considerations weigh in favor or the Court's appointment of a receiver of the Collateral.

88.    The proposed scope and powers of the receivership is for the Collateral and related operations and activities of Premier Obligors (collectively the "Receivership Assets and Operations") in order to marshal, preserve, maintain and liquidate the Receivership Assets and Operations.

89. Pursuant to Tenn. R. Civil P. 66 and Tenn. Code Ann. § 29-1-103, First Horizon requests that this Court appoint David Anthony, of Exo Legal PLLC, as receiver of the Receivership Assets and Operations.

90. Mr. Anthony has extensive experience in serving as a receiver over assets like the Receivership Assets and Operations, is qualified to serve as receiver of the Collateral, and is knowledgeable about the Receivership Assets and Operations. *See* Affidavit of David Anthony (attached hereto as **Exhibit K**).

**COUNT FIVE**
**TEMPORARY RESTRAINING ORDER**

91. First Horizon repeats and realleges paragraphs 1-90 of this Complaint as though fully set forth herein.

92. Pursuant to the provisions of the Loan Documents, the Premier Obligors are required to repay the Indebtedness, but have failed and refused to honor their obligations to do the same.

93. Under the terms of the Loan Documents, First Horizon has the right to take possession of the Collateral and to receive the proceeds derived from the Collateral.

94. First Horizon reasonably believes that its interest in the Collateral is endangered and likely to be lost or rendered inadequate without entry of injunctive relief preventing the Premier Obligors from transferring, disposing, wasting, and converting all or any portion of any rents, royalties, issues, profits, revenue, income, or other proceeds of any kind whatsoever, derived, generated, or related to or from the Collateral, and any other property securing the Indebtedness.

95. Therefore, in addition to the rights granted to First Horizon under the Loan Documents, equity dictates that First Horizon be granted a temporary restraining order and, upon hearing, a preliminary and permanent injunction:

18

a. Prohibiting the Premier Obligors, and their members, officers, directors, employees, agents, managers, shareholders, principals, and/or owners (of all or any portion of an interest in any of the Premier Obligors), or anyone acting on or under the Premier Obligors' behalf or at Premier Obligors' direction, from transferring, disposing, wasting, and converting all or any portion of any rents, royalties, issues, profits, revenue, income, or other proceeds of any kind whatsoever, derived, generated, or related to or from the Collateral, and any other property securing the Indebtedness owed;

b. Directing the Premier Obligors to provide an accounting to First Horizon for all royalties, issues, profits, revenue, income, or other proceeds of any kind whatsoever, derived, generated, or related to or from the Collateral, and any other property securing the indebtedness owed, that Premier Obligors have collected since July 7, 2023;

c. Directing the Premier Obligors to remit any and all royalties, issues, profits, revenue, income, or other proceeds of any kind whatsoever, derived, generated, or related to or from the Collateral and operations and activities of the Premier Obligors related thereto, and any other property securing the Indebtedness owed to the duly appointed receiver;

d. Surrender possession of the Collateral and each facility where the same is located or stored in order to allow the Receiver to operate the same;

e. Directing the Premier Obligors to disclose to First Horizon all assets or property of value which has been transferred from the Premier Obligors to any third person, independent entity, related entity, or insider since January 1, 2022; and

f. Directing the Premier Obligors to disclose all financial accounts controlled by any insider of the Premier Obligors, to include any partner, director, officer, or person in control, or any relative of any partner, director, officer, or person in control, as to the entity obligors; or any relative, partner, or corporation of which Gill is a director, officer, or person in control as to Defendant Gill.

96. First Horizon will suffer immediate and irreparable injury, loss, and damage unless the Premier Obligors and those under the Premier Obligors' control and direction are restrained and enjoined as requested hereunder.

97. Moreover, First Horizon is likely to prevail on the merits of this Complaint and the balance of equities favors entry of the requested equitable relief.

19

98.     The injuries, losses and damages to First Horizon cannot be remedied by money damages alone.

99.     Because First Horizon has no adequate remedy at law and there is a substantial likelihood that it will prevail on the merits of this Complaint, the equitable relief sought herein is appropriate.

**COUNT FIVE**
**TEMPORARY AND PERMANENT INJUNCTION**

100.     First Horizon repeats and realleges paragraphs 1-99 of this Complaint as though fully set forth herein.

101.     First Horizon has first priority perfected security interests and secured positions in the Collateral.

102.     Based on the Premier Obligors' failure to meet their obligations under the Loan Documents and the Premier Kings Guarantors filing for bankruptcy on October 25, 2023, First Horizon has a good faith and reasonable basis for being gravely concerned about the protection and preservation of the Collateral.

103.     First Horizon's concern is further justified given that Premier-affiliated entity – Premier Cajun Kings, LLC – filed for bankruptcy on March 14, 2023 (initially under Chapter 11 of the Bankruptcy Code and later converted to Chapter 7), estimating liabilities of up to $50,000,000.00 and assets below $10,000,000.00.

104.     First Horizon's concern is also justified given the numerous lawsuits that have been filed against the Premier Obligors (and against the non-party Premier Kings Guarantors) alleging breaches of various contracts, further jeopardizing First Horizon's security interest in the Collateral.[3]

---

[3] See, e.g., *Lyndon Southern Insurance Company v. Premier Kings, Inc.* (N.D. Ala., Case No. 2:21-cv-00622); *CTO20 Perimeter, LLC v. Premier Holdings of Georgia, LLC* (State Court of DeKalb County, Ga., Case No. 23A04211); *J.I.L. Enterprises v. Premier Holdings of Georgia* (Circuit Court of Jefferson County, Ala., Case No. 68-cv-23-

105.     Absent entry of a temporary injunction restraining and enjoining the Premier Obligors from collecting, transferring or disposing of any of the Collateral, First Horizon reasonably believes that the Collateral may be transferred, disposed, wasted, expended, converted and/or destroyed in violation of the Loan Documents, thereby causing irreparable harm to First Horizon.

106.     As manifested in the foregoing factual allegations, First Horizon is likely to prevail on the merits of this action.

107.     First Horizon has sustained and will continue to sustain immediate and irreparable injury as a result of the Premier Obligors' voluntary and intentional actions concerning its obligations under the Loan Documents, and its failure and refusal to honor those obligations.

108.     With respect to such conduct, First Horizon has no adequate remedy at law.

109.     The balance of the equities favors the issuance of a temporary injunction in favor of First Horizon.

110.     Accordingly, First Horizon requests that this Court enter a temporary injunction requiring the Premier Obligors, its principals and agents to:

a.     Preserve intact all Collateral, and any income derived therefrom, currently in their possession or subsequently received pending the appointment of a receiver;

b.     Immediately pay, upon appointment of a receiver, all income in the possession or subsequently received from the Collateral or the Premier Obligors' operations and activities to the receiver;

c.     Surrender possession of the real and personal property Collateral in order to allow the receiver to control and manage the same as well as the operations and activities of the Premier Obligors; and

d.     Turn over to the receiver all books, records, and accounts relating to and/or affecting the Collateral.

900073); and *River Bank & Trust v. Premier Holdings, LLC* (Circuit Court of Montgomery County, Ala., Case No. 03-cv-23-901062).

21

111. Upon the hearing of this cause, First Horizon requests that the Court issue a permanent injunction prohibiting the Premier Obligors and its officers, directors, employees, agents, managers, representatives, shareholders, principals, and/or owners (of all or any portion of an interest in the Premier Obligors) and those under the control and direction of the Premier Obligors from transferring, disposing, wasting, and converting all or any portion of any of the Collateral and directing the Premier Obligors to turn over to the receiver all Collateral in their possession or subsequently received.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED**, First Horizon prays that judgment be entered in its favor and against the Defendants as follows:

1. That First Horizon be awarded judgment against Premier Holdings in the amount of $4,532,130.56, plus late fees, further accruing interest, collection costs, attorneys' fees and all cost incurred in connection with this action;

2. That First Horizon be awarded judgment against Premier Holdings of Georgia and Jaipal Gill, jointly and severally, in the amount of $4,532,130.56, plus late fees, further accruing interest, collection costs, attorneys' fees and all cost incurred in connection with this action;

3. Appointment of David Anthony, of Exo Legal PLLC, as receiver (the "Receiver" of the receivership Assets and Operations;

4. Authorize, but not require the Receiver to maintain or operate the businesses of the Premier Obligors and to take such actions which the Receiver, in his discretion, deems appropriate, including without limitation those actions necessary to complete the processing, collection, preservation and liquidation of the Receivership Assets and Operations;

5. Authorize the Receiver to take physical possession of the Receivership Assets and Operations and to manage, operate and protect the Receivership Assets and Operations, and to take such actions as deemed reasonable and necessary by the Receiver to take possession of the Receivership Assets and Operations, wherever located, to exercise full and exclusive control over, to prevent waste, and to preserve, manage, secure, safeguard and sell the Receivership Assets and Operations. By management and operation of the Receivership Assets and

Operations the Receiver shall collect, marshal, preserve and liquidate all of the Receivership Assets and Operations and any proceeds of the foregoing;

6. Authorize the Receiver to obtain, as necessary, all of the Premier Obligors' tangible and electronic business records and documents pertaining to the Receivership Assets and Operations, all notes and correspondence pertaining to the Receivership Assets and Operations, all computer databases, files, ledgers, journals, and all accounting records pertaining to the Receivership Assets and Operations, and to the extent that the Premier Obligors have employees who are able, and at the sole expense of the Receiver, order the Premier Obligors to reasonably cooperate in providing such technical assistance as necessary to allow the Receiver to obtain all computer databases and files pertaining to the Receivership Assets and Operations and proceeds of the foregoing, including but not limited to providing computer software manuals, technical instructions, software, and other assistance as necessary to enable the Receiver to perform its duties hereunder;

7. Order that the Receiver shall have all of the powers and authority usually held by receivers and reasonably necessary to accomplish the purposes herein stated, including without limitation, the specific powers to:

   a. Take from the Premier Obligors and all persons or entities in active participation with the Premier Obligors, including without limitation, the Premier Obligors' officers, managers, employees, agents, representatives, attorneys, accountants, lenders, contractors, subcontractors, and all who claim under them (hereafter called "Premier Obligors and Premier Obligors' Representatives"), or all persons or entities acting in participation with the Premier Obligors, immediate possession and control of the Receivership Assets and Operations, to the exclusion of the Premier Obligors or Premier Obligors' Representatives or all persons or entities as acting in active constant participation with the Premier Obligors. Specifically, the Receiver shall have the power to take possession of the Receivership Assets and Operations and the Premier Obligors' Books and Records, computers and equipment, and all files, client files, customer files, agreements and any and all other documents and tangible things used in and for the operation of the Properties or pertaining thereto;

   b. Administer the Receivership Assets and Operations and all personal property used or associated therewith, regardless of where such property is located, including but not limited to inventory, equipment, general intangibles, accounts receivables, accounts receivable proceeds, deposit accounts, savings accounts, money market accounts, and all other demand deposit accounts that contain the proceeds of accounts and accounts receivable, checks, drafts, notes, accounts receivable, records, contracts, claims, leases, and

files; furthermore, the Receiver shall take control of all deposit accounts maintained by the Premier Obligors or Receivership Assets and Operations containing the proceeds of accounts and account receivables and manage and preserve the Receivership Assets and Operations as reasonably necessary to maximize the value and prevent diminution in value;

c. Complete the processing of the Premier Obligors' inventory, materials, and equipment and sell or dispose of such inventory, materials, and equipment in a reasonable manner without further order of the Court, as deemed reasonably necessary by the Receiver, in his discretion.. To collect in a timely fashion and liquidate in a commercially reasonable manner all of the Receivership Assets and Operations. The Receiver shall have, in the Receiver's reasonable discretion and with the written approval of First Horizon, the authority to market, execute agreements to sell, or otherwise dispose of the Receivership Assets and Operations.

d. The power to limit access to all of the Premier Obligors' Books and Records relating to the Properties wherever located, as necessary to preserve and protect the Receivership Assets and Operations;

e. To take all actions necessary to collect receivables and claims arising from the Receivership Assets and Operations Property;

f. To take possession of all deposit accounts of the Premier Obligors or Premier Obligors' Representatives containing funds therein relating to the Receivership Assets and Operations;

g. To open, transfer and change all trade accounts relating to the Receivership Assets and Operations so that all such accounts are in the name of the Receiver and make disbursements and payment of expenses incurred by the Receiver in accordance with this Order;

h. To the extent First Horizon advances funds, if it elects to do so, or from receipts or from any other funds available to the Receiver, to collect and liquidate the Receivership Assets and Operations in the event that the Receiver determines that such collection efforts are appropriate;

i. To hire such employees as an expense of the receivership estate, on a contract basis, wherever possible, or as employees where required by applicable state or federal law, either directly or through personnel, necessary to manage, preserve and liquidate the Receivership Assets and Operations;

j.  To use the personnel hired to assist the Receiver in the performance of its duties hereunder and to hire counsel as necessary to carry out the duties of the Receiver under this Order;

k.  To make, enforce, modify, negotiate and enter into such contracts or agreements as the Receiver may deem reasonably appropriate to collect, manage, preserve and liquidate the Receivership Assets and Operations; provided that no contract or agreement shall extend beyond the termination of the receivership without the permission of the Court;

l.  To commence such action as may be necessary in its name as the Receiver to collect any amounts due to the Premier Obligors related to the Receivership Assets and Operations, and to pursue and collect payments due, and other amounts which may be owed by account debtors of the Premier Obligors, accrued as of the date of this Order or hereafter accruing, and if the Receiver so elects, to be added or substituted as First Horizon in any such actions already commenced by the Premier Obligors or Premier Obligors' Representatives;

m.  To obtain, review and analyze the Receivership Assets and Operation's past records, including without limitation accounting records, banking records, and any other books or documents necessary to determine whether there are potential claims or rights against other persons and entities, and potential agreements arising out of the ownership and operation of the Receivership Assets and Operations or otherwise to perform the duties of the Receiver;

n.  To obtain and renew all insurance policies that the Receiver deems reasonably necessary to manage and preserve the Receivership Assets and Operations and the receivership estate and the interest of the Receiver and the parties to this action;

o.  To notify any insurers of the Receivership Assets and Operations of the pendency of these proceedings and that, subject to the prior rights of any person or entity possessing a lien on the Receivership Assets and Operations, any proceeds paid under such property shall be paid to the Receiver; the Receiver may contact any insurer and renew any insurance policy on the Receivership Assets and Operations as necessary to preserve and protect the receivership estate and the Receivership Assets and Operations;

p.  To pay obligations incurred prior to the entry of the Order by the Premier Obligors or Premier Obligors' Representatives, or other persons or entities charged with the responsibility of maintaining and operating the Receivership Assets and Operations (i) if such

obligations are deemed by the Receiver to be necessary or advisable for the continued maintenance, collection, and liquidation of the Receivership Assets and Operations; and (ii) the Receiver has obtained First Horizon's written consent to pay such obligation.

q.   To use any proceeds and receipts from the Receivership Assets and Operations and such funds as may be advanced by First Horizon for the payment of reasonable and necessary expenses of the receivership and of the Property;

r.   To borrow from First Horizon on such other reasonable terms as may be acceptable to the Receiver, funds that may meet the needs of the receivership estate in excess of the income from the receivership estate, including the right to issue receiver certificates in exchange for funds advanced by First Horizon during the term of this receivership, and such receiver certificates shall be a first and prior lien and preference claim upon the receivership estate or a portion of it at the Receiver's election. Any amounts advanced to the Receiver by First Horizon may be added to the indebtedness owing by the Premier Obligors under the terms of the Loan Documents;

s.   To deal with, hire or terminate present or future employees of the Premier Obligors or the receivership estate in connection with the Receivership Assets and Operations including the hiring of legal counsel and accountants as reasonable and necessary to fulfill the duties and responsibilities hereunder. The Receiver may pay reasonable fees and expenses incurred by legal counsel, accountants, collectors, agents, collection attorneys or agencies, or other professionals in connection with the Receivership Assets and Operations from the collections made by the Receiver. The Receiver may, but is not obligated to, employ any employees or independent contractors of the Premier Obligors as the Receiver in its sole and absolute discretion deems appropriate to assist in the processing of inventory, collection, maintenance, and liquidation of the Receivership Assets and Operations;

t.   To apply for, obtain and renew as necessary all licenses and permits required for the collection, maintenance, or liquidation of the Receivership Property and Operations, including all trademarks, copyrights, patent, licenses, permits, sales and use tax licenses, tax license and permits, and other intellectual property rights that may be needed or required for the preservation of the Receivership Property and Operations. The Receiver may apply for and obtain appropriate forms from the IRS to use the taxpayer identification

numbers of the Premier Obligors if necessary to collect any of the Property;

u.  To institute such legal actions as the Receiver reasonably deems necessary including actions necessary to enforce this Order to protect the Receivership Assets and Operations and to recover possession of the Receivership Assets and Operations from any persons or entities who may now or in the future be wrongfully possessing or occupying the Receivership Assets and Operations or any part thereof, in this or any other jurisdictions; and

v.  To do such other lawful acts not inconsistent with this Order as the Receiver reasonably deems necessary to manage and preserve the receivership estate and to perform such other functions and duties as may from time to time be required and authorized by this Court, by the laws of the State of Tennessee or by the laws of the United States of America.

8.  Order the Premier Obligors' Representatives be enjoined from:

a.  Taking any action with respect to the Receivership Assets and Operations without the Receiver's express written consent and withdrawing any funds from any First Horizon or other depository account relating to the Receivership Assets and Operations;

b.  Terminating, or causing to be terminated, any license, permit, contract or agreement relating to the Receivership Assets and Operations or the operation of any of the businesses on such property;

c.  Remaining in possession of the Receivership Assets and Operations or otherwise interfering with the operation of the Property or the Receiver's discharge of its duties hereunder;

d.  Destroying any of the Premier Obligors' Books and Records, deleting any information from computers or computer records or databases, or taking any other action to destroy or remove materials or information of or concerning the Receivership Assets and Operations; or

e.  Taking any other action that may interfere with the performance of the duties by the Receiver.

9.  Grant First Horizon and/or the duly appointed Receiver injunctive relief which, among other things:

a.    Enjoins the Premier Obligors and its officers, directors, employees, agents, managers, representatives, shareholders, principals, and/or owners (of all or any portion of an interest in the Premier Obligors) under the control and direction of the Premier Obligors from interfering with the duties and rights of the Receiver and/or First Horizon;

b.    Directs payment of any revenue, income, profits, or other proceeds related to or received for the Collateral to the Receiver and/or First Horizon;

c.    Provides all other relief as requested herein and as may be necessary to preserve and protect the Collateral and aid in the duties conferred on the Receiver and/or First Horizon by this Court to prevent the unauthorized transferring, disposing, wasting, and converting of all or any portion of the Collateral.

10.    That the Court enter judgment in favor of First Horizon against Defendants for the principal amounts due under the Loan Documents, plus interest accrued through the date of any judgment, plus interest which shall accrue after the date of such judgment entered in this case, until such judgment is satisfied in full, including default interest, plus any and all costs, fees, attorneys' fees and expenses, to the fullest extent to which First Horizon is entitled under the Loan Documents;

11.    That this Court, if requested, direct the Receiver to administer the Collateral in a manner which will not jeopardize the operation of the Collateral, while maximizing the amount realized by First Horizon from the Collateral; and

12.    For any such other, further relief, both general and specific, to which First Horizon may be entitled.


**THIS IS THE FIRST APPLICATION FOR EXTRAORDINARY RELIEF.**

Respectfully Submitted,

_____

Clarence A. Wilbon (TN Bar No. 023378)
Danielle E. Douglas (AL Bar No. 1987T23V)
*(Pro Hac Vice admission pending)*
ADAMS AND REESE LLP
6075 Poplar Ave, Suite 700
Memphis, TN 38119
Telephone: (901) 525--3234
Facsimile: (901) 524-5419
Clarence.Wilbon@arlaw.com
Danielle.Douglas@arlaw.com

Thomas W. Lawless (TN Bar No. 009211)
LAWLESS & ASSOCIATES, P.C.
701 Broadway, Suite 403
Nashville, TN 37203
Telephone: (615) 351-7839
Facsimile: (615) 985-0900
Tomlawless@comcast.net

***Attorneys for Plaintiff***

29