# THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PREMIER KINGS, INC., *et al.* | ) | Case No. 23-02871 |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## FINAL ORDER (A) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b) AND (D) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] [Docket No. 18] dated October 25, 2023 of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 105, 361, 362, 363, 507(b) and 552(b) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 4001, 6003, 6004 and 9014, seeking, among other things, entry of a final order (this "Final Order"):

(I)     authorizing the Debtors, subject and pursuant to the terms and conditions set forth in this Final Order, to (a) use the Cash Collateral (as defined herein), which Cash Collateral shall be used in accordance with the Budget Covenant (as defined herein), including the Approved Budget (as defined herein), and (b) provide adequate protection to the extent of the postpetition diminution in the value of the Prepetition Collateral (as defined herein) as a consequence of the Debtors' use, sale or lease of the Prepetition Collateral, including any Cash Collateral (as defined herein), and/or the imposition of the automatic stay to the Prepetition Secured Parties (as defined herein) who

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers, are: Premier Kings, Inc. (3932); Premier Kings of Georgia, Inc. (9797); and Premier Kings of North Alabama, LLC (9282). The Debtors' address is 7078 Peachtree Industrial Blvd., Suite #800, Peachtree Corners, GA 30071.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

have been granted prepetition liens and security interests under the following documents (collectively, the "Prepetition Loan Documents"): the Second Amended and Restated Credit Agreement, dated as of February 25, 2021 (as amended, restated, amended and restated, waived, supplemented or otherwise modified from time to time prior to the date hereof, the "Prepetition Credit Agreement" and together with all mortgage, security, pledge, guaranty and collateral agreements, including the Prepetition Security Agreement (as defined herein) and all other documentation executed in connection with any of the foregoing, each as amended, restated, amended and restated, waived, supplemented or otherwise modified from time to time, among Premier Kings, Inc., Premier Kings of Georgia Inc., Premier Kings of North Alabama, LLC, each as a borrower, Premier Kings Air, LLC, as a guarantor, the Prepetition Lenders from time to time party thereto (collectively, the "Prepetition Lenders"), and Wells Fargo Bank, NA, as Prepetition Agent (in such capacity, the "Prepetition Agent" and, together with the Prepetition Lenders, collectively, the "Prepetition Secured Parties");

(II) this Final Order waiving the Debtors' right to surcharge the Prepetition Collateral pursuant to Bankruptcy Code section 506(c);

(III) modifying the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms of this Final Order; and

(IV) waiving any applicable stay with respect to the effectiveness and enforceability of this Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

The Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, (C) Scheduling a Final Hearing Pursuant to bankruptcy rule 4001(b) and (d) granting related relief (the "Interim Order") [Docket No. 88] having been entered on October 30, 2023, and the hearing to consider approval of the Motion on a final basis (the "Final Hearing") having been held by this Court on November 13, 2023; and upon the record made by the Debtors at the interim hearing on the Motion (including the First Day Declaration) and the Final Hearing; and this Court having heard and resolved or overruled all objections to the final relief requested in the Motion; and it appearing that the final relief requested

in the Motion is in the best interests of the Debtors, their estates and creditors; and after due deliberation and consideration and sufficient cause appearing therefor,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.  *The Motion*.  The Motion is granted on a final basis as set forth herein.  Any objection to the Motion to the extent not withdrawn or resolved is hereby overruled. All actions taken in connection with or in reliance on the Interim Order are hereby reaffirmed in full as if taken in connection with or in reliance on this Final Order.

2.  *Jurisdiction*.  This Court has core jurisdiction over the above-captioned chapter 11 cases (the "Chapter 11 Cases") commenced on October 25, 2023 (the "Petition Date"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  *Statutory Committees.*  On November 6, 2023, the Office of the Bankruptcy Administrator for the Northern District of Alabama (the "Bankruptcy Administrator") appointed the official committee of unsecured creditors (the "Creditors' Committee") in the Chapter 11 Cases [Docket No. 135].  As of the date hereof, no other official committee has been appointed in the Chapter 11 Cases.

4.  *Notice*.  The Debtors have caused notice of the Motion, the relief requested therein and the Interim Hearing to be served by electronic mail, facsimile, hand delivery or overnight delivery on the following parties:  (a)  the Office of the Bankruptcy Administrator for the Northern District of Alabama, 1800 5th Avenue North, Birmingham, AL 35203, Attn: Jon Dudeck; (b) counsel to the Prepetition Agent, King & Spalding LLP, 1180 Peachtree St NE, Atlanta, GA 30309 Attn: Jeffery Dutson; (c) co-counsel to the Prepetition Agent, Bradley Arant Boult Cummings LLP, 1819 5th Ave N #200, Birmingham, AL 35203 Attn: Glenn Glover and James Bailey; (d)

3

the Internal Revenue Service; (e) counsel to the Creditors' Committee, Christian & Small LLP 1800 Financial Center 505 North 20th Street Birmingham, Alabama 35203, Attn: Bill D. Bensinger; and (f) the United States Attorney for the Northern District of Alabama. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and of the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002 and 4001(b) and (d).

5. *Debtors' Stipulations*. Subject to the rights granted to certain parties, other than the Debtors, to challenge the Prepetition Secured Parties' claims and liens before the termination of the Challenge Period (as defined herein) as set forth below in paragraph 16, the Debtors admit, stipulate, and agree that:

(a) As of the Petition Date, all of the Debtors were unconditionally indebted and liable to the Prepetition Secured Parties, without defense, counterclaim or offset of any kind, for the following: all debts, liabilities and obligations of every kind and nature owed by the Debtors under the Prepetition Loan Documents, including, without limitation, the Loans (as defined in the Prepetition Credit Agreement) made by the Prepetition Lenders to such Debtors in the outstanding aggregate principal amount of $86,991,003.68 of term loans, plus accrued and unpaid interest, fees (including any prepayment fees), expenses, penalties, premiums and other obligations incurred in connection therewith, in each case in accordance with the terms of the Prepetition Loan Documents (collectively, the "Prepetition Secured Obligations"); the Prepetition Secured Obligations are unconditionally guaranteed by the Loan Parties (as defined in the Prepetition Credit Agreement) and are secured by first priority security interests in and liens on (the "Prepetition Liens") substantially all of the assets of the Loan Parties, including Cash Collateral (as defined herein) (the "Prepetition Collateral"), pursuant to and on the terms set forth in (A) the Amended and Restated

4

Security Agreement, dated as of February 25, 2021 (as amended, restated, supplemented or otherwise modified from time to time prior to the date hereof, the "Prepetition Security Agreement"), among Borrowers, Guarantor and the Prepetition Agent, and (B) such other mortgage, security, pledge, guaranty and collateral agreements executed in connection with the Prepetition Credit Agreement.

(b)     The Prepetition Secured Obligations constitute the legal, valid, binding and non-avoidable obligations of the Debtors.

(c)     The Prepetition Liens are valid, binding, perfected, non-avoidable, and enforceable liens on and security interests in the Prepetition Collateral, subject in each case, prior to giving effect to the Interim Order, to those other liens explicitly permitted by the applicable Prepetition Loan Documents (in each case, only to the extent such permitted exceptions were valid, properly perfected, non-avoidable liens senior in priority to the respective liens and security interests of the Prepetition Secured Parties on the Petition Date) (the "Permitted Priority Liens"), if any.

(d)     (i) No portion of the Prepetition Secured Obligations, the Prepetition Loan Documents, and the transactions contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined in the Bankruptcy Code), impairment, subordination or other challenge pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (ii) the Debtors do not have any claims, challenges, counterclaims, causes of action, defenses, recoupment, disgorgement, or setoff rights related to the Prepetition Secured Obligations or the Prepetition Loan Documents, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, on or prior to the date hereof, against the

5

Prepetition Secured Parties and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors; and (iii) the Debtors each irrevocably waive, for themselves, and their subsidiaries, shareholders, and affiliates, any right to challenge or contest in any way the perfection, validity, priority and enforceability of the Prepetition Liens or the validity or enforceability of the Prepetition Secured Obligations and the Prepetition Loan Documents. Any order entered by the Court in relation to the establishment of a bar date for any claims (including without limitation administrative expense claims) in any of the Chapter 11 Cases or any successor cases shall not apply to the Prepetition Secured Parties. The Prepetition Secured Obligations, Prepetition Liens, interests, rights, priorities and protections granted to, or in favor of the Prepetition Secured Parties, as set forth in the Interim Order, this Final Order and in the applicable Prepetition Loan Documents shall be deemed a timely filed proof of claim on behalf of these Prepetition Secured Parties in each of these Chapter 11 Cases, and none of the Prepetition Secured Parties shall be required to file a proof of claim with respect thereto.

(e) Each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its past, present and future predecessors, successors, heirs, subsidiaries, and assigns (collectively, the "Releasors") shall, to the maximum extent permitted by applicable law and effective upon entry of this Final Order, unconditionally, irrevocably, fully and forever release, remise, acquit, relinquish, irrevocably waive and discharge each of the Prepetition Secured Parties and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions,

6

suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof relating to any of the Prepetition Loan Documents, or the transactions contemplated under such documents, including, without limitation, (i) any so-called "lender liability," equitable subordination, equitable disallowance or recharacterization claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection or avoidability of the Prepetition Liens and the Prepetition Secured Obligations. The Debtors' acknowledgments, stipulations, and releases shall be binding on the Debtors and their respective representatives, successors and assigns and, only subject to any action timely commenced by the Creditors' Committee or any other party in interest, and in any case which is granted the requisite standing before the expiration of the Challenge Period as provided in paragraph 16, on each of the Debtors' estates, all creditors thereof and each of their respective representatives, successors and assigns, including, without limitation, any trustee or other representative appointed by the Court, whether such trustee or representative is appointed in cases under chapter 11 or chapter 7 of the Bankruptcy Code.

(f)    For purposes of this Final Order, the term "Cash Collateral" shall mean and include all "cash collateral" as defined in section 363 of the Bankruptcy Code in which the Prepetition Secured Parties have a perfected lien, security interest or other interest, in each case whether existing on the Petition Date, arising pursuant to the Interim Order, this Final Order, or otherwise. The Debtors stipulate that any and all of the Debtors' cash, cash equivalents, negotiable

7

instruments, investment property, securities, and any amounts generated from the use, sale, lease or other disposition of the Prepetition Collateral, in each case wherever located, constitute Cash Collateral and Prepetition Collateral of the Prepetition Secured Parties.

(g)     As of the Petition Date, the Debtors have not brought and are not aware of any claims, objections, challenges, causes of action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code against the Prepetition Secured Parties arising out of or related to the Prepetition Secured Obligations.

(h)     To the Debtors' knowledge, as of the Petition Date, there were no other perfected liens on or security interests in the Prepetition Collateral except for the Prepetition Liens and the Permitted Priority Liens.

6.     *Section 552(b).*   As a material inducement to the Prepetition Agent's and the Prepetition Lenders' agreement to subordinate the Prepetition Liens and Adequate Protection Liens to the Carve-Out and agreement regarding the consensual use of Cash Collateral in accordance with and subject to the Approved Budget, (a) each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and (b) subject to, and effective upon entry of the Final Order, the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Prepetition Secured Parties with respect to proceeds, products, or profits of any of the Prepetition Collateral or Cash Collateral.

7.     *Findings Regarding the Use of Cash Collateral and Prepetition Collateral.*

(a)     Good cause has been shown for the entry of this Final Order.

(b)     The Debtors have an immediate need to use the Cash Collateral to permit, among other things, the orderly continuation of their businesses, pay their operating expenses and preserve the going concern value of the Debtors.

8

(c)      The preservation and maintenance of the Debtors' businesses and assets is necessary to maximize value.  Absent the Debtors' ability to use Cash Collateral in accordance with the terms hereof (including, without limitation, the Budget Covenant), the continued operation of the Debtors' businesses would not be possible, and irreparable harm to the Debtors, their estates, and their creditors would occur.  Authorization to use the Cash Collateral is therefore (i) critical to the Debtors' ability to maximize the value of these chapter 11 estates, (ii) in the best interests of the Debtors and their estates, and (iii) necessary to avoid immediate and irreparable harm to the Debtors, their creditors, and their assets, businesses, goodwill, reputation, and employees.

(d)      The terms of the use of the Cash Collateral pursuant to this Final Order are fair and reasonable, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

(e)      The Prepetition Agent (at the direction of the "Required Lenders" as such term is defined in the Prepetition Credit Agreement and hereinafter used interchangeably with "Required Prepetition Lenders") has consented to, conditioned upon the entry of this Final Order, the Debtors' proposed use of Cash Collateral, on the terms and conditions set forth in this Final Order and in accordance with the Budget Covenant.

(f)      The continued use of Cash Collateral has been negotiated in good faith and at arms' length among the Debtors and the Prepetition Agent (on behalf of the Prepetition Lenders), and, therefore, the use of the Cash Collateral by the Debtors in accordance with the terms of this Final Order shall be deemed to have been extended, issued, or made in "good faith."

(g)      The Debtors have prepared and delivered to the Prepetition Lenders a proposed budget (such initial budget, the "Initial Budget"), a copy of which is attached hereto as

9

**Exhibit A**.  The Initial Budget reflects the Debtors' anticipated net cash flow and anticipated disbursements on a weekly basis for the period from the Petition Date through and including January 19, 2024.  The Initial Budget may be modified, amended and updated from time to time in accordance with the terms of this Final Order, and once approved by, and in form and substance satisfactory to, the Prepetition Agent (acting at the direction of the Required Prepetition Lenders, in their sole discretion), shall supplement and replace the Initial Budget (the Initial Budget, following entry of the Interim Order, and each subsequently approved budget, shall each constitute without duplication, an "Approved Budget").  The Initial Budget is reasonable under the facts and circumstances.

8.       *Authorization of Use of Cash Collateral.*  Subject to the terms hereof and in accordance with the Budget Covenant, the Debtors are hereby authorized to use the Cash Collateral during the period from the Petition Date through and including the Termination Date for: (a) working capital requirements; (b) general corporate purposes; and (c) the costs and expenses of administering these Chapter 11 Cases (including payments benefiting from the Carve-Out) incurred in the Chapter 11 Cases; provided that the Debtors shall not be authorized to use Cash Collateral to pay fees or expenses (x) in excess of $45,000 per month (the "Committee Monthly Cap"), on account of Professional Persons (as defined herein) retained by the Creditors' Committee appointed in these Chapter 11 Cases (y) in excess of $15,000 (the "Investigation Budget") for the Creditors' Committee to investigate (but not prepare, initiate or prosecute) Claims and Defenses (as defined herein) against the Prepetition Secured Parties before the termination of the Challenge Period (as defined herein), or (z) to initiate or prosecute proceedings or actions on account of any Claims and Defenses against the Prepetition Secured Parties.  For the avoidance of doubt and notwithstanding any other provision of this Final Order, other than the Investigation

10

Budget (which may be used solely for the purposes authorized in this paragraph 8), no Cash Collateral, Prepetition Collateral, Collateral or any proceeds thereof, or any portion of the Carve-Out may be used directly or indirectly by any Debtor, any official committee appointed in the case, including the Creditors' Committee, or any trustee appointed in the Chapter 11 Cases or any successor case, or any other person, party or entity to (i) investigate, object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of the Prepetition Secured Obligations, the Prepetition Liens or any action purporting to do any of the foregoing; (ii) investigate, assert or prosecute any Claims and Defenses against the Prepetition Secured Parties or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors or any action purporting to do the foregoing in respect of the Prepetition Secured Obligations and/or the Prepetition Liens; (iii) prevent, hinder, or otherwise delay the Prepetition Secured Parties' enforcement, or realization on the Prepetition Secured Obligations, Cash Collateral, the Prepetition Liens, the Adequate Protection Obligations, or the Adequate Protection Liens in accordance with the Final Order; (iv) seek to modify any of the rights granted to the Prepetition Secured Parties hereunder (other than with the consents contemplated hereunder); (v) apply to the Court for authority to approve superpriority claims or grant liens (other than Approved Liens (as defined below)) in the Collateral or any portion thereof that are senior to, or on parity with, the Adequate Protection Liens, Superpriority Claims or Prepetition Liens, unless all Prepetition Secured Obligations and claims under the Interim Order and this Final Order have been refinanced or paid in full in cash or otherwise agreed to in writing by the Prepetition Agent, in its sole discretion; or (vi) seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the Prepetition Agent in its sole discretion, are authorized in any "first day" orders, or are otherwise included in the Approved Budget. In

11

accordance with Bankruptcy Rule 4001(b)(2), the Debtors are authorized to use Cash Collateral pursuant to this Final Order and the Approved Budget prior to entry of the Final Order, to avoid immediate and irreparable harm to the estate pending a final hearing on the Motion.

9. *Entitlement to Adequate Protection.* The Prepetition Secured Parties are entitled to adequate protection of their respective interests in the Prepetition Collateral (including, without limitation, the Cash Collateral) on which the Prepetition Secured Parties hold perfected security interests as of the Petition Date in an amount equal to the aggregate postpetition diminution in value of the Prepetition Collateral, including any Cash Collateral, from and after the Petition Date (such diminution in value, the "Diminution in Value"), including, without limitation, to the extent such diminution results from the sale, lease or use by the Debtors of the Prepetition Collateral, the subordination of the Prepetition Liens to the Carve-Out, or the imposition of the automatic stay pursuant to Bankruptcy Code section 362 (such adequate protection, as set forth in paragraphs 10 and 11 below, the "Adequate Protection Obligations").

10. *Adequate Protection Claims and Liens*.

(a) Adequate Protection for the Prepetition Secured Parties. As adequate protection for the Diminution in Value of the Prepetition Collateral, the Prepetition Secured Parties are hereby granted the following claims, liens, rights and benefits:

    (i) ***Superpriority Claim***. The Adequate Protection Obligations due to the Prepetition Secured Parties shall constitute allowed joint and several superpriority claims against each of the Debtors as provided in Bankruptcy Code section 507(b) (collectively, the "Superpriority Claims), with priority over any and all administrative expenses and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code

sections 105, 326, 327, 328, 330, 331, 365, 503, 506, 507(a), 507(b), 546, 552, 726, 1113 or 1114, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment, subject and subordinate only to the Carve-Out;

(ii) *Adequate Protection Liens*. Subject to the Carve-Out, as security for the Adequate Protection Obligations, effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession, control or further act by the Prepetition Secured Parties of or with respect to any Postpetition Collateral (as defined below), the following security interests and liens are hereby granted to the Prepetition Secured Parties (all such liens and security interests, the "Adequate Protection Liens"):

(A) Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected, non-avoidable additional and replacement first priority lien on, and security interest in, all property (including any previously unencumbered property), whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to Bankruptcy Code section 541(a)), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, mineral rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each Debtor, other equity or ownership interests held by a Debtor, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, and causes of action (excluding causes of action arising under Bankruptcy Code section 549 and any related action under Bankruptcy Code section 550 and any causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 550, or 553 or any other avoidance actions under the Bankruptcy Code or applicable non-bankruptcy law (collectively, the "Avoidance Actions")) the proceeds of any Avoidance Actions, Cash Collateral,

13

and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above, documents, vehicles, intellectual property, securities, partnership or membership interests in limited liability companies and capital stock, including, without limitation, the products, proceeds and supporting obligations thereof, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (all such property (including the Junior Collateral as defined herein), other than the Prepetition Collateral in existence immediately prior to the Petition Date, being collectively referred to as, the "Postpetition Collateral" and collectively with the Prepetition Collateral, the "Collateral"), which liens and security interests shall be senior to any and all other liens and security interests other than the Carve-Out and the Permitted Priority Liens, if any (the "Approved Liens").

(B)     Subject to the Carve-Out, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected non-avoidable junior priority replacement lien on, and security interest in, all property, whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to Bankruptcy Code section 541(a)), property of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, mineral rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each Debtor, other equity or ownership interests held by a Debtor, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, causes of action, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above, documents, vehicles, intellectual property, securities, partnership or membership interests in limited liability companies and capital stock, including, without limitation, the products, proceeds and supporting obligations thereof, whether now existing or hereafter

14

acquired, that is subject only to (x) the Permitted Priority Liens, or (y) valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date to the extent permitted by Bankruptcy Code section 546(b), which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Prepetition Agent (the "Junior Collateral").

(C)     Notwithstanding anything in this Final Order to the contrary, the Adequate Protection Liens (as defined herein) shall not attach to any Avoidance Actions.

(D)     The Adequate Protection Liens shall not be (1) subject or subordinate to, or *pari passu* with, (a) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code section 551 or (b) any lien or security interest arising on or after the Petition Date, subject to the Carve-Out, or (2) except as otherwise set forth in paragraphs 10(a)(ii)(A) and 10(a)(ii)(B) hereof, subordinated to or made *pari passu* with any other lien, claim or security interest under Bankruptcy Code sections 363 or 364 or otherwise.

(iii)     *Carve-Out*.  For purposes hereof, the "Carve-Out" shall mean the sum of:  (A) all fees required to be paid to the clerk of the Court and the Bankruptcy Administrator (without regard to the Carve-Out Trigger Notice (as defined herein)); (B) reasonable fees and expenses up to $25,000 in the aggregate incurred by a trustee appointed under Bankruptcy Code section 726(b) (without regard to the Carve-Out Trigger Notice); (C) subject in all respects to the Approved Budget, and the Committee Monthly Cap with respect to Professional Fees incurred by Professional Persons retained by the Creditors' Committee or any other statutory committee appointed in the Chapter 11 Cases, and subject to any Professional Fees permitted to be incurred under the Investigation Budget, to the extent allowed, whether by interim order, procedural order or otherwise, all accrued and unpaid reasonable fees, costs, and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors, the Creditors' Committee or any other statutory committee appointed in the Chapter 11 Cases pursuant to Bankruptcy Code section 327, 328, or 363 (collectively, the "Professional Persons") at any time before or on the day of delivery by the Prepetition Agent of a Carve-Out Trigger Notice (the "Pre-Trigger Date Fees"); and (D) after the delivery by the Prepetition Agent of the Carve-Out Trigger Notice (such date of delivery, the "Trigger Date"), to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of (1) all Professional Fees of

15

Professional Persons retained by the Debtors and (2) subject to the Committee Monthly Cap, the payment of Professional Fees of Professional Persons incurred by the Creditors' Committee or any other statutory committee appointed in the Chapter 11 Cases, not to exceed $100,000 in the aggregate for clauses (1) and (2) incurred after the Trigger Date (the amount set forth in this clause (D) being the "Post-Carve Out Trigger Notice Cap"); provided, that, with respect to the foregoing clause (C), any Professional Fees thereunder incurred in excess of the aggregate amount permitted for such Professional Persons in the Approved Budget shall not be included in the Carve-Out; provided, further, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (C) or (D) above, on any grounds. On the day on which a Carve-Out Trigger Notice is given to the Debtors, such Carve-Out Trigger Notice also shall constitute a demand to the Debtors, and the Debtors agree, to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an aggregate amount equal to the accrued and unpaid Pre-Trigger Date Fees plus the Post-Carve Out Trigger Notice Cap, and the Debtors shall deposit and hold any such amounts in the "Carve-Out Reserve Account", as defined below, which shall be a segregated account at a financial institution selected by the Debtors for such purpose and solely for the benefit of the Professional Persons entitled thereto. The reserved funds shall be released from time to time from the segregated account to pay when due any Pre-Trigger Date Fees and any fees and expenses incurred after Post-Carve Out Trigger Notice that are included in the Post-Carve Out Trigger Notice Cap under clause (D) above. The Carve-Out Reserve Account and amounts therein shall be free and clear of all liens, claims and interests of any party other than the Professional Persons entitled thereto; provided, however, that if the amount in such reserve exceeds the actual amount of fees and expenses incurred of the type described in clause (C) and clause (D), then such excess will be paid to the Prepetition Agent and applied in accordance with the Prepetition Loan Documents. Notwithstanding the foregoing, (X) the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (1) the investigation, preparation, initiation or prosecution of any claims, causes of action, proceeding, adversary proceeding or other litigation against any of the Prepetition Secured Parties (in such capacity), including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the Prepetition Secured Obligations and the Prepetition Liens granted under the Prepetition Loan Documents in favor of the Prepetition Secured Parties, including, without limitation, for lender liability or pursuant to Bankruptcy Code sections 105, 510, 544, 547, 548, 549, 550 or 552,

16

applicable nonbankruptcy law or otherwise; (2) attempts to modify any of the rights granted to the Prepetition Secured Parties in this Final Order (other than with the consents contemplated hereunder); (3) attempts to prevent, hinder or otherwise delay any of the Prepetition Secured Parties' enforcement or realization upon any Collateral in accordance with the Prepetition Loan Documents and this Final Order; or (4) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of this Court, in the Approved Budget or otherwise consented to by the Prepetition Agent in its sole discretion, and (Y) so long as the Carve-Out Trigger Notice shall not have been delivered, the Carve-Out shall not be reduced by the payment of Professional Fees allowed at any time by this Court. Any claim incurred in connection with any of the activities described above (other than as permitted in connection with the Investigation Budget in an amount not exceeding such Investigation Budget) shall not be allowed, treated or payable as an administrative expense claim for purposes of section 1129(a)(9)(A) of Bankruptcy Code. For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by the Prepetition Agent to the Debtors, Debtors' counsel, the Bankruptcy Administrator, and counsel to the Creditors' Committee, upon the occurrence and during the continuance of a Termination event (as defined below), stating that the Post-Carve Out Trigger Notice Cap has been invoked. For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Prepetition Loan Documents, the Carve-Out shall be senior to all liens and claims arising out of the Prepetition Loan Documents, including the Prepetition Liens, the Adequate Protection Liens, the Superpriority Claims, and any and all other forms of adequate protection, liens or claims securing or relating to the Prepetition Secured Obligations. For the avoidance of doubt, to the extent that the budgeted amounts for a Professional Person for any Approved Budget period ending prior to the Trigger Date exceeds the actual fees and expenses incurred by such Professional for that period, such excess may be carried forwards, or backwards, to the immediately prior or subsequent payment period under the Approved Budget (but only for periods ending prior to the Trigger Date), and be applied to any fees or expenses that exceeded the budgeted amounts for such prior or later period(s). In addition to the foregoing, the Carve-Out shall include, all (i) solely to the extent earned and incurred prior to the Trigger Date, any Monthly Fees (as defined below) that are approved by the Court either before or after the Trigger Date and payable by the Debtors, (ii) any Business Combination Transaction Fee (as defined below) that is approved by the Court either before or after the Trigger Date and payable by the Debtors and (iii) solely to the extent earned and incurred prior to the Trigger Date, to the extent approved by the Court without objection by the Prepetition Agent, break-up fees and expense

17

reimbursements to which stalking horse bidders are entitled under their respective purchase agreements. As used herein, the terms "Business Combination Transaction Fee" and "Monthly Advisory Fees" shall have the meanings ascribed to them in that certain engagement letter dated September 27, 2022, by and between the Debtors and Raymond James & Associates, Inc.

(iv) ***Payments from Carve-Out.*** The Debtors shall maintain a segregated account or accounts for the payment of allowed Pre-Trigger Date Fees and, subject to the Post-Carve Out Trigger Notice Cap, Professional Fees incurred after the Trigger Date (the "<u>Carve-Out Reserve Account</u>"), which account shall be funded from the Debtors' cash receipts in accordance with the Approved Budget on a weekly basis, in advance, until the occurrence of the Trigger Date. After the Trigger Date, the Carve-Out Reserve Account may continue to be funded, up to the Post-Carve Out Trigger Notice Cap. The Debtors shall pay Professional Persons Professional Fees using funds in the Carve-Out Reserve Account in compliance with the Approved Budget, this Final Order and any interim compensation procedures; <u>provided</u>, <u>however</u>, that, prior to payment in full of the Prepetition Secured Obligations and the occurrence of the Trigger Date, to the extent that any Professional Fees that have accrued from the Petition Date through and including the Trigger Date are less than the amounts funded into the Carve-Out Reserve Account, the excess amounts in the Carve-Out Reserve Account shall be (A) *first*, applied to fund the Post-Carve Out Trigger Notice Cap; (B) *second*, remitted to the Prepetition Secured Parties to apply to reduce the Prepetition Secured Obligations.

11. *Additional Adequate Protection.* As additional adequate protection:

(a) <u>Prepetition Agent Fees and Expenses</u>: The Debtors shall promptly pay, in cash, upon presentment of an applicable invoice to the Debtors (with a copy of such invoice to be presented contemporaneously to both the Bankruptcy Administrator and counsel for the Creditors' Committee), all reasonable, actual, and documented fees, costs and expenses incurred by the Prepetition Agent and payable or reimbursable under the Prepetition Loan Documents, including, without limitation, the fees, costs and expenses of lead counsel, King & Spalding LLP, local counsel, Bradley Arant Boult Cummings LLP, and CR3 Group, as financial advisor to the Prepetition Agent, in each case in accordance with the Prepetition Loan Documents and without

18

further order of, or application to, the Court or notice to any party other than as provided in this paragraph 11(a); provided, however, that, prior to consummation of the Approved Sale(s), the Debtors shall only be permitted to pay the fees and expenses of the professionals engaged by the Prepetition Agent to the extent such fees and expenses do not exceed, in any month, the amounts set forth in the Approved Budget for payment of such professional fees and expenses, and any fees and expenses incurred by such professionals in excess of the amounts in the Approved Budget for the applicable month (the "Agent Professional Fee Excess") shall be payable, at such professional's election, (x) to the extent that the budgeted amounts for such professional for any monthly period exceeds the actual fees and expenses incurred by such professional for that period, by carrying forwards or backwards such excess and applying it to the Agent Professional Fee Excess, or (y) upon consummation of any Approved Sale(s), by applying the net proceeds therefrom to the Agent Professional Fee Excess. For the avoidance of doubt, none of the fees, costs and expenses of Prepetition Agent and the Prepetition Lenders shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court.

(b)     Credit Bidding.  The Prepetition Agent (on behalf of the Prepetition Lenders) shall have the right to credit bid (x) up to the full amount of the remaining Prepetition Secured Obligations under the Prepetition Loan Documents and (y) the Superpriority Claims and any unpaid amounts due and owing under paragraph 11(a) hereof, as applicable, in the sale of any of the Collateral, including, without limitation, pursuant to (a) Bankruptcy Code section 363, (b) a plan of reorganization or a plan of liquidation under Bankruptcy Code section 1129, or (c) a sale or disposition by a chapter 7 trustee for any Debtor under Bankruptcy Code section 725.

19

(c)     Reporting and Budget Compliance.   The Debtors shall comply in all respects with the provisions of this paragraph 11(c) (the "Budget Covenant").  The Initial Budget is approved in its entirety. The use of Cash Collateral under this Final Order shall be in accordance with the Approved Budget, subject to Permitted Variances (as defined below) and the terms and conditions set forth in this Final Order. Not later than 5:00 PM (Eastern Standard Time) beginning on the second Wednesday following the Petition Date and on every Wednesday following the end of each Testing Period (as defined below), the Debtors shall deliver to the Prepetition Agent (along with its professionals), (a) an updated budget, in form and substance satisfactory to the Prepetition Agent (at the direction of the Required Prepetition Lenders, in their sole discretion), and such updated budget (which shall be filed with the Court by the Debtors within five business days after approval by the Prepetition Agent) shall become the Approved Budget for the purposes of this Final Order upon approval of the Prepetition Agent (at the direction of the Required Prepetition Lenders, in their sole discretion); *provided*, that until a new Approved Budget has been so approved, the most recent Approved Budget shall govern, (b) a variance report (the "Variance Report") setting forth actual cash receipts and disbursements and cash flows of the Debtors for the prior Testing Period and setting forth all disbursement and receipt variances, on a line-item and aggregate basis, from the amount set forth for such period as compared to the applicable Approved Budget, in each case, for the applicable Testing Period (and each such Variance Report shall include explanations for all material variances and shall be certified by the Chief Restructuring Officer of the Debtors), and (c) a report of the cash balances in all deposit accounts maintained by the Debtors (each such report, a "Liquidity Report") as of the last Friday before the date such report is delivered (and supporting documentation for such balances acceptable to the Prepetition Agent).  For purposes hereof, the term "Permitted Variances" shall mean, for (a) the period

20

commencing on the Petition Date through and including November 24, 2023 and thereafter, (b) the trailing four (4) week period prior to the date on which each Variance Report is delivered as required hereunder, calculated on a rolling four (4) week basis to account for timing of payment variances, unless otherwise agreed by the Prepetition Agent (the applicable "Testing Period") (i) any favorable net operating cashflow variance, and (ii) any unfavorable variance of, no more than 10% of net operating cashflow, in each case as compared to the budgeted net operating cashflow set forth in the Approved Budget with respect to the applicable Testing Period.  The Permitted Variances with respect to each Testing Period shall be determined and reported to the Prepetition Agent not later than 5:00 PM (Eastern Standard Time) on each Wednesday immediately following the end of each such Testing Period.  Additional net operating cashflow variances, if any, from the prior Approved Budget, and any proposed changes to the budget, shall be subject to the approval of the Administrative Agent (at the direction of the Required Prepetition Lenders, in their sole discretion).

(d)     Access to Records/Financial Reporting.  In addition to, and without limiting, whatever rights of access the Prepetition Secured Parties have under the Prepetition Loan Documents, upon reasonable notice, at reasonable times and subject to appropriate confidentiality protections, the Debtors shall permit representatives and agents of the Prepetition Agent, including without limitation CR3 Group, as financial advisor to the Prepetition Agent, and the Creditors' Committee (i) to have access to and inspect the Debtors' properties, subject to reasonable safety precautions, (ii) to examine the Debtors' books and records, and (iii) to discuss the Debtors' affairs, finances and condition with the Debtors' officers and financial advisors.  In addition, the Debtors shall provide to the advisors to the Prepetition Agent and the Creditors' Committee, within five (5) business days after the end of each fiscal month of the Borrower beginning on November 6,

21

2023, reports setting forth written same-store sales report in form and substance reasonably satisfactory to the Prepetition Agent listing the (x) sales of each store for the immediately prior month, (y) the sales for such store from the same month in the prior year, and (z) the percentage change in sales between the foregoing (x) and (y).

(e)     Executory Contracts and Unexpired Leases.  The Debtors will consult with the Prepetition Agent and its advisors and the Creditors' Committee and its advisors to determine which executory contracts and unexpired leases should be assumed or rejected by the Debtors, provided, that, the Debtors ultimately reserve the right to make such decisions based on the Debtors' business judgment.

(f)     Employee Incentive/Retention Plans.  The Debtors shall not seek approval of any employee incentive or retention plans (or any similar sort of retention or incentive program) without prior consultation with the Creditors' Committee and the prior written consent of the Prepetition Agent (at the direction of the Required Prepetition Lenders), which consent shall be in its sole discretion.

(g)     Other Covenants.

1. The Debtors shall maintain their cash management arrangements in a manner consistent in all material respects with that described in the Debtors' Motion of the Debtors and Debtors-in-Possession for Entry of Interim and Final Orders Approving Cash Management System and Authorizing the Debtors to Continue Using Existing Bank Accounts and Business Forms [Docket No. 7].

2. Except as expressly permitted in the Bidding Procedures Order (as defined below) or other "first day" pleadings, the Debtors shall not use, sell or lease any assets outside the ordinary course of business, or seek authority of this Court to the extent required by Bankruptcy Code section 363, without obtaining the prior written consent of the Prepetition Agent, which consent shall be in its sole discretion, and prior consultation with the Prepetition Agent at least five (5) business days prior to the date on which the Debtors seek the Court's authority for

22

such use, sale or lease. Subject to paragraph 10(a)(iii) hereof and the rights of any holder of a Permitted Priority Lien thereon, in the event of any such sale, lease, transfer, license, or other disposition of property of the Debtors (other than a disposition of all or substantially all of the Debtors' assets) that constitutes Collateral outside the ordinary course of business (to the extent permitted by the Prepetition Loan Documents and this Final Order) the Debtors are authorized and directed, without further notice or order of this Court, to immediately pay to the Prepetition Agent for the benefit of the Prepetition Secured Parties, 100% of the net cash proceeds resulting therefrom no later than the second business day following receipt of such proceeds. In the event of any casualty, condemnation, or similar event with respect to property that constitutes Collateral, the Debtors are authorized and directed to pay to the Prepetition Agent for the benefit of the Prepetition Secured Parties, any insurance proceeds, condemnation award, or similar payment (excluding any amounts on account of any D&O policies) in excess of $25,000 no later than the second business day following receipt of payment by the Debtors unless the Prepetition Secured Parties have consented, in their sole discretion, in writing, to the funds being reinvested by the Debtors.

3. All Cash Collateral and all proceeds from the sale, transfer or other disposition of any Prepetition Collateral of any kind which is now or shall come into any Debtor's possession, custody or control, or to which any Debtor is now or shall become entitled, shall be promptly deposited in the same bank accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Credit Agreement (or in such other accounts as are designated by the Prepetition Agent from time to time in writing to the Debtors). Such collections and proceeds shall remain subject to the Prepetition Liens and shall be treated in accordance with the terms and conditions of this Final Order. The Prepetition Liens against, on and in the Prepetition Collateral shall continue to attach to the Cash Collateral irrespective of the commingling of the Cash Collateral with other cash of the Debtors. Any failure by the Debtors on or after the Petition Date to comply with the segregation requirements of section 363(c)(4) of the Bankruptcy Code in respect of any Cash Collateral shall not be used as a basis to challenge the Prepetition Secured Obligations, or the extent, validity, enforceability or perfected status of the Prepetition Liens.

4. As of the last Friday included in each Liquidity Report, the amount of unrestricted cash and cash equivalents held by the Debtors in all deposit accounts shall not, in the aggregate, be less than $650,000.

23

(h)     Right to Seek Additional Adequate Protection.  The Interim Order and this Final Order are without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to request additional forms of adequate protection at any time or any party-in-interest's right to object thereto.

12.     *Termination*.  The Debtors' right to use the Cash Collateral pursuant to this Final Order shall automatically terminate (the date of any such termination, the "Termination Date") without further notice or court proceeding on the earliest to occur of (i) January 11, 2024 (or, if consented to in writing by the Prepetition Agent acting in its sole discretion, such later date not to exceed seven (7) days therefrom), (ii) the effective date of any confirmed chapter 11 plan in any of the Chapter 11 Cases, (iii) the date of the consummation of the last sale or other disposition resulting in all or substantially all of the assets of the Debtors having been sold or disposed of, and (iv) the occurrence of any of the events set forth in this paragraph 12(a) through (q) below, unless waived by the Prepetition Agent (acting at the direction of the Required Prepetition Lenders, in their sole discretion) (each of the following events, a "Termination Event" and collectively, the "Termination Events"):

(a)     on or before November 30, 2023 (or, if consented to in writing by the Prepetition Agent acting in its sole discretion, such later date not to exceed seven (7) days therefrom), the Court shall not have entered an order granting the Motion of the Debtors and Debtors in Possession for Entry of an Order (I) Approving Bidding Procedures for the Sale of All or Substantially All the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving Bid Protections for Stalking Horse Bidders; (III) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (IV) Scheduling

24

an Auction for, and Hearing to Approve, the Sale of All or Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (V) Approving the Form and Manner of Sale Notice; and (VI) Granting Related Relief [Docket No. 42] (the "Bidding Procedures Order"), in form and substance acceptable to the Prepetition Agent;

(b) on or before December 19, 2023 (or, if consented to in writing by the Prepetition Agent acting in its sole discretion, such later date not to exceed seven (7) days therefrom), an auction (to the extent necessary) for the sale of substantially all of the Debtors' assets shall not have occurred in accordance with the requirements of the Bidding Procedures Order (such process, the "Auction");

(c) on or before December 31, 2023 (or, if consented to in writing by the Prepetition Agent acting in its sole discretion, such later date not to exceed seven (7) days therefrom), the Court shall not have approved the results of the Auction and an agreement or agreements for the sale of the assets (the "Approved Sale(s)"), which order and agreement shall be in form and substance acceptable to the Prepetition Agent (acting at the direction of the Required Prepetition Lenders, in their sole discretion);

(d) the Approved Sale(s) shall not have been consummated by January 11, 2024 (or, if consented to in writing by the Prepetition Agent acting in its sole discretion, such later date not to exceed seven (7) days therefrom);

(e) the Debtors' failure to: (i) use the Collateral, including without limitation Cash Collateral, in a manner consistent with the Approved Budget, but subject to the Budget Covenant, and otherwise comply in any respect with any provision of this Final Order (including, without limitation, the failure to make the payments identified in paragraph 11(a) when due in accordance with and under the terms hereof); or (ii) comply with any other covenant or agreement

25

specified in this Final Order (including any obligations to comply with the provisions of paragraph 11 or the covenants and other obligations of the Debtors contained therein); in each case where such failure shall have continued unremedied for five (5) business days following receipt of written notice by the Debtors from the Prepetition Agent of such failure;

(f) (i) an application, motion or other pleading shall have been filed by any Debtor seeking to amend, stay, supplement, vacate, extend or modify in any manner this Final Order; or (ii) an order shall have been entered reversing, amending, supplementing, extending, staying, vacating, or otherwise modifying in any manner this Final Order, in each case, without the prior written consent of the Prepetition Agent in its sole discretion;

(g) the date any provision of this Final Order shall for any reason cease to be valid and binding or any Debtor shall so assert in any pleading filed in any court;

(h) the date (i) any Chapter 11 Case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code or any Debtor shall file a motion or other pleading seeking the dismissal or conversion of any Chapter 11 Case pursuant to Bankruptcy Code section 1112; (ii) a trustee, responsible officer, or an examiner (other than a fee examiner) pursuant to Bankruptcy Code section 1104 is appointed or elected, as applicable, in any Chapter 11 Case, any Debtor applies for, consents to, or acquiesces in, any such appointment, or the Court shall have entered an order providing for such appointment, in each case without the prior written consent of the Prepetition Agent (acting at the direction of the Required Prepetition Lenders, in their sole discretion); or (iii) the date that the Debtors file a Chapter 11 plan of reorganization in the Chapter 11 Case that is not, prior to such filing, confirmed in writing by the Prepetition Agent (acting at the direction of the Required Prepetition Lenders, in their sole discretion) to be in form and substance acceptable to the Prepetition Lenders;

26

(i)     the Court shall have entered an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure of the like) on any of the Debtor's assets (other than in respect of insurance proceeds or with respect to assets having a fair market value of less than $250,000);

(j)     any Debtor shall have filed a motion or application for the approval of any superpriority claim or any lien in the Chapter 11 Cases (other than such claim or lien granted or permitted pursuant to this Final Order), which is *pari passu* with or senior to any of the Adequate Protection Liens, Superpriority Claims or Prepetition Liens, without the prior consent of the Prepetition Agent (acting at the direction of the Required Prepetition Lenders, in their sole discretion);

(k)     other than with respect to the Approved Liens, any Debtor shall create or incur, or the Court enters an order granting, any claim which is *pari passu* with or senior to any of the Prepetition Liens or Prepetition Secured Obligations or the Adequate Protection Liens and Adequate Protection Obligations granted under the Interim Order or this Final Order;

(l)     unless otherwise agreed to in writing by the Prepetition Agent (acting at the direction of the Required Prepetition Lenders, in their sole discretion), the consummation of a sale or disposition of any material assets of the Debtors other than in the ordinary course of business;

(m)     commencement of any action, including the filing of any pleading, by any Debtor, or direct or indirect non-debtor affiliate or subsidiary of a Debtor, against any of the Prepetition Secured Parties with respect to any of the Prepetition Secured Obligations or Prepetition Liens;

(n)     the Court shall have entered an order avoiding, disallowing, subordinating or recharacterizing any claim, lien, or interest held by a Prepetition Secured Party arising under

Case 23-02871-TOM11    Doc 205    Filed 11/14/23    Entered 11/14/23 13:33:12    Desc
Main Document      Page 27 of 43

the Prepetition Credit Agreement, unless (i) the Debtor has sought a stay of such order within five (5) business days after the date of such issuance, and such order is stayed, reversed or vacated within ten (10) business days after the date of such issuance or (ii) the Prepetition Secured Party has consented to such order in writing;

(o)     at any time prior to the Termination Date, the amount of unrestricted cash and cash equivalents, as reported in any Liquidity Report, shall be less than $650,000 as determined by the Prepetition Agent;

(p)     unless otherwise agreed to in writing by the Prepetition Agent (acting at the direction of the Required Prepetition Lenders, in their sole discretion), incurrence by the Debtors of any new secured debt or any unsecured debt, which unsecured debt is incurred outside of the ordinary course of business; or

(q)     any motion, pleading, or application is filed by any Debtor seeking the entry of an order, or an order is entered in any of the Chapter 11 Cases, approving any debtor-in-possession financing for borrowed money or other extensions of credit, whether pursuant to section 364 of the Bankruptcy Code or otherwise, unless such financing and such order expressly provide for the indefeasible payment and complete satisfaction in full in cash of all Prepetition Secured Obligations prior to, or concurrently with, any initial borrowings or other extensions of credit under or in connection with such financing.

13.     *Remedies Upon a Termination Event.*  The Debtors shall immediately provide notice to the Prepetition Agent (with a copy to counsel for the Creditors' Committee and the Bankruptcy Administrator), of the occurrence of any Termination Event, at which time the Debtors' ability to use Cash Collateral hereunder shall terminate and the Adequate Protection Obligations shall become due and payable.  Upon the occurrence of a Termination Event and

28

following the giving of not less than four (4) business days' advance written notice (the "Enforcement Notice") to counsel to the Debtors, counsel to the Creditors' Committee and the Bankruptcy Administrator (the "Notice Period"), the Debtors shall immediately cease using Cash Collateral, the Prepetition Secured Parties may exercise any remedies available to them under this Final Order, the Prepetition Loan Documents and applicable non-bankruptcy law, including but not limited to (a) set off and apply immediately any and all amounts in accounts maintained by the Debtors against the Adequate Protection Obligations and Prepetition Secured Obligations owed to the Prepetition Secured Parties and otherwise enforce rights against the Collateral for application towards the Adequate Protection Obligations and Prepetition Secured Obligations; (b) take any and all actions necessary to take control of the Prepetition Collateral and/or the Collateral, including any Cash Collateral; and (c) take any other actions or exercise any other rights or remedies permitted under this Final Order, the Prepetition Loan Documents or applicable law, including foreclosure on and sale of all Prepetition Collateral and Postpetition Collateral, to effect the repayment and satisfaction of the Adequate Protection Obligations and Prepetition Secured Obligations owed to the Prepetition Secured Parties. The rights and remedies of the Prepetition Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that they may otherwise have. The only permissible basis for the Debtors, the Creditors' Committee, the Bankruptcy Administrator or any other party to contest, challenge or object to an Enforcement Notice shall be solely with respect to the validity of the Termination Event(s) giving rise to such Enforcement Notice (*i.e.*, whether such Termination Events occurred). Notwithstanding the foregoing and any other provision of this Paragraph 13 or any other provision herein, the Debtors shall retain the right after a Termination Event to request emergency relief from the Court to continue to use Cash Collateral over the Prepetition Secured Parties' objection, consistent with the

29

requirements of the Bankruptcy Code. Unless the Court orders otherwise, the automatic stay pursuant to Bankruptcy Code section 362 shall be automatically terminated at the end of the Notice Period, without further notice or order of the Court, unless the Prepetition Secured Parties elect otherwise in a written notice to the Debtors, and the Prepetition Secured Parties shall be permitted to exercise all rights and remedies, including with respect to the Collateral (including, without limitation, any Cash Collateral), set forth in this Final Order and the Prepetition Loan Documents, and as otherwise available at law without further order or application or motion to the Court, and without restriction or restraint by any stay under Bankruptcy Code sections 362 or 105 or otherwise.

14.     *Perfection of Adequate Protection Liens.*

(a)     The Prepetition Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted to it hereunder.  Whether or not the Prepetition Agent, in its respective sole discretion, chooses to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute, subordination, contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined in the Bankruptcy Code), impairment, subordination (whether equitable, contractual or otherwise) or other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law as of the Petition Date.  If the Prepetition Agent determines to file any financing statements, notices of liens or similar instruments, the Debtors will cooperate and assist in any such filings as

30

reasonably requested by the Prepetition Agent and the automatic stay shall be modified to allow such filings.

(b) The Prepetition Agent may in its respective discretion, cause a certified copy of this Final Order to be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording.

(c) The Debtors shall execute and deliver to the Prepetition Agent all such agreements, financing statements, instruments and other documents as each such party may reasonably request to evidence, confirm, validate or perfect the Adequate Protection Liens.

15. *Preservation of Rights Granted Under this Final Order.*

(a) Notwithstanding any order dismissing any of these Chapter 11 Cases under Bankruptcy Code section 1112 or otherwise entered at any time, (i) the Superpriority Claims, the other administrative claims granted pursuant to the Interim Order or this Final Order, the Carve-Out and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Adequate Protection Obligations and the Carve Out shall have been paid and satisfied in full (and such Superpriority Claims, the other administrative claims granted pursuant to the Interim Order or this Final Order, the Carve Out and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (i) above.

(b) If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, the order granting such reversal, stay, modification or vacatur (the

31

"Reversal Order") shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the date of the entry of such Reversal Order; or (ii) the validity, priority or enforceability of the Adequate Protection Liens securing such Adequate Protection Obligations. Notwithstanding any such reversal, stay, modification or vacatur, any use of the Collateral (including the Cash Collateral) or any Adequate Protection Obligations incurred by the Debtors hereunder or under the Interim Order, as the case may be, prior to the date of the entry of the Reversal Order shall be governed in all respects by the original provisions of this Final Order, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in Bankruptcy Code section 363(m) with respect to all uses of the Collateral (including the Cash Collateral) and such Adequate Protection Obligations for periods prior to the date of the entry of the Reversal Order.

(c)     Except as expressly provided in this Final Order, the Adequate Protection Obligations, the Superpriority Claims and all other rights, claims, security interests and remedies of the Prepetition Secured Parties granted by the provisions of the Interim Order or this Final Order shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting any of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, dismissing any of these Chapter 11 Cases or by any other act or omission or (ii) confirming a plan of reorganization in any of the Chapter 11 Cases, and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations; provided, that, any plan of reorganization or liquidation approved in writing by the Prepetition Agent (acting at the direction of the Required Prepetition Lenders, in their sole discretion), shall supersede and replace the terms of the Interim Order upon its effectiveness in accordance therewith. The terms and provisions of this Final Order shall continue in these Chapter

32

11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, Superpriority Claims, other administrative claims granted pursuant to the Interim Order or this Final Order, and all other rights, claims, security interests and remedies of the Prepetition Secured Parties granted by the provisions of the Interim Order or this Final Order shall continue in full force and effect as provided herein.

16.     *Effect of Stipulations on Third Parties*.

(a)     The stipulations, releases and admissions contained in this Final Order, including in paragraph 5 hereof, shall be binding upon the Debtors and any successor(s) thereto in all circumstances.   The stipulations, releases and admissions contained in this Final Order, including in paragraph 5 hereof, shall be binding upon all other parties in interest, including the Creditors' Committee or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless and to the extent (a) the Creditors' Committee or any other party in interest other than any Debtor (including any Trustee), in each case, after obtaining requisite standing, has duly filed an adversary proceeding challenging in whole or part the validity, enforceability, priority or extent of the Prepetition Secured Obligations or the liens on the Prepetition Collateral securing the Prepetition Secured Obligations held by or on behalf of the Prepetition Secured Parties or otherwise asserting or prosecuting any Avoidance Actions, recharacterization, subordination, "lender liability", or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against the Prepetition Secured Parties in connection with any matter related to the Prepetition Secured Obligations, or the Prepetition Collateral or the Prepetition Liens by no later than the later of (i) in the case of any such adversary proceeding filed by the Creditors' Committee, or another party in

33

interest with requisite standing, on or before [December 1, 2023], and (ii) any such later date agreed to in writing by the Prepetition Agent (at the direction of the Prepetition Lenders, in their sole discretion) (the time period established by the later of the foregoing clauses (i) and (ii), the "Challenge Period"), and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such Claims and Defenses or other challenge or claim in any such duly filed adversary proceeding. If no such adversary proceeding is timely filed prior to the expiration of the Challenge Period by the Creditors' Committee or a party in interest, in any case which has been granted the appropriate standing, without further order of this Court: (x) the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined in the Bankruptcy Code), impairment, subordination (whether equitable, contractual or otherwise) or other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law, for all purposes in these Chapter 11 Cases and any subsequent chapter 7 cases; and (y) the Prepetition Secured Obligations, the Prepetition Agent's Prepetition Liens on the Prepetition Collateral and the respective Prepetition Secured Parties in such capacity shall not be subject to any other or further Claims and Defenses or other challenge or claim and any party in interest shall be forever enjoined and barred from seeking to exercise the rights of the Debtors' estates or taking any such action, including any successor thereto (including any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period). If any such adversary proceeding is timely filed by a party in interest with appropriate standing prior to the expiration of the Challenge Period, the stipulations and admissions contained in this Final Order, including in paragraph 5 hereof, shall

Case 23-02871-TOM11    Doc 205    Filed 11/14/23    Entered 11/14/23 13:33:12    Desc
Main Document      Page 34 of 43

nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Creditors' Committee and any other Person (as defined in the Prepetition Credit Agreement), including any Trustee, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding.

(b)     Nothing in the Interim Order or this Final Order vests or confers standing on the Creditors' Committee or any other person, entity, or party-in-interest to assert any claim on behalf of any Debtor or any estate of any Debtor, or relieves the Creditors' Committee or any other person, entity, or party-in-interest from any requirement under the Bankruptcy Code or otherwise to obtain standing and authorization from this Court prior to asserting any claim on behalf of any Debtor or any estate of any Debtor.

17.     *Reservation of Rights of the Prepetition Secured Parties.*

(a)     Notwithstanding any other provision in the Interim Order or this Final Order to the contrary, this Final Order is without prejudice to, and does not constitute a waiver, expressly or implicitly, or relinquishment, of the Prepetition Secured Parties' respective rights with respect to any person or entity, or with respect to any other collateral owned or held by any person or entity.  The rights of the Prepetition Secured Parties are expressly reserved and entry of this Final Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, or relinquishment, of:

(i)     the Prepetition Secured Parties' rights to bring or be heard on any matter brought before this Court;

(ii)     the Prepetition Secured Parties' respective rights under the Prepetition Loan Documents, the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation the rights, if any, to (v) request modification of the automatic stay, (w) sell or foreclose on any Collateral under applicable law, (x) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to a case

35

under chapter 7, or appointment of a chapter 11 trustee, examiner or receiver, (y) propose, subject to the provisions of Bankruptcy Code section 1121, a chapter 11 plan; or (z) take any action specified in paragraph 11(h) above;

     (iii)    the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors;

     (iv)    the Prepetition Agent's rights to seek modification of the grant of adequate protection provided under the Interim Order or this Final Order so as to provide different or additional adequate protection; or

     (v)    any other respective rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Parties;

Nothing contained herein shall be deemed a finding by the Court or an acknowledgement by the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect the Prepetition Secured Parties against the Diminution in Value of their interests in the Prepetition Collateral nor shall anything contained in this Final Order be deemed a finding by the Court or an acknowledgement by the Debtors or the Creditors' Committee, respectively, that the Prepetition Secured Parties' interests in the Prepetition Collateral shall have incurred a Diminution in Value.

(b)    Payment of any fees, costs and expenses of the Professional Persons pursuant to the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to any of the Prepetition Agent or Prepetition Lenders, or (ii) subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties in the Postpetition Collateral or Prepetition Collateral (or their respective claims against the Debtors), except insofar as such claims, liens and security interests are subject to payment of the fees and expenses included within the Carve-Out as provided in paragraph 10(a)(iii) hereof. The Prepetition Agent and Prepetition Lenders shall not be responsible for the direct payment or reimbursement of any fees, costs or

36

expenses of any Professionals Persons (or of any other person) incurred in connection with the Chapter 11 Cases or any successor case, and nothing in this Final Order or otherwise shall be construed to obligate such parties to ensure that any Debtor has sufficient funds to pay such fees, costs or expenses. Nothing herein shall impair, or be construed to impair, the ability of any party to object to any of the fees, expenses, reimbursement or compensation of any Professional Person.

18. *Compliance with the Prepetition Debt Document Covenants*. Unless otherwise agreed to by the Prepetition Agent (at the direction of the Required Prepetition Lenders, in their sole discretion), notwithstanding the Debtors' additional reporting requirements and obligations set forth in paragraph 11 hereof, the Debtors shall comply in all respects with all of the reporting requirements set forth in Sections 6.01 and 6.02 of the Prepetition Credit Agreement.

19. *506(c) Waiver*. Except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases, which have been or may be incurred in any of the Chapter 11 Cases at any time shall be charged against or recovered from any Prepetition Secured Party, any of the Prepetition Secured Obligations, any of their respective claims, or the Collateral pursuant to Bankruptcy Code sections 105(a) or 506(c), or otherwise, without the prior written consent of the Prepetition Agent (at the direction of the Prepetition Lenders in their sole discretion), and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Prepetition Secured Parties or their respective representatives.

20. *No Marshaling/Application of Proceeds*. The Prepetition Agent shall be entitled to apply the payments or proceeds of the Collateral in accordance with this Final Order and the provisions of the Prepetition Loan Documents and in no event shall any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral or otherwise.

21.     *Limitation on Use of Collateral*.  For the avoidance of doubt, the Debtors shall not be allowed to use the Cash Collateral to pay fees and expenses of any Professional Person retained by a Creditors' Committee or any other statutory committee in excess of the Committee Monthly Cap.

22.     *Binding Effect; Successors and Assigns*.  The provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including the Prepetition Secured Parties, the Creditors' Committee, the Debtors and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) as provided herein.  The protections afforded to the Prepetition Secured Parties under this Final Order and any actions taken pursuant thereto, shall survive the entry of an order dismissing any or all of the Chapter 11 Cases or converting any or all of the Chapter 11 Cases into a case(s) under chapter 7 of the Bankruptcy Code, and the Adequate Protection Liens and the Superpriority Claims shall continue in the Chapter 11 Cases, in any such successor case(s) or after any such dismissal.  Except as otherwise provided herein, the Adequate Protection Liens and the Superpriority Claims shall maintain their priorities as provided in the Interim Order and the Final Order, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, or any conversion of any of the Chapter 11 Cases into a case(s) pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of the Chapter 11 Cases, or by any other act or omission until the Prepetition Secured Obligations are indefeasibly paid in full in cash (and any letters of credit cash collateralized in accordance with the terms of the Prepetition Loan Documents).

38

23.     *Limitation of Liability.*  In permitting the use of the Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order, the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to any of the Debtors, their creditors or estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.  Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in Bankruptcy Code section 101(2)).

24.     *No Modification of Final Order.*  Each Debtor irrevocably waives any right to seek any amendment, modification or extension of this Final Order without the prior written consent of the Prepetition Agent (acting at the direction of the Required Prepetition Lenders, in their sole discretion), and no such consent shall be implied by any action, inaction or acquiescence of the Prepetition Agent or Prepetition Lenders.

25.     *Rights of Prepetition Agent.*  Nothing in the Interim Order or this Final Order shall be construed to limit or affect the Prepetition Agent's right to request instructions from the Required Prepetition Lenders in accordance with Section 9.03(b) of the Prepetition Credit Agreement.

39

26. *No Waiver*. This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.

27. *Automatic Stay Modified*. The automatic stay shall be modified or lifted to the extent necessary to allow the relevant Prepetition Secured Parties to provide any notices to the Debtors or take any other action as contemplated by and in accordance with this Final Order.

28. *Rights Preserved.* Notwithstanding anything herein to the contrary, the entry of the Interim Order or this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly the Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection.

29. *Effectiveness.* This Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Final Order. To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

30. *Controlling Effects of Final Order.* To the extent of any conflict between or among (a) the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" or "as provided in" or words to that effect with respect to the Prepetition Loan Documents, the terms and provisions of this Final Order shall govern. This Final Order shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof, notwithstanding the possible application Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Final Order on this Court's dockets in the Chapter 11 Cases.

31.    *Jurisdiction*.  This Court shall retain jurisdiction to enforce the terms of this Final Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

Dated: November 14, 2023

/s/ Tamara O. Mitchell

Tamara O. Mitchell
United States Bankruptcy Judge

**Exhibit A**

**Initial Budget**

**PK - Consolidated (Premier Kings, Inc., Premier Kings of North Alabama, LLC, Premier Kings of Georgia, Inc.)**
Cash Collateral Budget *Updated November 12, 2023
*(Shown in USD Thousands)*

| Week Number --> | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending Date --> | 10/27/2023 | 11/3/2023 | 11/10/2023 | 11/17/2023 | 11/24/2023 | 12/1/2023 | 12/8/2023 | 12/15/2023 | 12/22/2023 | 12/29/2023 | 1/5/2024 | 1/12/2024 | 1/19/2024 |
| **Receipts** | | | | | | | | | | | | | |
| Store Income | 1,186 | 4,208 | 4,260 | 4,124 | 4,052 | 3,879 | 4,311 | 4,310 | 4,282 | 4,108 | 4,119 | 4,130 | 4,141 |
| **Total Receipts** | 1,186 | 4,208 | 4,260 | 4,124 | 4,052 | 3,879 | 4,311 | 4,310 | 4,282 | 4,108 | 4,119 | 4,130 | 4,141 |
| **Operating Disbursements** | | | | | | | | | | | | | |
| Payroll & Benefits | - | (263) | (2,566) | (8) | (2,711) | (226) | (2,566) | (8) | (2,633) | (226) | (2,566) | (8) | (2,589) |
| Rent | - | (1,667) | (82) | - | - | (1,749) | - | - | - | (256) | (1,493) | - | - |
| Royalties & Advertising | - | - | - | (297) | - | - | - | - | (1,424) | - | - | - | (1,456) |
| McLane Food Cost | - | (1,318) | (1,170) | (1,252) | (1,202) | (1,227) | (1,140) | (1,154) | (1,217) | (1,282) | (1,209) | (1,222) | (1,160) |
| Other Food & Paper Cost | - | (35) | (65) | - | (65) | - | (65) | - | (65) | - | (65) | - | (65) |
| Repairs and Maintenance | - | (103) | (178) | (103) | (178) | (103) | (103) | (178) | (103) | (103) | (103) | (103) | (103) |
| Utilities | - | (194) | (254) | (194) | (194) | (170) | (222) | (170) | (170) | (170) | (170) | (170) | (170) |
| Insurance | - | (248) | - | - | - | (248) | - | - | - | - | (248) | - | - |
| Sales Tax | - | - | - | - | (1,532) | - | - | - | (1,418) | - | - | - | - |
| Admin & General Expenses | - | (55) | (152) | (387) | (36) | (55) | (77) | (462) | (91) | (36) | (77) | (36) | (111) |
| **Total Operating Disbursements** | - | (3,884) | (4,467) | (2,240) | (5,918) | (3,778) | (4,175) | (1,971) | (7,122) | (2,073) | (5,931) | (1,539) | (5,655) |
| **Operating Cash Flow** | 1,186 | 324 | (207) | 1,884 | (1,866) | 101 | 136 | 2,339 | (2,841) | 2,035 | (1,812) | 2,591 | (1,514) |
| **Restructuring** | | | | | | | | | | | | | |
| Restructuring Fees Escrow | - | (156) | (166) | (156) | (166) | (156) | (166) | (156) | (166) | (156) | (168) | (158) | (168) |
| Secured Lender Professional Fee | - | (100) | (100) | (100) | (100) | (100) | (50) | (50) | (50) | (50) | (50) | (50) | (50) |
| Bankruptcy Administrator Fees (Trustee) | - | - | - | - | - | - | - | - | - | - | - | - | (329) |
| Unsecured Creditor Committee Escrow | - | (11) | (11) | (11) | (11) | (11) | (11) | (11) | (11) | (11) | (11) | (11) | (11) |
| Claims and Noticing Agent Escrow | - | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) |
| **Total Restructuring** | - | (274) | (284) | (274) | (284) | (274) | (234) | (224) | (234) | (224) | (236) | (226) | (564) |
| **Total Disbursements** | - | (4,158) | (4,751) | (2,514) | (6,202) | (4,052) | (4,409) | (2,195) | (7,356) | (2,298) | (6,167) | (1,764) | (6,219) |
| **Net Cash Flow** | 1,186 | 50 | (492) | 1,610 | (2,150) | (173) | (98) | 2,114 | (3,075) | 1,811 | (2,048) | 2,366 | (2,078) |
| Book Cash Beginning Balance | 2,203 | 3,389 | 3,439 | 2,947 | 4,557 | 2,407 | 2,234 | 2,136 | 4,250 | 1,176 | 2,986 | 939 | 3,305 |
| Net Cash Flow | 1,186 | 50 | (492) | 1,610 | (2,150) | (173) | (98) | 2,114 | (3,075) | 1,811 | (2,048) | 2,366 | (2,078) |
| **Book Cash Ending Balance** | 3,389 | 3,439 | 2,947 | 4,557 | 2,407 | 2,234 | 2,136 | 4,250 | 1,176 | 2,986 | 939 | 3,305 | 1,227 |

Notes:

1. Professional Fees Escrow - A weekly professional fee escrow will be utilized to hold funds incurred by Debtor's professionals until payment has been confirmed via the court. Professional fees will be paid in accordance with the Code and any interim compensation orders entered in the case. Amounts are cumulative and the failure to make a payment in a certain week shall not remove the amount from the Budget.